# 25-2064-cv

## United States Court of Appeals

### *for the*

## Second Circuit

---

MICHELLE BECKLES,

*Plaintiff-Appellant,*

– v. –

NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CASE NO. 1:23-CV-8663, THE HONORABLE BRIAN M. COGAN, JUDGE PRESIDING

## BRIEF AND SPECIAL APPENDIX FOR
## PLAINTIFF-APPELLANT MICHELLE BECKLES

MARSHALL B. BELLOVIN
BALLON STOLL P.C.
*Attorneys for Plaintiff-Appellant
Michelle Beckles*
810 Seventh Avenue, Suite 405
New York, New York 10019
(212) 575-7900

CP COUNSEL PRESS   (800) 4-APPEAL • (389536)

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUES ON APPEAL ....................................................1

PRELIMINARY STATEMENT ......................................................................2

STATEMENT OF THE CASE...........................................................................2

    I.   STATEMENT OF FACTS..................................................................2

    II.  STANDARD OF REVIEW ...............................................................8

SUMMARY OF THE ARGUMENT ....................................................................10

ARGUMENT ..................................................................................................11

    POINT I ....................................................................................................11

    THE RULING OF THE DISTRICT COURT SHOULD BE
REVERSED SINCE THERE ARE MATERIAL ISSUES OF FACT AS TO
WHETHER GRANTING PLAINTIFF'S ACCOMMODATION REQUESTS
IMPOSED AN UNDUE HARDSHIP ON THE DOE,
THUS PRECLUDING SUMMARY JUDGMENT .........................................11

    A.  Plaintiff's Essential Job Functions are Contested...................................11

    B.  Defendant Mistakes the Law by Concluding that an
Undue Hardship is Imposed by Allowing Plaintiff to Remain
Unvaccinated in Accord with her Religious Beliefs.............................14

    C.  Plaintiff's Religious Accommodation Requests Would
Not Have Imposed Undue Hardship on Defendant ...............................16

CONCLUSION..................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Adickes v. S. H. Kress & Co.,*
  398 U.S. 144 (1970) ....................................................................................8

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ....................................................................................8

*Byam v. New York City Dep't. of Educ.,*
  2024 WL 4198475 (EDNY 2024) ....................................................... 10, 14, 15,

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ....................................................................................8

*Groff v. DeJoy,*
  600 U.S. 447 (2023) ....................................................... 1, 9, 10, 12, 15, 16, 17, 18

*Kane v. De Blasio,*
  19 F.4th 152 (2d Cir. 2021) .......................................................................14

*Knight v. Conn. Dep't. of Pub. Health,*
  275 F.3d 156 (2d Cir. 2001) .........................................................................9

*Philbrook v. Ansonia Bd. of Educ.,*
  757 F.2d 476 (2d Cir. 1985) .........................................................................9

*Jacobsen v. New York City Health and Hospitals Corp.,*
  22 NY3d 824 (2014)...................................................................................13

*Sharp v. Abate,*
  887 F.Supp. 695 (SDNY 1995 .....................................................................13

*Tolan v. Cotton,*
  572 U.S. 650 (2014) ....................................................................................8

*Vazquez v. City of New York – Office of Mayor,*
  2024 WL 1248702 (EDNY 2024) ...............................................................14

**Statutes**

42 U.S.C. § 2000(j) ..................................................................................................9


**Rules**

FRCP 56(a) ..............................................................................................................8
FRCP 56(a)(c) .........................................................................................................8

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of New York had subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

On August 5, 2025, the District Court entered a final judgment granting Defendant's motion for summary judgment and dismissing the complaint in its entirety. Plaintiff timely filed a notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a). This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the judgment appealed from is a final decision of a United States district court.

## STATEMENT OF THE ISSUES ON APPEAL

Whether the district court erred in granting Defendant-Respondent's Motion for Summary Judgment based on its finding that Plaintiff's proposed accommodations would have caused Defendants undue hardship; and whether such finding had sufficient factual basis to meet the standard set forth in *Groff v. DeJoy*, 600 U.S. 447 (2023).

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff-Appellant, Michelle Beckles ("Plaintiff"), appeals from the judgment of the United States District Court, Eastern District of New York, entered on August 4, 2024. The order of the District Court granted Defendant's motion for summary judgment pursuant to FRCP 56 on behalf of Defendant-Appellee New York City Department of Education (the "DOE").

The issue presented on appeal here is whether the district court erred in granting Defendant's Motion for Summary Judgment based on its finding that Plaintiff's proposed accommodations would have caused Defendants undue hardship; and whether such finding had sufficient factual basis to meet the standard set forth in *Groff v. DeJoy*.

<u>**STATEMENT OF THE CASE**</u>

**I.    Statement of Facts**

The following allegations are set forth in the complaint. (A-8). Plaintiff was employed by the DOE as a teacher from on or about September 8, 2005, until on or about February 11, 2022, when Defendant discharged her from employment. (A-10, ¶ 19). Plaintiff began her employment as a teacher and continued in such role for over sixteen years until Defendants terminated her employment. (A-10, ¶ 20). Plaintiff was assigned as a teacher at I.S. 392, a middle school located in Brooklyn, New York. (A-10, ¶ 21). On August 23, 2021, Plaintiff received an email from

Michael Mulgrew, President of United Federation of Teachers ("UFT"), the union of which Plaintiff was a member while employed as a teacher by Defendant. (A-10, ¶ 22). The email stated that "the mayor announced that the city is mandating the COVID-19 vaccine for all DOE employees as part of a public health intervention. Employees must have proof of the first shot of the vaccine by Sept. 27." (A-10, ¶ 23).

Defendant notified Plaintiff that it would be requiring its employees to be fully vaccinated. (A-11, ¶ 24). On September 15, 2021, Plaintiff received another email from Mr. Mulgrew, which stated that the vaccine mandate was set to go into effect on September 27, 2021 and outlined the leave options for employees who refused to comply with the mandate. (A-11, ¶ 25). These options included being placed on unpaid leave or receiving small severance compensation upon resigning from employment. (A-11, ¶ 25). The September 15, 2021 email also stated, "there will be no pause on requests for medical/religious exemptions." (A-11, ¶ 26). Plaintiff then requested a religious exemption from the vaccine on September 20, 2021, which was immediately denied. (A-11, ¶ 27). On September 27, 2021, Plaintiff sent an email to UFT inquiring about the religious exemption appeal process. (A-11, ¶ 28). UFT responded that Plaintiff could not appeal the denial but was allowed to file for another religious exemption with new documentation. (A-11, ¶ 28).

Plaintiff sincerely held a religious belief that conflicted with Defendants' vaccination requirement. (A-11, ¶ 29). Specifically, it was (and is) well publicized that the vaccines were developed using aborted fetal cells in testing and/or production thereof. (A-11, ¶ 29). Plaintiff sincerely believed that abortion was prohibited by her religion and that injecting a vaccine that was developed using aborted fetal cell lining was prohibited by her religion. (A-11, ¶ 29). Accordingly, on September 27, 2021, Plaintiff again filed a request for religious exemption from the COVID-19 vaccine requirement, based on her sincerely held religious beliefs and convictions about what substances she was allowed to put in her body. (A-12, ¶ 30). As part of this request, Plaintiff wrote:

> I present by Lawful Right this Notification of Vaccination Exemption . . . to include all vaccines . . . [including] COVID-19 . . . which include . . . attenuated viruses . . . obtained from aborted fetuses, then cultivated on fetal tissue from other babies . . . because the practice of Vaccination is contrary to my sincere and consciously held Religious Beliefs. (A-12, ¶ 31).

Plaintiff's request for a religious exemption also stated,

> So for the highest possible development of my mind, soul and body, I follow the Laws of Nature which are the Laws of God, designed for my good; and obedience to them is promoting happiness in my life for a very long time now, and it helps me grow to the full stature of a woman in Christ with a powerful mind, soul and spirit. I have faith in God and His laws of Nature and I am refusing to be vaccinated, because I have a problem with what that vaccine injection into my human body is going to do. It goes against my spiritual path, and my healthy living principles with God's gifts of Nature. (A-12, ¶ 32).

4

As part of this request letter, Plaintiff also included a letter from her Reverend, which outlined Plaintiff's sincerely held religious beliefs and her reasons for refusing the COVID-19 vaccine. (A-12, ¶ 33).

Plaintiff contends that she could have been accommodated without causing Defendant an undue burden given the availability of non-vaccine safety procedures that had been deemed acceptable and effectively applied prior to the vaccine mandate, the COVID-19 virus's proven minimal danger in Plaintiff's work environment, and the vaccine's demonstrated ineffectiveness in actually preventing the spread of the COVID-19 virus. (A-12, ¶ 24). However, Plaintiff's religious exemption request was denied. (A-12, ¶ 25). Instead, on or about October 4, 2021, Defendant placed Plaintiff on a leave of absence without pay followed by final termination as of February 11, 2022. (A-12, ¶ 36). The termination letter stated that Plaintiff was terminated for failing to adhere to the COVID-19 Vaccine Mandate. (A-13, ¶ 37). Notably, this date of termination was one day *after* the New York City vaccine mandate ended. (A-13, ¶ 38).

It would not have caused undue hardship on the conduct of Defendants' business to grant Plaintiff the religious exemption. (A-13, ¶ 39). Previously, during the September 2020 to June 2021 school year, Plaintiff has successfully followed extensive COVID-19 safety protocols, including: daily health screening; wearing a face mask and shield while inside the school building; social distancing; conducting

5

parent and student meetings remotely; working remotely and in person while being observed remotely by administrators; conducting assessments and re-evaluations of students all but one of whom were remote; and weekly COVID-19 testing once the vaccine mandate was announced. (A-13, ¶ 40). Each and all of these precautions were deemed adequate to mitigate the risk of catching or transmitting COVID-19. (A-13, ¶ 40). It would not have caused an undue hardship to allow Plaintiff to continue following these or similar precautions—including but not limited to remote work arrangements—in lieu of the mandatory vaccination policy. (A-13, ¶ 41).

There were news reports that Defendant granted hundreds of exemptions to the mandatory COVID-19 vaccination policy. (A-13, ¶ 42). Since other teachers were granted exemptions, it would not have caused an undue hardship to grant Plaintiff an exemption. (A-13, ¶ 42). The Centers for Disease Control and Prevention ("CDC") has acknowledged that vaccinations or injections available for COVID-19 did not prevent transmission, infection, or reinfection in those who received them. (A-13, ¶ 43). The CDC Director publicly stated that the injections do not prevent infection or transmission of SARS-CoV-2, the virus that has been identified by various public health agencies as causing the COVID-19 disease. (A-14, ¶ 44). The CDC also acknowledged that the "vaccinated" and "unvaccinated" were equally likely to spread the virus. (A-14, ¶ 45). Moreover, New York State, in its aggressive efforts designed to curb the spread of COVID-19 throughout the state, nevertheless

provided public school staff/employees the option of either getting vaccinated or, alternatively, getting tested weekly. (A-14, ¶ 46).

The CDC had already reported extensively on how the relative risk of hospitalization and death due to COVID-19 was significantly greater among persons in the seventy-five (75) to eighty-four (84) and eighty-five plus (85+) age groups. (A-14, ¶ 47). In other words, the persons at greatest risk of becoming seriously ill or dying from COVID-19 were the least likely to be encountered by Plaintiff in her workplace. (A-14, ¶ 47). Middle school students were in the age group with the lowest risk of becoming seriously ill or dying from COVID-19. (A-14, ¶ 48). It may be inferred that Defendant's refusal to grant Plaintiff any kind of religious exemption—despite Plaintiff's demonstrating her sincere religious beliefs and given, *inter alia*, the availability of non-vaccine safety procedures that had been deemed acceptable and effectively applied prior to the vaccine mandate, the COVID-19 virus's minimal danger in Plaintiff's work environment, and the vaccine's demonstrated ineffectiveness in actually preventing the spread of the virus— constituted discrimination against Plaintiff on the basis of her religious beliefs. (A-14, ¶ 49). This entire experience has caused Plaintiff significant mental and emotional distress and financial hardship. (A-14, ¶ 50).

Additionally, in conjunction with Plaintiff's argument set forth herein, Plaintiff respectfully refers the Court to Plaintiff's Responses to Defendants Local

7

Rule 56.1 Statement ("56.1" or "Statement") (A-543–A-577), Plaintiff's Affirmation in opposition to Defendant's motion for summary judgment , (A-578–A-585), and the exhibits annexed to the Declaration of counsel for Plaintiff dated October 23, 2024 ("Lieberman Decl.) (A-588–A-1064).

## II.    <u>Standard of Review</u>

A district court's grant of summary judgment is reviewed *de novo*. Summary judgment is only appropriate where there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law. FRCP 56(a)(c). The absolute requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Furthermore, for purposes of summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.* at 255. On appeal, the "respondent ha[s] the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). It is only after this burden is met by respondent that the nonmoving party is accountable for making a showing of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Thus, if the record, taken as a whole, may lead a reasonable juror or trier of fact to find for the nonmovant, summary judgment is inappropriate and should not be granted or affirmed. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); FRCP 56(a).

8

An employer may only decline to provide reasonable accommodations to its employee on the basis of their religion if they are "unable to reasonably accommodate . . . without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000(j). To make out a *prima facie* claim of failure to accommodate, a plaintiff must show "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Knight v. Conn. Dep't. of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001) [citing *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)]. If these requirements are satisfied by the claimant, the burden then shifts to the employer to show that they could not reasonably accommodate the plaintiff without undue hardship. *Id.* Undue hardship is understood to be "shown when a burden is substantial in the overall context of an employer's business" and "an employer [can] not escape liability simply by showing that an accommodation would impose some sort of additional costs." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). For such costs to constitute an "undue hardship," *Groff* requires that "the requisite burden, privation, or adversity must rise to an 'excessive' or 'unjustifiable' level." *Id.* at 469 (citations omitted).

Thus, according to these standards of review, summary judgment is improper and should not be upheld if a reasonable juror could conclude that the DOE failed to

provide reasonable accommodations and the asserted hardship imposed to them did not reach the "excessive or unjustifiable" level set forth in *Groff*.

## SUMMARY OF THE ARGUMENT

The District Court erred in granting summary judgment to Defendant because genuine disputes of material fact exist as to whether accommodating Plaintiff's sincerely held religious beliefs would have imposed an undue hardship under Title VII. Applying the Supreme Court's clarified standard in *Groff v. DeJoy*, 600 U.S. 447, 468 (2023), undue hardship is a fact-intensive inquiry that turns on whether the asserted burden is substantial in the overall context of the employer's business. Consistent with Groff, at least one court in the Eastern District of New York in *Byam v. New York City Department of Education*, 2024 WL 4198475 (E.D.N.Y. 2024), recognized that whether alternative accommodations short of termination of a teacher would impose a substantial burden is a paradigmatic question of fact. Here, the record contains conflicting evidence regarding whether Plaintiff's physical presence in the classroom constituted an essential job function, particularly given the undisputed reliance on paraprofessionals, therapists, scribes, and aides, as well as Plaintiff's ability to perform her duties during periods of fully remote instruction.

The District Court further misconstrued the law by concluding, as a matter of law, that granting Plaintiff a religious accommodation would have required the DOE

10

to violate the COVID-19 vaccine mandate. The mandate expressly permitted reasonable accommodations required by law, and controlling Second Circuit and district court authority confirms that Title VII accommodation obligations remained fully operative. At minimum, material factual disputes exist as to whether alternative accommodations—such as continued masking, testing, or remote or hybrid instruction—could have been implemented without imposing a substantial burden on the DOE. Because these disputes must be resolved by a factfinder, summary judgment was improper and the judgment below should be reversed.

**ARGUMENT**
**POINT I**

**THE RULING OF THE DISTRICT COURT SHOULD BE REVERSED SINCE THERE ARE MATERIAL ISSUES OF FACT AS TO WHETHER GRANTING PLAINTIFF'S ACCOMMODATION REQUESTS IMPOSED AN UNDUE HARDSHIP ON THE DOE, THUS PRECLUDING SUMMARY JUDGMENT**

*A. Plaintiff's Essential Job Functions are Contested*

Plaintiff offered to work remotely as an accommodation for her religious exemption request from the vaccine mandate. (A-13, ¶ 41). Plaintiff argues that the DOE violated Title VII by not granting her this accommodation in place of the vaccination requirement. To overcome this claim, Respondents must show that granting such accommodations would cause an undue hardship on the DOE, which

is a factual inquiry. *Groff* at 468 (calling the question of "undue hardship" a "fact-specific inquiry"). Defendant argues that allowing Plaintiff to continue working remotely would "eliminate Plaintiff's essential job function as a classroom teacher." (A-502).

However, whether Plaintiff's presence in the classroom counts as an "essential job function" is a disputed issue of fact. Plaintiff was able to perform all job functions during the entirely remote periods of the school year. Plaintiff was also assisted by paraprofessionals, therapists, and other in-classroom aides. (A-547, ¶ 15; A-548, ¶ 19). Additionally, a "scribe" or therapist was responsible for helping students to physically write on state tests, and paraprofessionals were responsible for physically breaking up fights between students. (A-550, ¶¶ 27-28). In fact, Plaintiff was informed of students' physical needs, but it was the responsibility of a therapist, not the Plaintiff, to provide those services. (A-552, ¶ 37). Thus, because Plaintiff had to rely on therapists, paraprofessionals, scribes, and other classroom aides to provide physical help to the students, it is contested whether her presence in the classroom constitutes a necessary part of her essential job functions. It is unclear that she could not perform all of her essential job functions remotely or with a mask, as was done during the fully remote period of COVID-19.

When there is conflicting evidence as to whether an employee can perform their essential job functions off-site, a triable issue of fact is created, therefore

12

precluding summary judgement. *See Jacobsen v. New York City Health and Hospitals Corp.*, 22 NY3d 824, 840 (2014) ("[T]he parties' conflicting evidence created a triable issue of fact as to whether, in light of the totality of the work conditions . . . plaintiff could have reasonably performed his essential job duties . . . without visiting construction sites . . . ."); *see also Sharp v. Abate*, 887 F.Supp. 695, 699 (SDNY 1995) (holding that under the ADA, "whether physical qualifications are essential functions of a job requires the court to engage in a *highly fact-specific* inquiry . . . . Such a determination should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved.") [internal quotation marks omitted]. Plaintiff's 56.1 Counterstatement of Facts makes clear that there were several other in-person aides that were responsible for helping the students physically, and that while Plaintiff was required to be informed of the student's needs, she was not herself responsible for providing such physical services. (A-543). The necessity of her physical presence for the "actual functioning and circumstances" of the classroom is thus brought into question, requiring a fact-specific inquiry that precludes summary judgment. *Id.*

13

B. *Defendant Mistakes the Law by Concluding that an Undue Hardship is Posed by Allowing Plaintiff to Remain Unvaccinated in Accord with her Religious Beliefs*

Plaintiff was more than willing to work in-person and continue following COVID-19 protocols that were in place before the vaccination mandate went into effect. Respondents argue that such an accommodation would place an undue hardship on the DOE because it would require them to violate the federal vaccine mandate. However, notably, the mandate was amended to state "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law." (A-274). Thus, an undue hardship would not be placed on the DOE for granting Plaintiff's accommodations because the mandate, by its own terms, expressly allowed avoidance of the vaccine requirement via reasonable accommodations.

Furthermore, because of Title VII's provisions and the Supremacy Clause, "even under the original Vaccine Mandate, DOE employees were legally entitled to request accommodations," and the City Commissioner could not strip such entitlements away from employees. *Kane v. De Blasio*, 19 F.4th 152, n. 7 (2d Cir. 2021) (referring to the amended language as "superfluous" because "The Commissioner, a City official, could not override Title VII, a federal law requiring employers to offer reasonable accommodations that do not result in undue hardship on the employer."). *See also Byam v. New York City Dep't. of Educ.*, 2024 WL

14

4198475 (E.D.N.Y. 2024); *Vazquez v. City of New York – Office of Mayor*, 2024 WL 1248702 (E.D.N.Y. 2024) (interpreting nearly identical language to allow religious exemptions and distinguishing from DOH's § 2.61, which lacked any religious exemptions from the vaccine mandate). In *Byam*, Judge Gonzalez in the Eastern District denied summary judgment to the DOE where, like Plaintiff, a public-school teacher was denied a religious accommodation (exemption) from the COVID-19 vaccination mandate, and her employment was terminated. 2024 WL 4198475 (E.D.N.Y. 2024). Applying *Groff*, the court held that the DOE failed to establish, as a matter of law, that accommodating the plaintiff's sincerely held religious beliefs would have imposed an undue hardship. The court further found that disputes of material fact existed as to whether the DOE had <u>meaningfully</u> considered alternative accommodations short of termination.

Thus, Respondent's argument that allowing Plaintiff to work in-person while unvaccinated would pose an undue hardship by forcing them to violate the mandate fails because the mandate itself permitted the DOE to make reasonable religious accommodations. Respondent's argument must therefore rely on the fact that such accommodations may have posed an undue hardship, which itself is a factual inquiry precluding summary judgment. *See Groff*, *supra*, subsection A.

15

*C. Plaintiff's Religious Accommodation Requests Would Not Have Imposed Undue Hardship on Defendant*

The controlling standard to determine whether an accommodation would impose an "undue hardship" on the employer is the *Groff* standard. *Groff* heightened the undue hardship standard, holding that undue hardship is "shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). Further, *Groff* points out "an employer [can] not escape liability simply by showing that an accommodation would impose some sort of additional costs." *Id.*

Defendants here argue that the heightened undue hardship standard set forth in *Groff* is met because Plaintiff's unvaccinated presence would lead to "substantial cost increases," and that allowing Plaintiff to work remotely would eliminate her essential job functions and require them to hire more employees to compensate for Plaintiff's physical absence (again, an "additional cost" contention). (A-508–A-517).

Regarding Defendant's substantially increased costs argument, Defendant makes a conclusory allegation that Plaintiff's unvaccinated presence would impose substantially increased costs due to the resulting health and safety risk. (A-513). Defendants fail to adequately and thoroughly explain, as is their burden, *how* mitigating such alleged health and safety risks would impose increased costs that are

16

*substantial* enough to meet the *Groff* standard. To the extent they make any arguments regarding implementation of increased costs, Defendants argue that they would have to hire more employees to make up for Plaintiff's physical absence in the classroom. This argument is flawed for multiple reasons. First, Defendant fails to make clear how hiring a single additional employee would create a substantial increase in costs and thus seems to ignore *Groff*'s reasoning that "an employer [can] not escape liability simply by showing that an accommodation would impose some sort of additional costs." *Groff*, 600 U.S. 447, 468 (2023).

Second, Defendant fails to acknowledge that there were numerous in-person positions, such as scribes, therapists, paraprofessionals, and other classroom aides, that Plaintiff had to rely upon to carry out her own responsibilities. (A-547, ¶ 15; A-548, ¶ 19). Therefore, it is unclear whether Defendant would even need to hire any additional aides for the classroom, creating another triable issue of fact. *See Byam*, 2024 WL 4198475 (finding, in this Covid-19 religious accommodation case brought by another teacher against the DOE, as a contested fact that "the parties disagree about how much additional or rearranged in-person coverage would have been required had Plaintiff been permitted to teach remotely at her own school or elsewhere.").

17

## CONCLUSION

For the foregoing reasons, the decision of the District Court should be reversed. A reasonable jury could conclude that the DOE failed to provide Plaintiff with a reasonable accommodation for her sincerely held religious beliefs in violation of Title VII, and that the asserted hardships occasioned by such accommodation do not rise to the "excessive or unjustifiable" level contemplated by *Groff*. Because these issues are properly resolved by a factfinder, it is respectfully requested that this Court reverse the Order of the court below and deny Defendant-Respondent's Motion for Summary Judgment.

Dated: New York, New York
      February 9, 2026               BALLON STOLL P.C.

                                  By:  *s/ Marshall B. Bellovin*
                                      Marshall B. Bellovin
                                      *Attorneys for Plaintiff-Appellant*
                                      810 Seventh Ave. Ste. 405
                                      New York, New York 10019

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 3,916 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman style font.

Dated: February 11, 2026

/s/ Marshall B. Bellovin
Marshall B. Bellovin
*Attorney for Plaintiff-Appellant*

# SPECIAL APPENDIX

i

## TABLE OF CONTENTS

**Page**

Memorandum Decision and Order,
    filed August 4, 2025................................................ SPA-1

SPA-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
---------------------------------------------------- X
MICHELLE BECKLES,                                     :
                                                      :
                       Plaintiff,                     :   MEMORANDUM DECISION AND
                                                      :   ORDER
          -against-                                   :
                                                      :
NEW YORK CITY DEPARTMENT OF                           :   23-cv-8663 (BMC)
EDUCATION,                                            :
                                                      :
                       Defendant.                     :
                                                      :
---------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff, a devout Christian, brings this action for religious discrimination under Title VII. She alleges defendant, her employer, discriminated against her by refusing to accommodate her sincere religious objections to the COVID-19 vaccine. Defendant has moved for summary judgment, and its motion is granted. The summary judgment record makes undeniable, as a matter of law, that her proposed accommodations would have imposed an undue hardship on defendant.

## BACKGROUND

Plaintiff Michelle Beckles is a Christian who, by virtue of her faith, opposes vaccination. Defendant New York City Department of Education (the "DOE") is a municipal entity that operates New York City's public schools. Beckles worked as a special-education teacher in the City's public school system from September 8, 2005, to February 11, 2022. She worked with students who are on the "autism spectrum, have Asperger's, are blind, are non-ambulatory, or bedridden, are unable to write on their own (including having to hold and guide student hands) and are prone to seizures." On a typical day, she was responsible for bringing her students to

SPA-2

their classrooms, managing their behavior in class, and providing tailored instruction to them on topics with which they struggled.

In August 2021, the president of Beckles' union informed its members that "the mayor announced that the city is mandating the COVID-19 vaccine for all employees of the Department of Education as part of a public health intervention" and that "employees must have proof of the first shot of the vaccine by Sept. 27." Three weeks later, Beckles received another email from the president reaffirming that the vaccine policy would take effect on September 27th and outlining the leave options available to employees who declined to comply. Separately, the mayor and the chair of the City's health department issued an order "requiring COVID-19 vaccination for DOE employees, contractors, and others who work in-person in a DOE school setting or DOE building."

A week prior to the school policy's effective date, Beckles requested a religious exemption with the DOE, which was immediately denied. The date the policy went into effect, Beckles emailed her union inquiring about the appeal process. The union informed her that she was unable to appeal the rejection but that she was allowed to file a new exemption request with new documentation. Beckles again filed a request, and her request was again denied. The DOE placed her on a leave of absence without pay in early October, and then terminated her on February 11, 2022, one day before the City's vaccine order was rescinded.

Beckles timely filed this action within 90 days of receiving her right-to-sue letter from the Equal Employment Opportunity Commission. The operative amended complaint asserts three religious discrimination claims against the DOE: one under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 200e et seq.; one under New York State Human Rights Law § 296, et seq.; and one under New York City Human Rights Law § 8-101, et seq. Beckles has since

SPA-3

withdrawn the state and local law claims, leaving only the Title VII claim.  After the close of discovery, the DOE moved for summary judgment.

## DISCUSSION

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  It must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  Ravenell v. Avis Budget Grp., Inc., No. 08-cv-2113, 2014 WL 1330914, at *1 (E.D.N.Y. March 31, 2014) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)).

Title VII failure-to-accommodate claims proceed in two steps.  First, an employee must show that she "(1) . . . held a bona fide religious belief conflicting with an employment requirement; (2) . . . informed [her] employer[] of this belief; and (3) [was] disciplined for failure to comply with the conflicting employment requirement."  Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001).   Then, the burden shifts to the employer to show it could not accommodate the employee's religious belief without suffering an "undue hardship."  Groff v. DeJoy, 600 U.S. 447, 454 (2023) (quoting 42 U.S.C. § 2000e(j)).

An undue hardship exists when "the accommodation would result in substantial increased cost in relation to the conduct of [an employer's] particular business."  Id.  Courts must apply "th[is] test in a manner that takes into account all relevant factors in the case at hand, including

3

SPA-4

the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." Beickert v. N.Y.C. Dep't of Educ., No. 22-cv-5265, 2023 WL 6214236, at *3 (E.D.N.Y. Sept. 25, 2023). A reasonable accommodation "can never involve the elimination of an essential function of a job." Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003)). By extension, "[h]ir[ing] another employee to cover plaintiff's in-person duties" qualifies as an undue hardship when those duties are essential to the plaintiff's position. Wilson v. Mid-Hudson Forensic Psychiatric Ctr., No. 23-cv-8911, 2025 WL 1295655, *8 (S.D.N.Y. May 5, 2025).

Because the DOE agrees that Beckles' sincere religious beliefs conflicted with its vaccine policy, that she informed the DOE of her beliefs, and that the DOE fired her for failing to vaccinate, its motion turns on undue hardship. Beckles offers two accommodations that she claims would have been reasonable: the school could have allowed her to work in-person while unvaccinated, or the school could have allowed her to teach remotely, like it did during the first year of the pandemic. Both accommodations, however, would have imposed substantial costs on the DOE.

The Second Circuit has already summarily rejected Beckles' first proposed accommodation. In an unpublished order, a panel held that when an employer "could not have granted [its employee's] religious-exemption request without violating the [City's vaccine order], exposing itself to potential penalties," the employer "suffer[s] an undue hardship." D'Cunha v. Northwell Health Sys., No. 23-476-cv, 2023 WL 7986441, *3 (2d Cir. Nov. 17, 2023); cf. Bey v. City of New York, 999 F.3d 157, 170 (2d Cir. 2021) ("Title VII cannot be used to require employers to depart from binding federal regulations."). Forcing an employer to

4

SPA-5

violate state law is "both 'excessive' and 'unjustifiable.'" D'Cunha, 2023 WL 7986441, at *3 (quoting Groff, 600 U.S. at 469).

Beckles' second proposed accommodation, that she be allowed to work remotely, presents a somewhat closer call – it hasn't been expressly rejected by a controlling authority – but ends up in the same place as the first. Preliminarily, Beckles did not in fact request to work remotely. Her first exemption request merely sought permission to "wear[] a face mask, social distanc[e] from coworkers or non-employees, test[], or work[] a modified shift," and her second request did not raise any new potential accommodations. She cannot now blame the DOE for failing to provide something she never requested. See Greenberg v. Visiting Nurse Servs. in Westchester, Inc., No. 23-cv-4252, 2024 WL 4252550, at *9 (S.D.N.Y. Sept. 19, 2024).

Yet even if Beckles had asked to work remotely, Title VII would not obligate the DOE to comply. The undisputed summary-judgment record overflows with evidence that Beckles, as a special-education teacher, needed to work in person to function effectively. She could not guide her students to class or ensure they are paying attention to lessons, for instance, from a Zoom call. These were not ordinary students; they needed a level of hands-on attention that regular students generally do not. Accommodating her, then, would have required the DOE to hire a substitute to perform much of her job for her, or in other words, "[h]ire another employee to cover plaintiff's" significant "in-person duties."[1] Mid-Hudson Forensic Psychiatric Ctr., 2025 WL 1295655, at *8.

Unable to contest that a substitute would need to functionally replace her, Beckles resorts to faulting the DOE for failing to provide a "computation of substitute teacher cost for a special

---

[1] Beckles cites several cases which found that determining the "essential functions" of a plaintiff's job was a question for the jury. See, e.g., Tafolla v. Heilig, 80 F.4th 111 (2d Cir. 2023). But here Beckles admits to certain essential functions of her job – e.g., monitoring her students' in-class behavior – that could not be performed remotely.

5

education teacher having comparable qualifications, licenses and experience as" her. This argument misunderstands the DOE's burden and the scope of the Court's review. The DOE need not provide a detailed financial forecast to show certain measures are impractical and costly. A court can determine that an accommodation would be "excessive" or "unjustifiable" based only on the nature of the accommodation relative to the employer's business. Groff, 600 U.S. at 469.

Moreover, the reviewing court does not limit its view to the price of accommodating the plaintiff and the plaintiff alone. It looks to "the overall context of any employer's business," which includes any follow-on effects of the accommodation. Id. at 468. If the DOE allowed Beckles to work remotely, it would have needed to extend the same privilege towards other teachers with genuine religious objections to vaccination. One does not need to run a discounted-cash-flow analysis to understand that this would create a significant financial strain on the public school system.

Beckles also stresses that remote teaching was allowed during the 2020-21 schoolyear, and certain therapists and paraprofessionals were on site to monitor plaintiff's class while she taught remotely. How then, she asks, could it pose an undue burden in 2021-22? The answer is simple. During the 2020-21 schoolyear, both teachers and students attended school remotely, but in 2021-22 they did not. Beckles does not claim it was religious discrimination to transition back to in-person learning; indeed, she pushed the administration to do so. And once the school made the transition, it became burdensome to accommodate remote teaching.[2] Beckles herself admits that "all of [her students] were remote (at home) with the exception of one" during the 2020-21 schoolyear, which would not have been the case during the following schoolyear. It is no

---

[2] Beckles states in her brief, without any citation to the record, that the DOE granted medical exemptions during the 2021-22 schoolyear. Nothing in the parties' Rule 56.1 statements or exhibits supports this conclusory assertion, and the Court will not consider it. See Parke v. Assist Ambulance, No. 23-cv-09066, 2025 WL 513266, at *9 (E.D.N.Y. Feb. 17, 2025).

6

SPA-7

surprise that courts in this circuit have uniformly rejected similar arguments.  See, e.g., Dominguez v. Bd. of Educ., No. 23-cv-2460, 2024 WL 3427217, at *6 (S.D.N.Y. July 16, 2024) ("[T]hat Plaintiff could perform his essential job functions while working remotely during the first phase of the COVID-19 pandemic . . . does not support his assertion that he could continue to perform his essential job functions . . . . given that the District determined the return to in-person was appropriate.").

As a final line of attack, Beckles' opposition brief conjures up a new theory absent from any of her earlier filings.  She appeals to certain Americans with Disabilities Act cases to argue that, because the DOE did not engage with her in an "interactive process," it must have denied her exemption request in bad faith.  Several procedural grounds bar Beckles from raising this claim now, in opposition to a motion for summary judgment.  See, e.g., Fed. R. Civ. P. 8.  That aside, her own authority forecloses any possibility of success.  It recognizes that "liability for failure to engage in an interactive process depends on a finding that the parties could have discovered and implemented a reasonable accommodation through good faith efforts."  Together Emps. v. Mass Gen. Brigham Inc., 573 F. Supp. 3d 412, 442 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2022).  As previously discussed, any accommodation here would have been unreasonable, so Beckles cannot hold the DOE liable for failing to engage in an interactive process.

SPA-8

**CONCLUSION**

For the reasons stated, the DOE's summary judgment motion is granted.

**SO ORDERED.**

_____
*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
August 4, 2025