# 25-2064-cv

## United States Court of Appeals

*for the*

## Second Circuit

MICHELLE BECKLES,

*Plaintiff-Appellant,*

– v. –

NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CASE NO. 1:23-CV-8663, THE HONORABLE BRIAN M. COGAN, JUDGE PRESIDING

## JOINT APPENDIX
### Volume 4 of 4 (Pages A-796 to A-1064)

JAMISON DAVIES
NEW YORK CITY LAW DEPARTMENT
APPEALS DIVISION
*Attorneys for Defendant- Appellee*
  *New York City Department of Education*
100 Church Street
New York, New York 10007
(212) 356-2490

MARSHALL B. BELLOVIN
BALLON STOLL P.C.
*Attorneys for Plaintiff-Appellant*
  *Michelle Beckles*
810 Seventh Avenue, Suite 405
New York, New York 10019
(212) 575-7900

 COUNSEL PRESS    (800) 4-APPEAL • (389536)

i

## TABLE OF CONTENTS

**Page**

**VOLUME 1 OF 4**

District Court Docket Sheet ...................................... A-1

Amended Complaint, filed February 6, 2024 ............ A-8

Exhibit A to Amended Complaint: U.S. Equal
    Employment Opportunity Commission
    Determination and Notice of Rights, dated
    August 23, 2023 ...................................................... A-19

Defendant's Answer to Amended Complaint,
    filed May 20, 2024 ................................................. A-20

Defendant's Local Rule 56.1 Statement of Material
    Undisputed Facts, filed September 23, 2024 ......... A-29

Affirmation of Katherine G. Rodi in Support of
    Defendant's Motion for Summary Judgment,
    filed September 23, 2024 ....................................... A-52

Declaration of René L. Macioce in Support of
    Defendant's Motion for Summary Judgment,
    filed September 23, 2024 ....................................... A-54

Exhibit A to Macioce Declaration: Excerpts of
    Deposition of Michele Beckles, dated July 22,
    2024 ....................................................................... A-56

Exhibit B to Macioce Declaration: NYC Health
    Community Health Profiles 2015 for Brooklyn
    Community District 15: Brownsville..................... A-176

Exhibit C to Macioce Declaration: NYC
    Department of Education Annual Professional
    Performance Review Teacher Observation
    Reports for Michelle Beckles ................................ A-213

ii

**Page**

Exhibit D to Macioce Declaration: Letter from
Henry Chou to Ashraf Ahmed, dated June 28,
2022 ...................................................................... A-262

Exhibit E to Macioce Declaration: Order of the
Commissioner of Health and Mental Hygiene to
Request COVID-19 Vaccination for Department
of Education Employees, Contractors, Visitors
and Others, dated September 15, 2021 .................. A-270

Exhibit F to Macioce Declaration: Arbitration
Report In the Matter of the Arbitration between
Board of Education of the City School District of
the City of New York v. United Federation of
Teachers Local 2, AFT, AFL-CIO, dated
September 10, 2021 ............................................... A-275

Exhibit G to Macioce Declaration: Email from New
York City Department of Education Division of
Human Capital, dated September 18, 2021 ........... A-294

**VOLUME 2 OF 4**

Exhibit H to Macioce Declaration: Excerpts of
Deposition of Katherine Rodi, dated July 31,
2021 ...................................................................... A-296

Exhibit I to Macioce Declaration: Michelle Beckles'
Request for Religious Exemption from COVID-
19 Vaccination, dated September 20, 2021 ........... A-360

Exhibit J to Macioce Declaration: Email
Confirmation of Exemption Request Receipt,
dated September 23, 2021 ..................................... A-390

Exhibit K to Macioce Declaration: Email Denying
Request for Religious Exemption, dated
September 25, 2021 ............................................... A-392

iii

**Page**

Exhibit L to Macioce Declaration: Michelle
    Beckles' Letter of Appeal for Religious
    Exemption Request, dated September 27, 2021 ....    A-394

Exhibit M to Macioce Declaration: Email
    Confirmation of Exemption Request Receipt,
    dated September 27, 2021 .....................................    A-399

Exhibit N to Macioce Declaration: Email Denying
    Request for Religious Exemption, dated
    September 28, 2021 ...............................................    A-401

Exhibit O to Macioce Declaration: Email from
    Division of Human Resources to Michelle
    Beckles Regarding Termination, dated February
    15, 2022 ...............................................................    A-403

Exhibit P to Macioce Declaration: New York Times
    Article, "Dependence on Tech Caused
    'Staggering' Education Inequality, U.N. Agency
    Says," by Natasha Singer, dated September 6,
    2023 .....................................................................    A-405

Defendant's Memorandum of Law in Support of
    Motion for Summary Judgment, filed September
    23, 2024 ...............................................................    A-496

Plaintiff's Memorandum of Law in Opposition to
    Motion for Summary Judgment, filed October 23,
    2024 .....................................................................    A-520

Plaintiff's Local Rule 56.1 Counter Statement of
    Disputed Material Fact, filed October 23, 2024 ....    A-543

Affidavit of Michelle Beckles in Opposition to
    Defendant's Motion for Summary Judgment,
    filed October 23, 2024 ..........................................    A-578

iv

**Page**

Declaration of Paul A. Lieberman in Opposition to
Defendant's Motion for Summary Judgment,
filed October 23, 2024 .......................................... A-586

**VOLUME 3 OF 4**

Exhibit 1 to Lieberman Declaration: Transcript of
Deposition of Michelle Beckles, dated July 22,
2024 ..................................................................... A-588

**VOLUME 4 OF 4**

Exhibit 2 to Lieberman Declaration: Transcript of
Deposition of Katherine Rodi, dated July 31,
2024 ..................................................................... A-796

Exhibit 3 to Lieberman Declaration: NYC
Department of Education Annual Professional
Performance Review Teacher Observation
Reports for Michelle Beckles ................................ A-925

Exhibit 4 to Lieberman Declaration: Plaintiff's
Memorandum of Law in Opposition to
Defendant's Motion to Dismiss the Amended
Complaint, dated February 26, 2024, with
Attachments ........................................................ A-1018

Exhibit 5 to Lieberman Declaration: Plaintiff's
Supplemental Letter in Further Opposition to
Defendant's Motion to Dismiss Amended
Complaint, dated March 27, 2024 ........................ A-1032

Exhibit 6 to Lieberman Declaration: Plaintiff's
Amended Complaint, dated February 6, 2024....... A-1035

Exhibit 7 to Lieberman Declaration: Plaintiff's
Requests for Religious Accommodation
(SOLAS) with Support ......................................... A-1046

v

**Page**

Exhibit 8 to Lieberman Declaration: Defendant's
  Denials of Religious Accommodation .................... A-1053

Exhibit 9 to Lieberman Declaration: Email from
  Division of Human Resources to Michelle
  Beckles Regarding Termination, dated February
  15, 2022 ................................................ A-1055

Memorandum Decision and Order, filed August 4,
  2025 ................................................... A-1056

Plaintiff's Notice of Appeal, filed August 26, 2025... A-1064

A-796

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------- X

MICHELLE BECKLES,

              Plaintiff,

                             No.

        vs.              23-cv-

                      08663(BMC)

NEW YORK CITY DEPARTMENT

OF EDUCATION,

              Defendant.

-------------------------- X

                  July 31, 2024

                  10:46 a.m.

       30(b)(6) deposition of

KATHERINE RODI, ESQ., held via Zoom at the

offices of New York City Department of

Education, 65 Court Street, Brooklyn, New

York, pursuant to Court Order, before

Theresa Tramondo, AOS, CLR, a Notary

Public of the State of New York.

Reported by:

THERESA TRAMONDO, AOS, CLR

JOB NO. NY6832696

A-797

Page 2

APPEARANCE OF COUNSEL:

FOR PLAINTIFF:

BALLON STOLL PC

810 Seventh Avenue Suite 405

New York, New York 10019

BY:  STEVEN BALKEN, ESQ.

sbalken@ballonstoll.com

(212)575-7900

FOR DEFENDANT:

NEW YORK CITY LAW DEPARTMENT

OFFICE OF THE CORPORATION COUNSEL

100 Church Street

New York, New York 10007

BY:  RENE MACIOCE, ESQ.

KATHLEEN LINNANE, ESQ.

rmacioce@law.nyc.gov

klinnane@law.nyc.gov

(212)356-2479

A-798

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 3 of 129 PageID #: 907

Page 3

STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED, by and among counsel for the respective parties hereto, that the filing, sealing and certification of the within deposition shall be and the same are hereby waived;

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to form of the question, shall be reserved to the time of the trial;

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the Court.

A-799

Page 4

THE REPORTER:  All parties agree that the court reporter can swear/affirm the witness in virtually via Zoom as if the witness was in the same room as the court reporter. Unless there are any objections by any party, say it's so stipulated.

(ALL STIPULATED.)

K A T H E R I N E   R O D I,  called as a witness, having been duly sworn via Zoom by a Notary Public, was examined and testified as follows:

BY THE REPORTER:

Q.    State your name for the record, please.

A.    Katherine Rodi, K-A-T-H-E-R-I-N-E, R-O-D-I.

Q.    What is your address?

A.    Work address, 65 Court Street, Brooklyn, New York 11201.

EXAMINATION BY
MR. BALKEN:

Q.    Good morning again.  My name is Steven Balken, and I am an associate

A-800

Page 5

Rodi

attorney at Ballon Stoll P.C.  We represent the plaintiff Michelle Beckles in this action.  I understand you are an attorney and aware of the rules of depositions, but please bear with me as I just go through the ground rules.

You are under oath at this time and you will be under oath throughout the deposition.

Do you understand that?

A.    Yes.

THE REPORTER:  Mr. Balken, you've got to lower your audio a little, because you're vibrating in the background.

Off the record.

(Record read.)

Q.    You must answer all questions, unless your attorney instructs you not to answer.  All the questions I ask you, I need you to respond with a verbal answer, no gestures or nodding, et cetera.  If you are unclear about anything I might ask you, please feel free to ask me to rephrase or

A-801

Case 1:23-cv-08663-BMC    Document 42-2    Filed 10/23/24    Page 6 of 129 PageID #: 910

Page 6

Rodi

clarify the question.  If you answer a question, I am going to assume you understood it.  If you need a break at any time, please let me know and we can take a break; however, you cannot take a break when a question is pending, which means if I have asked a question, but you have not yet answered it.

Do you understand and agree to those ground rules?

A.    Yes.

Q.    Great.  Do you have a middle name?

A.    I do.

Q.    What is your middle name?

A.    Gariepy, G-A-R-I-E-P-Y.

Q.    Are you known by any other names, other than the one you gave to the court reporter, and your middle name?

A.    No.

Q.    Have you consumed any alcohol or medication that may impair your ability to provide truthful testimony today?

A.    No.

A-802

Page 7

Rodi

Q.    Is there anything that may affect your ability to testify fully and truthfully today?

A.    No.

Q.    Were you ever in the military?

A.    No.

Q.    What is your marital status?

A.    Single.

Q.    And have you ever been a party to a lawsuit since October of 2021?

A.    Yes.

Q.    How many lawsuits since the beginning of October 2021 have you been involved in?

A.    One or two for work.

Q.    What was the year of each, to the best of your recollection?

A.    2023 and 2024.

Q.    The -- and what was the court for each?

A.    Eastern District, 2023.  2024, I don't recall.  I believe it was Eastern District as well, actually.

Q.    Were you a plaintiff or

A-803

Page 8

Rodi

defendant -- sorry, did you finish?

A.    Defendant.

Q.    Okay.  Do you recall the names of the parties in each action?

A.    I do not.

Q.    Okay.  And you said you were a defendant, right?

A.    Correct.

Q.    Can you summarize the allegations in the complaint of each case?

MR. MACIOCE:  Objection.

But you can answer.

A.    One employee -- or one former employee wanted to be restored to service and was -- had filed because she -- against the DOE and others named because she had not been restored to service.  And the other one was similar about that they were no longer an employee.  I think the 2023 one was determined that she failed to state a claim and -- I'm no longer -- I was taken off both cases, so I was no longer named.

Q.    Are you aware of why the plaintiff alleged that you should be a party

A-804

Page 9

Rodi

in each case?

A.    No.

Q.    Did you have any involvement in the facts of each case?

A.    No.

MR. MACIOCE:  Objection.

But you can answer.

A.    No.

Q.    Did either case allege discrimination?

MR. MACIOCE:  Objection.

But you can answer.

A.    I don't recall.

Q.    Did either case have anything to do with a denied accommodation?

MR. MACIOCE:  Objection.

But you can answer.

A.    No.

Q.    Did either case have anything to do with a denied exemption to a vaccine mandate?

MR. MACIOCE:  Objection.

But you can answer.

A.    One, yes.

A-805

Page 10

Rodi

Q.    Which one?

A.    The 2024 matter.

Q.    The 2024 matter, okay.

Are you aware of the index number of that case?

A.    No.

Q.    (**RQ)I'm going to leave a blank in the transcript, if you could insert the index number of that case afterwards.

TO BE FURNISHED:_____

MR. MACIOCE:  We'll take it under advisement, and we'll see if we can identify the case.

MR. BALKEN:  Thank you.

Q.    You told me the outcome of both cases.  Other than those cases, have you been involved in any other case since October of 2021?

A.    No.

Q.    Did you testify at deposition in either of those two cases?

A.    No.

MR. MACIOCE:  Objection.

But you can answer.

A-806

Page 11

Rodi

Q.    Okay.  And just, Ms. Rodi, going back, the case that I asked you the index for, do you recall the names of the parties in that case?

MR. MACIOCE:  Objection.

But you can answer.

A.    I know the -- it was -- the DOE was one -- obviously, the main party.  I don't remember the name of the former employee.

Q.    And when was your last involvement in that case?

MR. MACIOCE:  Objection.

But you can answer.

A.    A few weeks ago when I was notified that I was no longer a party.

Q.    So a few weeks ago was your last involvement in that case?

A.    Yes.

Q.    And you don't recall the name of the plaintiff in that case?

A.    No.

Q.    Have you testified -- sorry. Did you say something?

A-807

Page 12

Rodi

A.    No.

Q.    Have you testified at a deposition since October of 2021?

MR. MACIOCE:  Objection.

You can answer.

A.    Yes.

MR. BALKEN:  Out of curiosity, Counsel, what's the basis for your objection to that?

MR. MACIOCE:  It's because you're asking about testimony that could go possibly towards what was, you know, elicited between attorneys, and this is at depositions, and it's what cases.  And also you've asked several questions about cases since 2021; so we've already kind of gone into this, but just a standing objection.

MR. BALKEN:  Like a relevance objection?

MR. MACIOCE:  No.  Form.

MR. BALKEN:  Okay.

MR. MACIOCE:  And also it's

A-808

Page 13

Rodi

outside the scope of the noticed topics, to be frank, as well.

MR. BALKEN:  I don't think it's an objection to form either, but, look, we don't need to -- we can discuss this afterwards, if necessary.

Q.    So you said --

MR. BALKEN:  Sorry, can you repeat the -- sorry.  Ms. Reporter, can you please repeat the answer from the witness to my last question.

(Record read.)

MR. BALKEN:  What was my question.

(Record read.)

Q.    How many times have you testified at a deposition since October 2021?

A.    Twice.

Q.    What was the approximate year of each testimony?

A.    2023 and 2024.

Q.    What was the court -- sorry, strike that question.

A-809

Page 14

Rodi

What was the nature of the proceedings in which you testified in that deposition --

MR. MACIOCE:  Objection.

But you can answer.

Apologies.  I didn't mean to cut you off.

(Record read.)

Q.    -- in those two cases?

A.    Go ahead and answer?

Q.    Yes.

A.    One case was related to the vaccines, and the other case was -- I think it was also related to the vaccines.

Q.    Okay.  Were either of those cases after October of 2023?

A.    Yes.

Q.    One or both?

MR. MACIOCE:  I don't know if she heard you.

Q.    Both of them or one of them?

Can you hear me?

A.    You've been covered by whatever was happening in the background.  So can you

A-810

Page 15

Rodi

repeat your question?

Q.    Both of them or one of them?

A.    After -- are you asking if both or one of them were after October 2023?

Q.    Yes.

A.    One was definitely earlier this year, and then the other one, I think, was October of 2023.

Q.    The one in October of 2023, was that a lawsuit brought by a plaintiff named Lydia Byam?

A.    I don't recall.

Q.    The lawsuit that happened after that, what was the name of the plaintiff in that case?

A.    I don't recall.

Q.    (**RQ)I'm going to leave a blank space for you to insert the index number of both of those cases after this.

TO BE FURNISHED:_____

_____

MR. MACIOCE:  We'll take it under advisement as well.  We'll search for it.

A-811

Page 16

Rodi

MR. BALKEN:  Great.

Q.    Have you reviewed any documents in preparation for this deposition?

A.    Yes.

Q.    What documents did you review in preparation for this deposition?

A.    The documents regarding your -- some of your questions and -- one second, please, my phone is -- sorry.

The documents regarding your questions and the -- your client -- like when your client had applied for the vaccination -- for the exemption, and who had reviewed it.

Q.    Is that one document, or are you listing --

A.    No, those are several documents.

Q.    Okay.  Did you review any deposition transcripts?

A.    No.

Q.    And when you say the document containing my questions, what document are you referring to?

A.    It was a document regarding what

A-812

Page 17

Rodi

the issues would be today.

Q.    Was it a letter?

A.    I believe so.

Q.    Did you review the court order ordering today's deposition?

A.    No.

Q.    In those two cases that you referenced, where you testified in deposition since October of 2023, what was the outcome of the latter of those two cases?

MR. MACIOCE:  Objection.

But you can answer.

Q.    To clarify:  What was the outcome of the case in which you testified after October of 2023?

A.    I don't know.

Q.    Okay.

(**RQ)MR. BALKEN:  I'll call for production of the transcript of that latter -- of Ms. Rodi's testimony in that latter case that we've been discussing that happened after -- in which she testified after October of

A-813

Page 18

Rodi

2023.

MR. MACIOCE: Take it under advisement. Please make it in writing.

MR. BALKEN: Sure.

Q. Do you have any documents with you today, Ms. Rodi?

A. No.

Q. And I apologize, I should have asked this at the beginning, but is it okay if I refer to you as Ms. Rodi?

A. Yes.

Q. Okay. Have you discussed this case with anyone other than your attorneys?

A. No.

Q. Are you currently employed?

A. Yes.

Q. By whom are you employed?

A. By the New York City Department of Education.

Q. And is that located at the address you provided the court reporter at the beginning of this deposition?

A. Yes.

A-814

Page 19

Rodi

Q. What is your job title?

A. My job title is Executive Director, Office of Employee Relations.

Q. Can I refer to that as "executive director," in short?

A. Yes.

Q. Is there a specific division or department in which you preside over as the executive director?

A. Yes, the Office of Employee Relations.

Q. And how long have you been the executive director of Employee Relations?

A. Since 2012.

Q. What are the responsibilities for the position?

A. I oversee several divisions, including the Office of Personnel Investigation, the Office of Reassignments and Arrests, Office of Safety and Health, Office of Disability Accommodation, and then employee relations functions. I ensure that background checks are done on all applicants, and I ensure that any employees

A-815

Page 20

Rodi

that need to be removed from service are removed from service.

Q.    Did -- I'm sorry.

A.    Among other things.

Q.    What other things?

A.    I provide policy advice.  I handle litigation matters that are relevant to the work that we do.  I -- I respond to inquiries from the NYPD, FBI and other agencies.

Q.    And you are a licensed attorney, correct?

A.    Correct.

Q.    How long have you been licensed?

A.    I've been licensed since 2004.

Q.    Do you have any other licenses, other than that and a driver's license?

A.    I have been a -- well, I have a license for the District of Columbia.  I have one in New York and one in the District of Columbia.

Q.    You mean, a license to practice law?

A.    Yes.  I also have a teaching

A-816

Page 21

Rodi

license.

Q. Do you have any other licenses?

A. No.

Q. How long have you had a teaching license for, approximately?

A. Since 1995.

Q. Did the responsibilities of your position as Executive Director of Employee Relations involve the consideration of religious accommodation requests from Department of Education employees?

MR. MACIOCE: Objection.

But you can answer.

A. Sorry. Yes.

MR. BALKEN: Counsel, the basis for your objection?

MR. MACIOCE: That they were exemption requests, not accommodation requests.

MR. BALKEN: Okay.

Q. So you said "yes," right?

A. Yes.

Q. And did the responsibilities of your position as executive director involve

A-817

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 22 of 129 PageID #: 926

Page 22

Rodi

the consideration of exemption requests from the vaccine mandate?

A.    Yes.

Q.    Did you consider the exemption -- sorry, strike that.

Did you consider the reasonable accommodation requests -- strike that question.

Did you consider the religious accommodation request of all Department of Education employees since -- as the executive director?

MR. MACIOCE:  Objection.

But you can answer.

A.    What's the question?

Q.    Did you review the accommodation requests of all Department of Education employees or only of certain ones that were submitted to the Department of Education during the time you have been the executive director?

A.    Only some of them.

Q.    Is there a specific category of employees whose requests that you reviewed

A-818

Page 23

Rodi

for religious accommodation?

MR. MACIOCE:  Objection.

But you can answer.

A.    No.

Q.    So how was it decided which employees' requests you would review and which you would not?

A.    We had -- are you talking about a specific time frame, or are you talking about --

Q.    I'm talking about which employees' requests you would review.  I'm trying to figure out if all requests for religious accommodation would just go to you or if you only looked at certain employees' requests.

A.    Religious accommodations?

Q.    Yes.

A.    Religious accommodations or religious exemptions?

Q.    Let's start with religious accommodations.

A.    Religious accommodations are -- can be reviewed on a local level or on a

A-819

Case 1:23-cv-08663-BMC    Document 42-2    Filed 10/23/24    Page 24 of 129 PageID #: 928

Page 24

Rodi

central level.  I don't -- I review most of them on a central level.  I do not review on a local level.

Q.    Why would a request be considered on the central level, as opposed to at the local level?

A.    We're talking about accommodations?

Q.    Yes.

A.    Not exemptions?

Q.    Yes.

A.    Accommodations would be considered on the local level if a person wanted to, say, leave early on a Friday afternoon or they wanted to have an opportunity to pray or they wanted to have an exemption or some sort of change in their -- what they wore.  Those would be done on a local level, not on a central level.

Q.    So what type of religious accommodation requests would be reviewed on a central level?

MR. MACIOCE:  Objection.  This

A-820

Page 25

Rodi

is outside the scope of the Court's order.  So to the extent that you're asking questions that are outside the scope, I just want to clarify it's not binding upon the DOE as a representative, but as a fact witness.

MR. BALKEN:  Your continuing objection based on that point is noted, Counsel.  Thank you.

Q.    Please answer the question.

A.    On a central level would be more complicated accommodation requests, such as a person wanted to, say, do the Hajj in Mecca and be gone for several weeks or the principal and the employee couldn't agree on the local accommodation.

Q.    So it would only be if they could not agree to the accommodation on the local level?

A.    No.  It would be that we would get involved -- we would, like, help them work it out, and they would not -- they would apply through the central process and not on the local process.

A-821

Page 26

Rodi

Q.    Why would they have to apply through the central -- sorry, I cut you off. What were you saying?

A.    No, go ahead.

Q.    Why would an employee have to apply through the central process, as opposed to the local process, for an accommodation request?

THE REPORTER:  I am having trouble hearing you.

Q.    Why would a DOE employee -- and by the way, for the record, when I say "DOE," I mean Department of Education.

Why would a DOE employee have to apply at the central level for a religious accommodation request rather than at the local level?

A.    They would not have to apply. They would choose to apply.  They would choose to apply because they didn't know they could ask their supervisor directly; they weren't -- they didn't feel that their supervisor would give them a review; they wanted to have a more formal record.  Mostly

A-822

Page 27

Rodi

that.

Q.    Okay.  Now, let's go to religious exemption requests.  Were all religious exemption requests reviewed by you when they came from a Department of Education employee during your tenure as the executive director?

A.    No.

Q.    Was there a specific type of religious exemption request that you reviewed as the executive director?

MR. MACIOCE:  Objection.

A.    No.

Q.    So how would it be divided as to what religious exemption requests you would be reviewing, as opposed to others reviewing?

A.    There were thousands.  We depended on when the person applied and when -- who had what time.  There were only -- at the start there were three of us. There were only then two of us.  So it would be on who had the time that day to go through the exemptions.

A-823

Page 28

Rodi

Q.    So it wasn't an official designation, it was just a volume that was divided between you and the other decision-makers; is that right?

A.    Correct.

Q.    And when that decision-maker made the decision whether to grant or deny a religious exemption, did they speak to any of the other individuals who were considering requests for religious exemptions during this time?

A.    Before we started the process, we normalized it to determine what approach we would take.  We spoke with counsel from our office and the law department to review the general standards and determined how we would approach the review of the exemptions.

Q.    Were all those conversations with general counsel, or did any of them involve -- did any of them not involve the general counsel?

A.    I don't recall.

Q.    So what was the standard that you decided on after those conversations?

A-824

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 29 of 129 PageID #: 933

Page 29

Rodi

A.    We determined that the -- that religious exemptions would be on the whole an undue burden for the agency and that each one would be reviewed to determine whether they had submitted the -- the information that was needed to have an exemption considered, and that we then went forward and reviewed each one individually.

Q.    What do you mean by "undue burden"?

MR. MACIOCE:  Objection.

But you can answer.

THE WITNESS:  Sorry.

A.    That we had thousands of applications for exemptions, so a majority of those came from pedagogues.  We needed -- kids had returned to school.  We needed our pedagogues to be with our students to provide them with mandated services, to be in the classroom, to provide them with instruction, to ensure that we could essentially fulfill IEPs, make sure that we could provide related services, make sure that students were no longer, like, learning

A-825

Page 30

Rodi

off of screens.  And we recognized that, particularly with the volume of requests, that granting such exemptions would be an undue burden to the agency because we would not be able to meet our requirements to provide services in education if we granted those exemptions.

Q.    First of all, what do you mean by "exemptions"?  Exemptions to what?

A.    Exemptions to the vaccine.

Q.    Which vaccine?

A.    The COVID-19 vaccine.

Q.    When we've been saying "exemption" this whole time and going forward, religious exemption requests, have there been any other kind of religious exemption requests that you have reviewed as the executive director?

MR. MACIOCE:  Objection, outside of the scope.

MR. BALKEN:  It's not.  I'm narrowing her testimony.

Q.    You can answer.

A.    No.

A-826

Page 31

Rodi

Q.    And as to "undue burden," this term you keep using, what do you mean by that term?

MR. MACIOCE:  Counsel, just to be clear here, are you asking for her understanding from a legal standpoint or just factual?

MR. BALKEN:  I'm asking for her factual basis for use of the word "undue burden."  She says she used the standard of undue burden in making decisions, but she hasn't explained what that standard was for her.

MR. MACIOCE:  That's why I just asked.

A.    I just explained it.

Q.    No, you did not, so you have to explain the -- can you please define the word "undue burden" as you applied it in your decision-making process?

A.    That religious exemptions would be an extraordinary lift or a problem, or it would stop the DOE's or prevent the DOE from providing what we are required to do, which

A-827

Page 32

Rodi

is education.  That was the burden that we had.  The burden that we have is to provide education to students.

Q.    Right.  To clarify, I'm not asking what the undue burden was.  I'm asking you to explain to me what you were looking for in terms of determining whether something was an undue burden in your decision-making process.

MR. MACIOCE:  She did answer that.

Q.    What standard did you apply when you used this word undue burden?  What were you looking for?  You said something like extraordinary difficulties or something.  Is that the standard you were applying?  Did you have a specific standard you were applying?

MR. MACIOCE:  Objection.

But you can answer to the extent you understand the question.

A.    Yeah, the question is not clear, but what we were looking at was whether or not the employee had -- had done the -- had

A-828

Page 33

Rodi

applied for a religious accommodation, a religious exemption.  And so that if they hadn't -- if they hadn't supplied reasoning, if they hadn't supplied reasoning for their exemption, then they would have been denied for failure to provide a reason.  If they had applied a reason, which would -- might be a reason to -- like which would meet a standard of a religious exemption in the first place, we had the overall -- we can deny an exemption or a request based on that it is an undue burden for the agency, which that means is that granting such an exemption would not allow the agency to continue with its functions as required under the law.  It would not permit us to continue with providing the services that we are legally required to provide, if we granted those exemptions.

THE REPORTER:  Did you say granting those exemptions?

THE WITNESS:  Granting those exemptions.

MR. BALKEN:  Granting.

A-829

Page 34

Rodi

Q.   And you said at the beginning of the process, before you even started reviewing these, you and those you confer with determined that all requests by teachers for an exemption would be an undue burden, correct?

MR. MACIOCE:  Objection.  Sorry. But objection.

But you can answer.

A.   Correct.

THE REPORTER:  I'm going to request that everybody take it back a notch.

MR. BALKEN:  You mean, lower the volume?

THE REPORTER:  No, I mean just not step on each other.

MR. MACIOCE:  That was my fault. I apologize.

MR. BALKEN:  You mean, like speaking over each other?

THE REPORTER:  Yes.  So if you could just slow it down a little bit, please.

A-830

Page 35

Rodi

MR. BALKEN:  I will try.  I apologize.

Can you please reread the last question and answer.  Thank you.

(Record read.)

Q.    And after you reviewed a request for an exemption and determined that it had met the standard for that exemption, you still would have denied it if it was an undue burden, correct?

A.    Yes.

Q.    So why would you bother reviewing requests if you had already determined that they would be an undue burden before you reviewed them?

A.    Because the employee had applied, the employee had the right to have a review if something had changed where it had not been an undue burden.  If -- we also went into it with knowing that there were thousands, and had that changed, we would then know who might meet the standard if we had to go back and were able to -- if it was no longer an undue burden.

A-831

Page 36

Rodi

Q.      Did you -- after reviewing an accommodation request --

A.      Yes.

Q.      Sorry, strike that question.

After reviewing an exemption request and determining that it had met the standard for an accommodation request, did you then review it to determine whether it would be an undue burden, or did you just refer back to your prior determination that all such requests would be an undue burden?

MR. MACIOCE:  Objection.

But answer if you can understand the question.

A.      It was -- we knew that all of them were an undue burden, so we denied them as undue burdens.

Q.      So you would review it on a case-by-case basis for whether it met the standard of an exemption request, correct?

A.      Correct.

Q.      And then if it met the standard, you wouldn't review it on a case-by-case basis whether it met -- it was an undue

A-832

Page 37

Rodi

burden, correct?

MR. MACIOCE:  Objection.

But you can answer.

A.    Well, undue burden doesn't necessarily have to be a case-by-case basis, and the courts have said that.  The fact is that we were looking at -- it wasn't like one person applied and then another person applied and then we started digging from there.  We went into it knowing that we had thousands, knowing that it could absolutely alter the change of the -- the agency.  And we also had determined whether the employees that actually submitted an exemption request or whether they have just put in a piece of paper that said I don't want to take the vaccine.  So it would be hard for us to say that -- to give a defense of it being an undue burden if the person hadn't even met the minimum anyway.  So --

Q.    So you didn't -- sorry.  Go ahead.

A.    No, I'm done.

Q.    So you didn't review these

A-833

Page 38

Rodi

exemption requests on a case-by-case basis
on whether they were an undue burden?

MR. MACIOCE:  Objection.

But you can answer.

A.    We ensured that there was
nothing in any individual case that we could
have provided the exemption.  And as a
result, as much as we went into it saying
that like all of these are an undue burden,
we determined even individually that they
would be an undue burden based on the
combination of the DOE's responsibility to
provide services and the current vaccination
laws that were existing.

Q.    And you did that before you
began reviewing the exemption requests on a
specific basis, correct?

MR. MACIOCE:  Objection.

But you can answer.

A.    Correct.  Yes.

Q.    Did you first -- strike that
question.

So you mentioned a standard to
meet for religious exemption requests.  What

A-834

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 39 of 129 PageID #: 943

Page 39

                            Rodi

exactly was required to meet that standard?

        A.    The only thing that was required
to meet that standard was that the person
expressed that they had a sincere religious
belief on -- as to why they couldn't take
the vaccine.

        Q.    Do you know who Michelle Beckles
is, the plaintiff in this lawsuit?

        A.    Not personally.

        Q.    Did you review an exemption
request by her?

        A.    I did.

        Q.    Did you deny it?

        A.    I did.

        Q.    Did she meet the standard of an
exemption request?

        A.    She met what was required under
the exemption request, yes.

        Q.    So you denied it solely because
it was an undue burden, correct?

            MR. MACIOCE:  Objection.

            But you can answer.

        A.    "Solely" is a strong word, but
in terms of undue burden is a rightful

A-835

Page 40

Rodi

option under a religious exemption request.

Q.    I don't want to use strong words.

Did you deny it for any other reason other than it being an undue burden?

A.    I don't recall, but no.

MR. BALKEN:  Counsel, I just want to point out that I don't think the witness can say they don't recall the answer to a question that goes to the reasoning behind the denial of plaintiff's religious exemption request in this lawsuit.

MR. MACIOCE:  I understand that's your position.

MR. BALKEN:  I'm going to object to this denial as a default.

MR. MACIOCE:  I understand that's your position.  If you want to proceed with motion practice, that's your choice, but move on.

(**RL)MR. BALKEN:  Okay.  I think we should mark this for a ruling, unless the witness wishes to

A-836

Page 41

Rodi

change her answer.

Q.    Given --

A.    I did change my answer.  I did -- sorry.  I did clarify my answer that we -- that it was denied because of an undue burden, yes.

Q.    Was it denied for any other reason?

A.    No.

Q.    Thank you.

So you considered Ms. Beckles' request for an exemption to be properly supported by a sincerely held religious belief?

A.    We considered it to have met the minimum of what was required for an exemption application.

Q.    And what was that minimum?

A.    The minimum was that the employee would have demonstrated that they had a -- a sincerely held belief.

Q.    So Ms. Beckles' request for an exemption to the vaccine mandate -- sorry, request for an exemption demonstrated a

A-837

Page 42

Rodi

sincerely held religious belief?

A.    Yes.

Q.    Do you make policy decisions at school level for whether a school would make it an option for teachers to work remotely?

MR. MACIOCE:  Objection.  Is that a question?

MR. BALKEN:  Yes.

MR. MACIOCE:  I thought that just was just a statement.  I didn't hear a question at the end.

MR. BALKEN:  I started it with "did you."

MR. MACIOCE:  Sorry, I didn't hear that.

Q.    I'll restate the question.

Do you make policy decisions at the school level for whether a public school would make it an option for teachers to work remotely?

MR. MACIOCE:  Objection.  This is outside of the scope.

But you can answer.

A.    I don't understand your

A-838

Case 1:23-cv-08663-BMC    Document 42-2    Filed 10/23/24    Page 43 of 129 PageID #: 947

Page 43

Rodi

question.

Q.    What don't you understand about my question?

A.    I don't understand what you're asking me.

Q.    Did you decide whether a school would allow its employees to work remotely during the pandemic?

A.    I was involved with some of those policy decisions, yes.

Q.    What do you mean by "some"?

A.    Some, by "some," I mean, it depended on the time; it depended on the situation; it depended on where we were during the pandemic.  Which ones are you talking about?

Q.    Well, definitely during the pandemic.

A.    What part of the pandemic?

Q.    Go ahead.

A.    What part of the pandemic?

Q.    In 2021.

A.    Please narrow it down.

Q.    In September of 2021.

A-839

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 44 of 129 PageID #: 948

Page 44

Rodi

A.    In September of 2021 vaccines were available, and the determination of who could work remotely was dependent upon -- it was dependent upon those who had been vaccinated -- no, those who had been vaccinated, but were unable to keep the vaccination or, like, take the vaccination. And that was it.  Everyone else had to work in the school.

Q.    What do you mean unable to take a vaccination?

A.    Meaning that they were -- they got vaccinated, but they were so sick that they weren't necessarily considered vaccinated medically speaking.  So they were still -- they were immunocompromised essentially.

Q.    Okay.  Did you make -- strike that question.

Are you aware of the District IS392 public school?

A.    Yes.

Q.    Did you make the decision as to whether teachers could work remotely in

A-840

Page 45

Rodi

September 2021 at that school?

A.    Again, the only people who were working remotely across the agency, so including that school, would be those who were immunocompromised, but had been vaccinated.

Q.    Did you make the decision as to whether IS392 would offer remote options for teachers during September 2021?

A.    I did not.

Q.    Were you aware of their decision as to whether to offer remote options in September of 2021?

MR. MACIOCE:  Objection.

You can answer.

A.    We have 1800 schools.  I was not necessarily familiar with everybody's -- every school's decision on what remote could be offered.

Q.    Were you familiar with whether Ms. Beckles' school offered a remote option when you denied her request for religious exemption?

A.    I would have not been aware of

A-841

Page 46

Rodi

any of the individual schools when we made the decision.

Q.    Did you take into consideration whether or not Ms. Beckles would be able to work remotely per her school's policy when you denied her request for religious exemption?

MR. MACIOCE:  Objection.

But you can answer.

A.    No, because we looked at the bigger picture, and the bigger picture was that we had to provide services for 1.1 million students, that only the people that were vaccinated could enter schools. So we were very limited if -- that if we had provided exemptions for all of those people, none of them would be able to enter schools, that we had programs where students needed to have in-service learning, particularly if schools were providing special ed programs, if schools were providing counseling, which is most of our schools.  So it didn't matter whether a school could provide remote or not, because most schools could not and it

A-842

**Page 47**

Rodi

would have been a burden for all schools if they had to provide remote.  Or if they were forced to provide remote, we -- again, the ones who -- the people that were immunocompromised, we already knew we would have that problem because they were -- they had been vaccinated, but they were still of a concern that they could not be around students, so we were not looking at whether an individual school was able to figure it out or not.

Q.   Did you consider Ms. Beckles' school specifically, as to whether they could handle that?

A.   No.

Q.   Did you consider the request for religious exemption as a request for religious accommodation?

MR. MACIOCE:   Objection.

But answer if you can understand.

A.   I don't understand.  What's the question?

Q.   Did you consider the request for

A-843

Page 48

Rodi

religious exemption to be a request for religious accommodation?

A.     No.

Q.     Did you consider Ms. Beckles' request for a religious exemption to be a request for a reasonable religious accommodation?

MR. MACIOCE:  Objection.

But you can answer.

A.     No.

Q.     Did you treat Ms. Beckles' request for a religious exemption as a request for reasonable religious accommodation?

MR. MACIOCE:  Objection.

But you can answer.

A.     Yes and no.  Yes, in terms of like we used a standard that's used by -- under religious accommodations, but I mean we were in unchartered territory.  Like how do you treat a religious exemption?  That's not something that we normally do.  So we used the standard, but the fact is that we -- that it was not a religious

A-844

Page 49

Rodi

accommodation in the sense that like I need to leave early for -- on Friday afternoons for the Sabbath, or I need to pray at a certain time.  It's not the same thing.  It was a lot more complicated.  It was a lot more -- it was unprecedented.  It involved thousands of people.  We don't just look at one school, we look at the entire agency, and that was -- so while many of these standards overlap, the -- it isn't quite the same.

Q.    How did the standards not overlap?

MR. MACIOCE:  Objection.

But to the extent you know, you can answer.

A.    We didn't -- we weren't able to look at it due to the timing, the volume, the nature of the existing laws.  We were not able to look at them in the same way that we would look at a religious accommodation, because we don't normally have an entire school building who doesn't -- like can't come into the

A-845

Page 50

Rodi

building, or we don't normally have employees that say they can't come into the building because of religious accommodations.  We don't normally have other schools with the same issue.  We don't normally have vulnerable students.  We don't normally have students who couldn't get vaccinated.  So there was a lot of things that you we're looking for some sort of standard, and we looked to the federal standard, but we couldn't -- it wasn't the same because it wasn't -- it wasn't the same setting that most accommodations are normally provided in.

Q.    Did you deviate from the federal standard?

MR. MACIOCE:  Objection.

But to the extent you understand you can answer.

A.    What's the federal standard for exemptions?

Q.    Well, you're the one who said -- who mentioned the federal standard, so please tell me what you were referring to.

A-846

Page 51

Rodi

A.    I said we looked at the federal standard.  I didn't say we -- I said we don't have a federal standard for exemptions.

Q.    You said you looked at the federal standard for reasonable accommodation requests, correct?

A.    Correct.

Q.    Did you deviate from that standard for exemption requests?

A.    Yes and no.  Yes, in that we had -- did not have the opportunity to look at them as individually as we probably would have in a regular reasonable accommodation.  And yes -- but yes in terms of the reasoning that we gave for why we couldn't provide that exemption.

Q.    You deviated from the federal standard in the reasoning you gave --

A.    No.

Q.    -- in terms of why you couldn't provide the exemption?

A.    No.  We said we used the federal standard in terms of what we asked the

A-847

Page 52

Rodi

employee for, and we used the federal standard for the reasoning that we provided as to the denial.

Q.    And how did you not use the federal standard?

A.    Where we did not look as individually as we probably normally could have, but we don't have that -- necessarily that obligation, because we were presented with them all at once and not as a -- on a -- on a one-at-a-time basis.

Q.    Were there any other differences in -- from the federal standard in how you reviewed and decided upon religious exemption requests?

A.    No.

Q.    And we've been using this term the "federal standard," which you first introduced here, what do you mean by that?

A.    I mean by the way that you review a religious accommodation, where the person has to have a sincerely held belief and the DOE has to -- and the employer gets to determine whether they can provide that

A-848

Page 53

Rodi

accommodation or give a valid reason as to why that accommodation cannot be provided. And one of those options is an undue -- that the request is an undue burden.

Q.    Okay.  On all those cases where you denied a religious exemption request, after determining that they had met the standard for a religious exemption, did you factor in how strongly they met the standard for deciding whether it was an undue burden?

MR. MACIOCE:  Objection, outside of the scope.

You can answer.

A.    What do you mean by "how strongly"?

Q.    How strongly they demonstrated their sincerely held religious beliefs.

A.    There's not -- you can't question how strongly a person believes or doesn't believe.  There's no scale for that.

Q.    So you didn't question them?

A.    Whether they love God or really love God, we didn't put that in -- we didn't -- that's not -- you're not allowed

A-849

Page 54

Rodi

to look at that.

Q.    Did you deny any -- did you determine that anyone failed to demonstrate sincerely held religious beliefs?

A.    Yes.

Q.    How?

MR. MACIOCE:  Objection, outside the scope.

But you can answer.

A.    Because they submitted a P -- document that said I don't want the -- to take the vaccine, period.

Q.    So certain employees did a better job at demonstrating sincerely held religious beliefs than others in terms of the exemption request, correct?

A.    Certain employees either demonstrated it or they didn't, period. That was it.

Q.    And you didn't look into how strongly they demonstrated it?

MR. MACIOCE:  Objection.

You can answer.

A.    Again, that's not a standard.

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 55 of 129 PageID #: 959

Page 55

Rodi

That's not a legal standard, how strongly. What -- because someone gave seven pages versus three pages, whether someone said that they went to church three times a week versus one time a week, you're not allowed to do that under the federal standard.  But if someone --

Q.    I understand your legal reasoning.  Sorry, keep going, speaking.  I didn't mean to interrupt.

A.    What did you ask?

Q.    I interrupted you, and I apologize for interrupting you.  Please proceed.

A.    What I was saying is that if someone doesn't even mention anything, where they just say I do not want a vaccine and they say nothing else, that is not demonstrating a religious -- a religious belief or standard at all.  But if someone says I don't want a vaccine because I don't believe in -- that God needs us to take vaccines, that's all they needed to say. But simply saying I don't want a vaccine is

A-851

Page 56

Rodi

not expressing -- it's not saying why.  If you didn't say why, you didn't meet what -- the request.

Q.    Understood, and I understand your reasoning.

I am just asking you whether, after determining that they said why they have sincerely held religious beliefs, did you inquire further into how sufficiently they demonstrated that?

MR. MACIOCE:  Counsel, I'm going to object.  That's outside the scope. And can you just give some sort of proffer as to how this relates to the topic you've noticed this deposition for?

MR. BALKEN:  We're talking about her reasoning in denying a religious exemption request.

MR. MACIOCE:  And she provided that reasoning that it was an undue hardship.  I did not hear anything about sincerity or --

MR. BALKEN:  There are more

A-852

Page 57

Rodi

facts here.  I'm asking her about other things she considered for that decision.  I just asked her whether she -- I asked her repeatedly, actually, and she hasn't even answered yet, whether she considered how strongly the applicants demonstrated their sincerely held religious beliefs.

MR. MACIOCE:  And you said "applicants."  Let's keep this to Ms. Beckles, which is what you noticed this for.

MR. BALKEN:  I'm laying a foundation so I can get to Ms. Beckles.

MR. MACIOCE:  Well, my objection is noted, so.

MR. BALKEN:  Yes, it is.

BY MR. BALKEN:

Q.    Ms. Rodi, after you determined whether an applicant for an exemption request demonstrated that bare minimum that they held a sincerely held religious belief,

A-853

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 58 of 129 PageID #: 962

Page 58

Rodi

did you consider how strongly they demonstrated that sincerely held religious belief upon deciding whether they would be imposing and undue hardship or undue burden on the agency?

A.    Absolutely not.

Q.    Thank you.

And did you do that for Ms. Beckles?

A.    Absolutely not.

Q.    So for Ms. Beckles, when you denied her religious exemption request as an undue burden, you did not consider how strongly she had demonstrated her sincerely held religious beliefs, correct?

A.    Correct.  We did not -- we did not -- it did not matter how strongly or not strongly a person demonstrated their beliefs.

Q.    Including Ms. Beckles?

A.    Including Ms. Beckles.

Q.    Thank you.

MR. BALKEN:  Why don't we take a five-minute break.

A-854

Page 59

Rodi

(Recess.)

BY MR. BALKEN:

Q.   Ms. Rodi, before you is Exhibit 1 for this deposition.  It is -- it was produced by the defendant in discovery as Defendant's Bates number 6 through 8.

(Exhibit 1, vaccine exemption document submitted by Michelle Beckles to NYC Department of Education, Bates stamp DEF000006 through '8, marked for identification, as of this date.)

Q.   Do you recognize this document?

A.   Yes.

Q.   What is it?

A.   It's a document submitted by your client and several other applicants about their religious -- about their reasons that they don't want to take the vaccine.

Q.   You said "several other applicants."

A.   Yes.

Q.   This specific letter was sent by several other applicants?

A.   Oh, yeah.

A-855

Page 60

Rodi

Q.     If you scroll down to the bottom of the page, it's Bates number 8, and if you look at the bottom of that page, and it looks like -- you're an attorney, so you're aware of what a notarization is, right?

A.     Oh, I'm not -- if you're implying that -- I'm not saying that other people sent the exact letter with her signature.  I'm saying the content of the letter was -- was sent by many people, but the same language was taken from someplace else.

Q.     And --

A.     But this is from -- it looks like it's from your client, and it's notarized.

Q.     By her signature?

A.     Yes, her signature is notarized. Your client's signature is notarized.

Q.     And have you seen this document before today with my client's signature on it?

A.     Yes, I believe so.

Q.     And by "my client," you mean

A-856

Page 61

Rodi

Ms. Beckles, the plaintiff in this lawsuit, right?

A.   What's that?

Q.   By "my client," you mean Ms. Beckles, right?

A.   Yes, Ms. Beckles, your client.

Q.   And what was the context in which you have seen this document previously, specifically with Ms. Beckles' signature on it?

A.   When -- I would have seen this document when I reviewed her application for an exemption about the vaccine.

Q.   Did you?

A.   Yes.

Q.   Were there any other documents attached to this one when you reviewed it?

A.   I believe there was something else.  I don't remember -- recall what it was.

Q.   And you reviewed all of the documents attached to it as well?

A.   Yes.

Q.   Let's go to Exhibit 2.

A-857

Page 62

Rodi

(Exhibit 2, letter from Temple of the Healing Spirit, Florida, dated 9/16/2021, no Bates stamp, marked for identification, as of this date.)

Q.    This we're marking as Exhibit 2 to this deposition.  Let me know when you have it up.

A.    It's up.

Q.    Yeah.  This was produced in discovery by defendant, Bates numbered Defendant's Number 5.  Do you recognize this document?

A.    Yes.

Q.    What is it?

A.    It's a document that was provided to several DOE employees to talk about their -- their sincerely held beliefs, and in this case -- in this case this was provided to your client Ms. Beckles.

Q.    And provided by whom?

A.    A pastor in Florida.

Q.    Okay.  Did you review this document in connection with considering Ms. Beckles' exemption request?

A-858

Page 63

Rodi

A.     Yes.

Q.     Was it submitted as an attachment to Ms. Beckles' exemption request, the letter we just looked at?

A.     They were all -- everything was submitted as attachment.  Everything that -- all the supporting documents were submitted as attachments.

Q.     Were there any other supporting documents, other than this document, attached to Ms. Beckles' request for an exemption?

A.     Off the top of my head, I can't remember if she submitted anything else.

Q.     And earlier today -- earlier, when you testified that you reviewed certain documents in connection with Ms. Beckles' exemption request, did you review any documents other than these two documents I've showed you today?

A.     I would have reviewed any documents that she submitted.  That was the process in which we did the review of thousands of applications.

A-859

Page 64

Rodi

Q.    Did it include more documents than these two documents?

A.    Pardon?

Q.    Did the documents that you reviewed there, you know, as part of your preparation for this deposition that had to do with her exemption request, did that include any documents other than these two?

A.    I honestly don't recall.

Q.    Let's go to Exhibit 3.  Let me know when you have it open.

(Exhibit 3, EEOC Code of Federal Regulations, Part 1605, Guidelines On Discrimination Because of Religion, dated 7/1/2016, Bates stamp DEF000009 through '33, marked for identification, as of this date.)

A.    It's open.

Q.    Okay.  This was a document produced in discovery by the defendant, Bates numbers Defendant's 9 through 33.  So if you look at pages 9 through 13, that seems to be one document.  Do you see that?

A.    9 through 13?

A-860

Page 65

Rodi

Q.     Yes.

A.     Let's see, the pages aren't really marked.

Q.     Bottom right of each page.

A.     Oh, 15 -- oh, I see.  Okay, sure.

Q.     And then number -- let's start with that.  Do you recognize this document?

A.     It's pretty generic.  It's the Code of Federal Regulations, and then there's some other -- this isn't an original document from anybody.

Q.     Well, my question to you is: Was this submitted in connection with Ms. Beckles' request for an exemption?

A.     Yes, it was.

Q.     And you reviewed this document --

A.     Yes.

Q.     -- while considering her request for an exemption?  Okay.

A.     Yes.

Q.     Okay.  The next document is page number Defendant's 14.  It's a single page,

A-861

Page 66

Rodi

it looks like.  Do you see that?

A.    That's what, number 4?

Q.    It's page number -- at the bottom right of each page there's page numbers.  This is Defendant's 000014.

A.    Which one are you calling it?  You're calling it 4?

Q.    No.  This was page 14 of --

A.    On document 3?

Q.    This is -- so in Exhibit 3, which we are looking at now.

A.    Okay, I'm in -- okay, let me go back to Exhibit 3, sorry.  What page on 3?

Q.    On the bottom right of each page there's Bates numbers.  So that is -- it says "DEF," several zeros and then a number.  That number is 14.

A.    14, sure.

Q.    Do you recognize this document?

A.    Yes.

Q.    What is it?

A.    It's something from the Embryo Project Encyclopedia.

Q.    And did you review this in

A-862

Page 67

Rodi

connection with Ms. -- strike that question.

Was this submitted as an attachment to Ms. Beckles' request for an exemption that you reviewed?

A.   Yes.

Q.   And you reviewed this document in connection with considering her request for an exemption?

A.   Yes.

Q.   The next page, not next exhibit, next page, so it's Defendant's 15, and it goes Defendant's 15 through Defendant's 33, do you see that?

A.   Yep.

Q.   Do you recognize this document?

A.   Yes.

Q.   What is it?

A.   It is something from -- from, I guess, the Catholic Church on bioethical questions.

Q.   Did you review this -- strike that question.

Was this attached to Ms. Beckles' request for a religious

A-863

Page 68

Rodi

exemption that you reviewed?

A.    Yes.

Q.    Did you review it in connection with considering that request for religious exemption from the vaccine?

A.    Yes.

Q.    Has this refreshed your memory as to all other documents you reviewed in connection with the religious exemption request by Ms. Beckles?

A.    Yes.

Q.    So then were there any other additional documents submitted with Ms. Beckles' request?

A.    I don't recall.

Q.    Didn't you just say this refreshed your memory?

A.    I mean this all refreshed my memory, but I can't -- if you're telling me that there's more, I can't tell you if there's more.

Q.    I got it.

Let's go to Exhibit 4.  Let me know when you have it up, please.

A-864

Page 69

Rodi

(Exhibit 4, collection of e-mails, dated 9/23/2021 through 9/28/2021, Bates stamp DEF000034 through '37, marked for identification, as of this date.)

A.    It's up.

Q.    We're marking this as Exhibit 4. This is Defendant's discovery production numbers Defendant, several zeros, 34 through 37.  It's a collection of e-mails.

Let's look at that first e-mail. It's dated September 23rd, 2021?

A.    Yes.

Q.    Do you recognize this e-mail?

A.    Yes.

Q.    What is it?

A.    It is the e-mail that we send to all employees -- or we sent to all employees when they applied for a vaccine-related exemption or accommodation.

Q.    What employee is this one sent to?

A.    It looks like it was sent to your client Ms. Beckles.

A-865

Page 70

Rodi

Q.    Is it sent automatically, or did an individual send it, as far as you know?

A.    It's sent automatically.

Q.    Okay.  Let's go to the next page, so that's page Defendant's 35.  Do you see that page?

A.    Yes.

Q.    It's another e-mail dated September 25th, 2021 at 1:33 a.m., and it's to an e-mail address at -- and that looks like Ms. Beckles' e-mail address?

A.    Yes.

Q.    And it's -- and what exactly is this e-mail saying, or what is this e-mail, as far as you know?

A.    It is a denial of her vaccine religious exemption application.  It is a determination, and it is that she has been denied because her -- because she -- an exemption would be an undue burden.

Q.    Okay.  Do you recognize this document?

A.    Yes.

Q.    I'm sorry, I meant do you

A-866

Page 71

Rodi

recognize this e-mail?

A.      Yes.

Q.      Did you write it?

A.      The -- not the -- so I wrote the general determination, but it's not an individual -- it's not an individual e-mail. It wasn't just written to Ms. Beckles.  It's like part -- it's part of the SOLAS system.

Q.      So this is an automatic e-mail sent automatically when you deny a religious exemption request to any employee?

A.      Correct.  When it was denied, it was an automatic e-mail, correct.  Once I would go in to -- make -- look -- basically you go in, you see what the employee was applying for, look at their documents, then do a drop-down, and this would then be triggered to go out.

Q.      And this went -- I mean, if an employee was denied an exemption request, this automatically got sent to them, or was there any other kind of message that could be sent to that employee Ms. Beckles?

MR. MACIOCE:  Objection.

A-867

Page 72

Rodi

A.    The only other one that we sent was that you failed to submit any supporting documentation and then we just closed it.

Q.    Okay.  So those that received this, those are the ones who demonstrated their sincerely held religious beliefs, according to your understanding of that standard, correct?

A.    Correct.

Q.    Let me just read it into the record.  It says, Dear Ms. Beckles, We have reviewed your application and supporting documentation for a religious exemption from the --

Ms. Rodi, can you please read this e-mail into the record.

A.    Sure.  Do you want me to read it into the record?

Q.    Yes.

A.    "Dear Michelle Beckles, We have reviewed your application and supporting documentation for a religious exemption from the DOE COVID-19 vaccine mandate.  Your application has failed to meet the criteria

A-868

Page 73

Rodi

for a religious based accommodation.  Per the order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees or families without posing a direct threat to health and safety.  We cannot offer another worksite as an accommodation, as that would impose an undue hardship (i.e., more than a minimal burden) on the DOE and its operations.  Sincerely."

Q.    Sorry to interrupt.

Okay, let's start with that first sentence.  "We have reviewed your application and supporting documentation for a religious exemption from the DOE COVID-19 vaccine mandate."  Okay, next sentence, "Your application has failed to meet the criteria for a religious based accommodation?"

Wasn't this different from a request for a religious-based accommodation per your prior testimony?

A.    Yes.  But we also were also

A-869

Page 74

Rodi

dealing with a lot of different applications, and we could not even apply -- we could not even provide -- we tried to give one document, but we said -- we said that she failed to meet the criteria for a religious-based accommodation and -- what's your question?

MR. BALKEN:  Theresa, could you please reread my question into the record -- or just not into the record, just repeat it for the witness.

(Record read.)

MR. BALKEN:  You don't have to read her answer.  She asked clarity on the question, so I asked it to be reread.

Q.    Can you please answer the question now?

A.    As I said, we had to use -- we were in unchartered territory.  We had to use some kind of standard language, and we did use some accommodation language, but we didn't -- she didn't meet the criteria, because we didn't -- we didn't have the

A-870

Case 1:23-cv-08663-BMC    Document 42-2    Filed 10/23/24    Page 75 of 129 PageID #: 979

Page 75

Rodi

ability to provide the exemption.

Q.    Let's go to the last sentence on that paragraph.  You wrote, "We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e., more than a minimal burden) on the DOE and its operations."

So my question is:  Is that the only possible accommodation that could be provided for an employee seeking an exemption to the vaccine mandate?

A.    The only -- the only other -- well, if you're talking about -- you have an employee who -- most employees need to work on-site.  What else would we provide if they can't go into our buildings?

Q.    So you did not consider any other alternative accommodations to an employee seeking a vaccine exemption other than for them to work off-site, correct?

A.    Yeah, because we had thousands of people.  We couldn't have that many people not working with students.

Q.    And for Ms. Beckles, then, you

A-871

Page 76

Rodi

did not consider any alternative accommodations to her as a vaccine exemption other than working off-site, correct?

MR. MACIOCE:  Objection.

You can answer.

A.    Well, she couldn't come into DOE buildings.  She wasn't vaccinated.

Q.    Is that a yes or a no?

A.    It's -- we didn't have an option.

Q.    So you didn't consider any other option?

A.    She couldn't come into DOE buildings.

Q.    So you did not consider any option other than working on-site or off-site with respect to whether it would be an undue hardship to grant Ms. Beckles' request for a vaccine exemption?

A.    So we -- I don't -- if we had no -- she was not permitted in DOE buildings, so by her and by her -- and it's not just her.  Thousands of people were not permitted in DOE buildings.  So we needed

A-872

Page 77

Rodi

teachers, pedagogues in with students.  The students were in DOE buildings.  Who was going to take that job?  We were going to pay her to not be there, but then pay somebody else to be there?

Q.    So there was -- so you did not consider any other options other than working off-site or working on-site in terms of like whether --

A.    The essential --

Q.    Please let me finish.

MR. MACIOCE:  Just let me note my objection.

But you can answer.

THE REPORTER:  Everybody was talking on each other.

(Record read.)

A.    So the majority of our employees are teachers.  The majority of people who applied for an exemption were teachers, pedagogues.  The essential functions of their job, the essence of their work requires them to teach and to be in front of students and work with students.  So we

A-873

Page 78

Rodi

didn't really have that many options.  It would be like the same thing if we had a plumber who applied for an exemption and they couldn't go into schools.  We couldn't just say, well, you're going to do office work.  So the same thing with teachers.  We didn't have options because their work required them to teach students, to be in front of students and the students were in the buildings.  The students were not also on the computer.  The students were no longer remote.  So we were looking at having the -- we had asked all the students -- all the students were back.  We had asked all the employees to return to service.  So that's why doing another job that wouldn't have been -- we're going to pay someone to sit around?  We weren't going to do that.  So if the person did not receive a vaccination, they weren't able to go into our buildings, then we could not provide them with any other accommodation.

Q.    That includes Ms. Beckles, correct?

A-874

Page 79

Rodi

A.     That includes Ms. Beckles.

Q.     You said you didn't have many other options other than taking the vaccine; is that what you meant?

A.     We didn't have options in terms of places that people could work.  If a person was -- was a -- again, if the functions of their job required them to be in a school in front of children, where are they going to go, what are they going to do if they can't do that?

Q.     So I'm not asking you right now the reasoning behind the options.

I'm asking you whether there were any options, other than taking the vaccine or working in another worksite, for those who requested a religious exemption?

A.     No, working in another worksite was not an option.  It was either come to work vaccinated or don't get vaccinated.  Those were the options.

Q.     Understood.  What I mean is when you ruled out other options that would impose an undue hardship, and therefore

A-875

Page 80

Rodi

could not be other options, you only consider --

A.    Right, there were not other options.  There were not other options.

Q.    Please let me finish.

A.    Finish.

Q.    When you determined that it would be an undue hardship to grant a religious exemption, did you consider whether anything can be done, other than offering another worksite to accommodate those requests?

A.    Yes, Yes.

Q.    What else did you consider?

A.    We considered whether we could have people work remotely from home again.  We considered whether we could have people work in a different building.  We considered whether we could have -- we couldn't consider -- they couldn't go into any DOE buildings, so we couldn't consider anything that involved them in DOE buildings.  So but we had already had these kids home for a year, and there were so many problems with

A-876

Page 81

Rodi

remote learning.  We had kids who didn't have access.  We had kids that were, you know, Special Ed kids who needed on-site services.  We had kids that needed one-to-one paras.  We had kids that needed to have their teacher there in the room working with them.  How do you teach a kid?  Like Ms. Beckles is a Special Ed teacher.  How do you do Special Ed over a remote video when the kids are in the classroom, so --

Q.    Okay.  And those other -- go on.

A.    Go ahead.  No, done.

Q.    Those other things that you're saying you considered, are they mentioned in this e-mail as posing undue hardships?

A.    What?  I don't understand your question.

Q.    All those alternatives that you just ruled out, other than working off-site in another worksite, were those mentioned in this e-mail we're looking at right here as things that would impose an undue hardship on a DOE --

A.    Working off-site is the umbrella

A-877

Page 82

Rodi

of all those things.

Q.    Other than working off-site, did you consider any other alternatives?

A.    Working on the moon?  It's either -- you're either on-site or off-site. I don't understand the question.

Q.    So you did not consider any other alternatives to taking a vaccine or working off-site in terms of when you decided that it would be an undue hardship to grant an exemption to the vaccine for Ms. Beckles?

A.    What other options are there?

Q.    I believe I'm asking the questions.

A.    I'm asking you to clarify your question.  What other options are there?

Q.    I'm not offering options.  I'm asking you whether you thought of any others.

A.    You're either working in a DOE building, which they were not permitted to do if they were unvaccinated, or you're working off-site.  Off-site has a broad

A-878

Page 83

Rodi

definition.  Off-site could mean in a different building; off-site could be on the moon; off-site could be at someone's house.  Right now some of us on this call are working off-site.

Q.    So other than working off-site or taking the vaccine, you did not consider any other alternatives when deciding whether it would be an undue hardship to grant an exemption to Ms. Beckles, correct?

MR. MACIOCE:  Objection.

But you can answer.

A.    There are no other options.

Q.    So you didn't consider any other options because you don't believe they existed, correct?

MR. MACIOCE:  Objection.

A.    If you suggest some other options, I'll tell you whether or not they were considered.

Q.    But you didn't consider anything other than these two options that we've discussed and that you are telling me there is none other than, correct?

A-879

Page 84

Rodi

MR. MACIOCE: Objection.

A.    I'm not clear what you're trying to get at. You're suggesting -- you're implying that there are other options that we would have considered.

Q.    I'm not implying anything. I'm just asking you whether you considered any options other than working on-site or off-site in deciding it was an undue hardship to grant an exemption to Ms. Beckles.

A.    It would be an undue hardship to grant an exemption to anyone if they couldn't come into our schools and teach their children and do their job. That was the undue -- that was the undue burden for us.

MR. BALKEN: I don't think the witness is answering the question, Counsel.

MR. MACIOCE: Counsel, my understanding of the witness's testimony has been that in the DOE's view you either worked on-site or you

A-880

Page 85

Rodi

didn't and those were the only two options.  I understand that you disagree, but that's my witness's understanding and that's what she's answered to.

MR. BALKEN:  If that's the witness's testimony, I can move on.

Q.    Is that your testimony, Ms. Rodi?

A.    Yes.

Q.    And let's look at that second sentence in that paragraph, "Per the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees or families, without posing a direct threat to health and safety?"

What order were you referring to when you wrote this message?

A.    There was an order from the Commissioner of Health that said that nonvaccinated people were not permitted into DOE buildings or buildings where DOE

Page 86

Rodi

students were receiving education.

Q.    Did that order provide for a reasonable accommodation as an exemption to that order?

A.    The order did not go to a -- did not mention a reasonable accommodation.

Q.    Okay.  Let's go to Exhibit 5.

(Exhibit 5, two documents, first document Orders of the Board of Health and Commissioner of Health and Mental Hygiene, in Re:  COVID-19 vaccination requirements for DOE employees and associates, dated 8/24/2021 through 2/9/2023, Bates stamp DEF000425 through '435, marked for identification, as of this date.)

Q.    Let me know when you have it up.

A.    Yes, I have it up.

Q.    And I'm marking this as Exhibit 5 for this deposition.  This was produced by defendant in discovery as Bates numbers 425 through 435.

Do you recognize this document?  Rather, it's really two documents.  Do you

A-882

Page 87

Rodi

recognize them?

A.    I recognize the first.  It's the order that had been repealed.

Q.    The first, okay.

A.    The first one is the order that was repealed, and the second was the order.

Q.    It's actually more than two documents.  I apologize.

A.    Yeah, it's all the orders that were given.

Q.    So let's go to -- and is this -- okay, let's go to the one that goes from Defendant's 431 through 420 -- 428 through 431, and it's dated September 15th, 2021?

A.    Yes.

Q.    So my question to you:  Is this the order you were referring to in effect at the time of that -- when that e-mail was sent that we just looked at, which I believe was September 25th, 2021?

(Record read.)

A.    Yes, this is the order that I was referring to.

Q.    Let's go to Number 6, bullet 6

A-883

Page 88

Rodi

in that order, and it's Defendant's 431, and it's under bullet number 6; do you see that?

A.    Yep.

Q.    And can you read that into the record, that bullet?

A.    "Nothing in this order shall be construed to prohibit any reasonable accommodations otherwise required by law."

Q.    So did this order provide for reasonable accommodations to its mandate?

A.    Reading this, I would -- the plain letter of the law would say yes, there could be accommodations.  It did not say exemptions, though.

Q.    And the -- so you're saying this wouldn't -- that such accommodations would not include exemptions?

A.    That's for -- considering that our exemption process was upheld by the Second Circuit, I would say that it was -- they were -- exemptions and accommodations weren't considered the same thing.

Q.    You are referring to a Second Circuit.  What exactly are you referring to

A-884

Page 89

Rodi

when you say it was upheld by the Second Circuit?

A.    Our -- the Second Circuit upheld our exemptions, our ability to deny exemptions.

Q.    And was that decision rendered -- that you're referring to, was that rendered before you wrote the language in that message we just looked at in Exhibit 4?

MR. MACIOCE:  Objection.

But you can answer to the extent you know.

A.    I don't know the dates of when things were written.

Q.    Were you considering that Second Circuit decision that you just referenced when you wrote the language in Exhibit 4?

A.    I don't believe the Second Circuit decision was out at that time.

Q.    Did you consider this order before crafting that language in Exhibit 4?

A.    Yes.

Q.    And did you determine that there

A-885

Page 90

Rodi

was no -- strike that question.

Let's go on to the next exhibit, Exhibit 6. Please let me know when you're on it.

(Exhibit 6, Michelle Beckles Letter of Appeal for Religious Exemption Request, dated 9/27/2021, Bates stamp DEF000003 and '4, marked for identification, as of this date.)

A.    I'm on 6.

Q.    This is discovery produced by the defendant, Bates numbers 2 through 4.

Do you recognize this document?

A.    I do not recognize this document.

Q.    Then you do not recall reviewing this document at any time in 2021?

A.    I did not handle appeals.

Q.    I'm sorry?

A.    I did not handle appeals.

Q.    And your understanding is that this is an appeal?

A.    Letter of Appeal for Religious Exemption Request, that's what it says on

Page 91

Rodi

the top.

Q. Okay. It wasn't reviewed by you, okay.

Let's go on to the next one, Exhibit 7. Let me know when you have it up.

(Exhibit 7, DOE Office of the General Counsel, response to EEOC complaint of Michelle Beckles, dated 6/28/2022, Bates stamp DEF000038 through '44, marked for identification, as of this date.)

A. I have it up.

Q. This is discovery produced by the defendant. It's Bates number 38 through 44. Do you recognize this document?

A. I know what it is. I've not seen it before.

Q. What is it?

A. It's a response to an EEOC complaint that the DOE released from and it came from our Office of the General Counsel.

Q. Were you consulted in preparation of this document?

A. I don't think so, but I might

A-887

Page 92

Rodi

have -- I mean, I was -- I may have been consulted in terms of asking -- being asked for documentation, but I don't recall if I was consulted specifically for the creation of this document.

Q.    Were you consulted as to the factual accuracy of the statements in this document?

A.    I don't -- I don't recall.  I mean, I work with Mr. Chou regularly.  He would ask me regular questions about exemption requests.  I did not specifically review this document at any point, but that doesn't mean that he didn't ask me a question about it.

Q.    Let's go to Exhibit 8.

(Exhibit 8, transcript of deposition of Katherine Rodi, dated 10/24/2023, Bates stamp DEF000458 through '560, marked for identification, as of this date.)

A.    Okay, I have it open.

Q.    Okay.  This is a big one, meaning large in size.  It's a document

Case 1:23-cv-08663-BMC    Document 42-2    Filed 10/23/24    Page 93 of 129 PageID #: 997

Page 93

Rodi

produced by defendant as Bates numbers 458 through 560.  Do you recognize this document?

A.    I do.

Q.    What is it?

A.    It's a transcript of my deposition for the Lydia Byam case.

Q.    And does this refresh your memory as to whether -- as to who Lydia Byam was?

A.    Yes.

Q.    And who was she?

A.    She was a DOE employee who had, I believe, also applied for an exemption to the -- to the vaccine.

Q.    Does this refresh your memory as to what case you testified in a deposition for in October of 2023?

A.    Yes.  I mean, this was the October 2023 one that I referred to, yes.  I didn't remember the name.  I didn't remember the actual thing.  I have a lot of work.

Q.    Me too.

Okay.  So this is your

A-889

Page 94

Rodi

deposition testimony written down?

A.    Sure.  Sure.

Q.    And you signed a notarization of this testimony, correct?

A.    I believe so.

Q.    Let's go to page 80.

MR. MACIOCE:  Just to go forward, I just want to just make two notes for the record.  Just one that Ms. Rodi in this deposition, unless I'm incorrect, was not deposed as a 30(b)(6) witness.  And also, just as a matter, we object on the grounds that this is outside the scope of the reasoning for her denial of Michelle Beckles' specific request.

Q.    Okay.  Ms. Rodi, in this deposition, did you discuss your reasoning for denying religious exemption requests for teachers of the DOE?

A.    I honestly don't recall what we got into in this one.

Q.    Okay.  Let's go to page 80.

A.    Okay.

A-890

Page 95

                              Rodi

Q.    You see that.  Okay.

A.    Are you talking about like the declaration page?

Q.    Yes.

A.    Yes.

Q.    And this is the page that you believe you signed, right, you notarized?

A.    I believe so.  I honestly don't recall.

Q.    And just to clarify, what is the date of the -- and this is actually on the top of the first page, but what's the date of this?  Strike that question.

            MR. BALKEN:  I have a surprise for you, Counsel.  I actually have another small exhibit that I just sent you and the reporter.  If you could just forward that to your client.

            MR. MACIOCE:  Okay.  I'll just, you know, give it a second to come into my inbox.

            MR. BALKEN:  Sure.

            (Discussion off the record.)

            (Exhibit 9, notarized

A-891

Page 96

Rodi

declaration page of Katherine Rodi, no Bates stamp, marked for identification, as of this date.)

Q.    We have for you here marked as Exhibit 9, this document was not produced in discovery.

MR. BALKEN:  So, Counsel, if you want to object to my introducing it as evidence, feel free to.

MR. MACIOCE:  My objection is noted.  We can continue.

Q.    Okay.  Ms. Rodi, do you recognize this document?

A.    Yes.

Q.    What is it?

A.    It is a declaration that the transcript is true and correct.

Q.    And what is the page number of this declaration?

A.    Page 80.

Q.    Yeah.  And do you have Exhibit 8?  Can you just pull that up again?

A.    Sure.  Yep.

Q.    Please go to -- back to page

A-892

Page 97

Rodi

537, which is also page 80 in that deposition transcript.

A.    Right.  That's the same document.

Q.    That was my question.  Is this the same document?

A.    Yes.

Q.    Exhibit 9 is just a signed version of that document?

A.    Correct.

Q.    It's the notarized version of that document?

A.    Yes.

MR. BALKEN:  Counsel, can we stipulate to add this into Exhibit 9 -- All right, Can we stipulate that this is the same document of the one you produced in discovery, just signed?

MR. MACIOCE:  Yes.  I mean, that was --

MR. BALKEN:  Thank you.

MR. MACIOCE:  She signed it. But again, you know, I just want to

A-893

Page 98

Rodi

note, yet again, that this is a deposition in an entirely different matter that was a fact witness deposition, not a 30(b)(6).  Just noting it again.

MR. BALKEN:  Just noted.  And she testified as to her reasoning that she's testifying about in this deposition in that deposition.  That's why it's relevant.

(Continued on following page.)

A-894

Page 99

Rodi

MR. MACIOCE:  I'm just noticing that the -- objection, please.

You can continue with your questions.

MR. BALKEN:  Of course.  Of course.  That's fine.

No, I have no further questions.

MR. MACIOCE:  Okay.  I don't have any questions, no.

MR. BALKEN:  I order the transcript regular delivery.

(Time noted:  1:11 p.m.)

_____

KATHERINE RODI, ESQ.

Subscribed and sworn to before me

this ___ day of _____, 2024.


_____

Notary Public.

**Page 100**

C E R T I F I C A T E

STATE OF NEW YORK        )

                        : ss.

COUNTY OF NEW YORK       )


         I, THERESA TRAMONDO, a Notary Public within and for the State of New York, do hereby certify:

         That KATHERINE RODI, ESQ., the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

         I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

         IN WITNESS WHEREOF, I have hereunto set my hand this 13th day of August, 2024.

THERESA TRAMONDO

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

A-896

Page 101

```
------------ I N D E X --------------

WITNESS        EXAMINATION BY        PAGE

K. RODI        MR. BALKEN            4


-------- INFORMATION REQUESTS ---------

DIRECTIONS:  (NONE)

RULINGS:  40

TO BE FURNISHED:  10, 15

REQUESTS: 10, 15, 17

MOTIONS:  (NONE)

CONFIDENTIAL:  (NONE)


------------- EXHIBITS ---------------

DEFENDANTS'                    FOR ID.


 Exhibit 1 , vaccine exemption        59

 document submitted by Michelle

 Beckles to NYC Department of

 Education, Bates stamp DEF000006

 through '8

 Exhibit 2 , letter from Temple of    62

 the Healing Spirit, Florida, dated

 9/16/2021, no Bates stamp

 Exhibit 3 , EEOC Code of Federal     64
```

Page 102

Regulations, Part 1605, Guidelines On Discrimination Because of Religion, dated 7/1/2016, Bates stamp DEF000009 through '33

Exhibit 4 , collection of e-mails,    69 dated 9/23/2021 through 9/28/2021, Bates stamp DEF000034 through '37

Exhibit 5 , two documents, first    86 document Orders of the Board of Health and Commissioner of Health and Mental Hygiene, in Re: COVID-19 vaccination requirements for DOE employees and associates, dated 8/24/2021 through 2/9/2023, Bates stamp DEF000425 through '435

Exhibit 6 , Michelle Beckles Letter   90 of Appeal for Religious Exemption Request, dated 9/27/2021, Bates stamp DEF000003 and '4

Exhibit 7 , DOE Office of the         91 General Counsel, response to EEOC complaint of Michelle Beckles, dated 6/28/2022, Bates stamp DEF000038 through '44,

A-898

Page 103

Exhibit 8 , transcript of                92

deposition of Katherine Rodi,

dated 10/24/2023, Bates stamp

DEF000458 through '560

Exhibit 9 , notarized declaration      95

page of Katherine Rodi, no Bates

stamp

   (EXHIBITS RETAINED BY REPORTER.)

A-899

Page 104

ERRATA SHEET

VERITEXT LEGAL SOLUTIONS

330 OLD COUNTRY ROAD

MINEOLA, NEW YORK 11501

800.727.6396

NAME OF CASE:  BECKLES VS. NYC DOE

DATE OF DEPOSITION:  JULY 31, 2024

NAME OF WITNESS:  KATHERINE RODI, ESQ.

PAGE    LINE         FROM              TO

____|_____|_____|____

____|_____|_____|____

____|_____|_____|____

____|_____|_____|____

____|_____|_____|____

____|_____|_____|____

____|_____|_____|____

____|_____|_____|____

                   _____

                   KATHERINE RODI, ESQ.

Subscribed and sworn to before me

this ____ day of _____, 2024.

_____ _____

(Notary Public)  My Commission Expires:

A-900

**[000014 - 9]**                                                                 Page 1

**0**

**000014** 66:6
**08663** 1:7

**1**

**1** 59:5,8 101:17
**1.1** 46:14
**10** 101:9,10
**10/24/2023**
  92:20 103:4
**100** 2:13
**10007** 2:14
**10019** 2:6
**10:46** 1:12
**11201** 4:21
**11501** 104:3
**13** 64:23,25
**13th** 100:21
**14** 65:25 66:9
  66:18,19
**15** 65:6 67:12
  67:13 101:9,10
**15th** 87:15
**1605** 64:14
  102:2
**17** 101:10
**17432** 100:24
**1800** 45:17
**19** 30:13 72:24
  73:17 86:12
  102:13
**1995** 21:7
**1:11** 99:13
**1:33** 70:10

**2**

**2** 61:25 62:2,6
  90:13 101:22
**2/9/2023** 86:15
  102:15
**2004** 20:16
**2012** 19:15
**2021** 7:11,14
  10:19 12:4,18
  13:19 43:23,25
  44:2 45:2,10
  45:14 69:13
  70:10 87:15,21
  90:18
**2023** 7:19,22
  8:20 13:23
  14:17 15:5,9
  15:10 17:10,17
  18:2 93:19,21
**2024** 1:11 7:19
  7:22 10:3,4
  13:23 99:18
  100:22 104:5
  104:19
**212** 2:9,19
**23** 1:6
**23rd** 69:13
**25th** 70:10
  87:21

**3**

**3** 64:11,13
  66:10,11,14,14
  101:25
**30** 1:15 94:13
  98:5

**31** 1:11 104:5
**33** 64:17,22
  67:13 102:5
**330** 104:3
**34** 69:10
**35** 70:6
**356-2479** 2:19
**37** 69:5,11
  102:8
**38** 91:15

**4**

**4** 66:3,8 68:24
  69:2,8 89:11
  89:19,23 90:9
  90:13 101:4
  102:6,20
**40** 101:8
**405** 2:5
**420** 87:14
**425** 86:23
**428** 87:14
**431** 87:14,15
  88:2
**435** 86:16,23
  102:16
**44** 91:11,16
  102:25
**458** 93:2

**5**

**5** 62:12 86:8,9
  86:21 102:9
**537** 97:2
**560** 92:21 93:3
  103:5

**575-7900** 2:9
**59** 101:17

**6**

**6** 1:15 59:7
  87:25,25 88:3
  90:4,6,11
  94:13 98:5
  102:17
**6/28/2022**
  91:10 102:24
**62** 101:22
**64** 101:25
**65** 1:18 4:20
**69** 102:6

**7**

**7** 91:6,7 102:21
**7/1/2016** 64:16
  102:4

**8**

**8** 59:7,11 60:3
  92:17,18 96:23
  101:21 103:2
**8/24/2021**
  86:14 102:15
**80** 94:7,24
  96:21 97:2
**800.727.6396**
  104:4
**810** 2:5
**86** 102:9

**9**

**9** 64:22,23,25
  95:25 96:6
  97:9,17 103:6

**[9/16/2021 - application]**                                         Page 2

**9/16/2021** 62:4 101:24
**9/23/2021** 69:3 102:7
**9/27/2021** 90:8 102:19
**9/28/2021** 69:4 102:7
**90** 102:17
**91** 102:21
**92** 103:2
**95** 103:6

**a**

**a.m.** 1:12 70:10
**ability** 6:23 7:3 75:2 89:5
**able** 30:6 35:24 46:5,18 47:11 49:18,21 78:21
**absolutely** 37:12 58:7,11
**access** 81:3
**accommodate** 80:12
**accommodati...** 9:16 19:22 21:11,19 22:8 22:11,17 23:2 23:15 24:23 25:13,17,19 26:9,17 33:2 36:3,8 47:19 48:3,8,15 49:2 49:23 51:8,15 52:22 53:2,3

69:21 73:2,10 73:21,23 74:7 74:23 75:5,10 78:23 86:4,7
**accommodati...** 23:18,20,23,24 24:9,13 48:20 50:5,14 75:19 76:3 88:9,11 88:14,17,22
**accuracy** 92:8
**action** 5:4 8:5 100:17
**actual** 93:23
**actually** 7:24 37:15 57:6 87:8 95:12,16
**add** 97:16
**additional** 68:14
**address** 4:19,20 18:23 70:11,12
**advice** 20:7
**advisement** 10:13 15:24 18:4
**affect** 7:3
**affirm** 4:4
**afternoon** 24:16
**afternoons** 49:3
**agencies** 20:11
**agency** 29:4 30:5 33:13,15

37:13 45:4 49:9 58:6
**ago** 11:16,18
**agree** 4:2 6:10 25:16,19
**agreed** 3:5,11 3:15
**ahead** 14:11 26:5 37:23 43:21 81:13
**alcohol** 6:22
**allegations** 8:11
**allege** 9:10
**alleged** 8:25
**allow** 33:15 43:8
**allowed** 53:25 55:6
**alter** 37:13
**alternative** 75:19 76:2
**alternatives** 81:19 82:4,9 83:9
**answer** 5:19,21 5:22 6:2 8:13 9:8,13,18,24 10:25 11:7,15 12:6 13:11 14:6,11 17:14 21:14 22:15 23:4 25:11 29:13 30:24 32:11,21 34:10

35:5 36:14 37:4 38:5,20 39:23 40:11 41:2,4,5 42:24 45:16 46:10 47:21 48:10,17 49:17 50:20 53:14 54:10,24 74:15,18 76:6 77:15 83:13 89:13
**answered** 6:9 57:6 85:6
**answering** 84:20
**anybody** 65:13
**anyway** 37:21
**aos** 1:20,24
**apologies** 14:7
**apologize** 18:10 34:20 35:3 55:14 87:9
**appeal** 90:7,23 90:24 102:18
**appeals** 90:19 90:21
**appearance** 2:2
**applicant** 57:23
**applicants** 19:25 57:8,12 59:17,21,24
**application** 41:18 61:13 70:18 72:13,22 72:25 73:16,19

**[applications - beginning]**                                    Page 3

**applications**
  29:16 63:25
  74:3
**applied** 16:13
  27:20 31:20
  33:2,8 35:18
  37:9,10 69:20
  77:21 78:4
  93:15
**apply** 25:24
  26:2,7,16,19,20
  26:21 32:13
  74:3
**applying** 32:17
  32:19 71:17
**approach**
  28:14,18
**approximate**
  13:21
**approximately**
  21:6
**arrests** 19:21
**asked** 6:8 11:3
  12:16 18:11
  31:16 51:25
  57:4,5 74:15
  74:16 78:14,16
  92:3
**asking** 12:12
  15:4 25:4 31:6
  31:9 32:6,7
  43:6 56:7 57:2
  79:13,15 82:15
  82:17,20 84:8
  92:3

**associate** 4:25
**associates**
  86:14 102:14
**assume** 6:3
**attached** 61:18
  61:23 63:12
  67:24
**attachment**
  63:4,7 67:4
**attachments**
  63:9
**attorney** 5:2,4
  5:20 20:12
  60:5
**attorneys** 12:14
  18:15
**audio** 5:14
**august** 100:22
**automatic**
  71:10,14
**automatically**
  70:2,4 71:11
  71:22
**available** 44:3
**avenue** 2:5
**aware** 5:5 8:24
  10:5 44:21
  45:12,25 60:6

**b**

**b** 1:15 94:13
  98:5
**back** 11:3
  34:13 35:24
  36:11 66:14
  78:15 96:25

**background**
  5:16 14:25
  19:24
**balken** 2:7 4:23
  4:25 5:13
  10:15 12:8,21
  12:24 13:4,9
  13:14 16:2
  17:20 18:6
  21:16,21 25:8
  30:22 31:9
  33:25 34:15,21
  35:2 40:8,17
  40:23 42:9,13
  56:18,25 57:15
  57:20,21 58:24
  59:3 74:9,14
  84:19 85:7
  95:15,23 96:8
  97:15,23 98:7
  99:6,11 101:4
**ballon** 2:4 5:2
**ballonstoll.com**
  2:8
**bare** 57:24
**based** 25:9
  33:12 38:12
  73:2,20,23
  74:7
**basically** 71:15
**basis** 12:9
  21:16 31:10
  36:20,25 37:6
  38:2,18 52:12

**bates** 59:7,10
  60:3 62:4,11
  64:16,22 66:16
  69:4 86:15,22
  90:9,13 91:10
  91:15 92:20
  93:2 96:3
  101:20,24
  102:4,8,16,19
  102:24 103:4,7
**bear** 5:6
**beckles** 1:4 5:3
  39:8 41:12,23
  45:22 46:5
  47:13 48:5,12
  57:13,17 58:10
  58:12,21,22
  59:9 61:2,6,7
  61:10 62:20,25
  63:4,12,18
  65:16 67:4,25
  68:11,15 69:25
  70:12 71:8,24
  72:12,21 75:25
  76:19 78:24
  79:2 81:9
  82:13 83:11
  84:12 90:6
  91:9 94:17
  101:19 102:17
  102:23 104:4
**began** 38:17
**beginning** 7:14
  18:11,24 34:2

Case 1:23-cv-08663-BMC     Document 42-2     Filed 10/23/24     Page 108 of 129 PageID #: 1012

**[belief - code]**                                                                    Page 4

**belief** 39:6 41:15,22 42:2 52:23 55:21 57:25 58:4

**beliefs** 53:18 54:5,16 56:9 57:10 58:16,20 62:18 72:7

**believe** 7:23 17:4 53:21 55:23 60:24 61:19 82:15 83:16 87:20 89:20 93:15 94:6 95:8,9

**believes** 53:20

**best** 7:18

**better** 54:15

**big** 92:24

**bigger** 46:12,12

**binding** 25:6

**bioethical** 67:20

**bit** 34:24

**blank** 10:8 15:18

**blood** 100:17

**bmc** 1:7

**board** 86:10 102:10

**bother** 35:13

**bottom** 60:2,4 65:5 66:5,15

**break** 6:4,6,6 58:25

**broad** 82:25

**brooklyn** 1:18 4:21

**brought** 15:11

**building** 49:24 50:2,4 73:5 80:19 82:23 83:3 85:16

**buildings** 75:17 76:8,15,23,25 77:3 78:11,22 80:22,23 85:25 85:25

**bullet** 87:25 88:3,6

**burden** 29:4,11 30:5 31:2,11 31:12,20 32:2 32:3,6,9,14 33:13 34:7 35:11,16,20,25 36:10,12,17 37:2,5,20 38:3 38:10,12 39:21 39:25 40:6 41:7 47:2 53:5 53:11 58:5,14 70:21 73:11 75:7 84:17

**burdens** 36:18

**byam** 15:12 93:8,10

**c**

**c** 100:2,2

**call** 17:20 83:5

**called** 4:10

**calling** 66:7,8

**case** 8:11 9:2,5 9:10,15,20 10:6,10,14,18 11:3,5,13,19,22 14:13,14 15:16 17:16,23 18:15 36:20,20,24,24 37:6,6 38:2,2,7 62:19,19 93:8 93:18 104:4

**cases** 8:23 10:17,17,22 12:16,17 14:10 14:17 15:20 17:8,12 53:6

**category** 22:24

**catholic** 67:20

**central** 24:2,3,6 24:20,24 25:12 25:24 26:3,7 26:16

**certain** 22:19 23:16 49:5 54:14,18 63:17

**certification** 3:8

**certify** 100:9,15

**cetera** 5:23

**change** 24:18 37:13 41:2,4

**changed** 35:19 35:22

**checks** 19:24

**children** 79:10 84:16

**choice** 40:22

**choose** 26:20 26:21

**chou** 92:11

**church** 2:13 55:5 67:20

**circuit** 88:21,25 89:3,4,18,21

**city** 1:8,17 2:11 18:20

**claim** 8:21

**clarify** 6:2 17:15 25:5 32:5 41:5 82:17 95:11

**clarity** 74:15

**classroom** 29:21 81:11

**clear** 31:6 32:23 84:3

**client** 16:12,13 59:17 60:16,25 61:5,7 62:20 69:25 95:19

**client's** 60:20 60:22

**closed** 72:4

**clr** 1:20,24

**code** 64:13 65:11 101:25

**[collection - day]**                                                                        Page 5

**collection** 69:2 69:11 102:6
**columbia** 20:20 20:22
**combination** 38:13
**come** 49:25 50:3 76:7,14 79:20 84:15 95:21
**commission** 104:22
**commissioner** 73:3 85:14,23 86:11 102:11
**complaint** 8:11 91:9,21 102:23
**complicated** 25:13 49:6
**computer** 78:12
**concern** 47:9
**confer** 34:4
**confidential** 101:12
**connection** 62:24 63:18 65:15 67:2,8 68:4,10
**consider** 22:5,7 22:10 47:13,17 47:25 48:5 58:2,14 75:18 76:2,12,16 77:8 80:3,10

80:15,21,22 82:4,8 83:8,15 83:22 89:22
**consideration** 21:10 22:2 46:4
**considered** 24:6,14 29:8 41:12,16 44:15 57:3,7 80:16 80:18,19 81:15 83:21 84:6,8 88:23
**considering** 28:11 62:24 65:21 67:8 68:5 88:19 89:17
**construed** 88:8
**consulted** 91:23 92:3,5,7
**consumed** 6:22
**contact** 73:6 85:17
**containing** 16:23
**content** 60:10
**context** 61:8
**continue** 33:16 33:18 96:12 99:4
**continued** 98:12
**continuing** 25:8

**conversations** 28:19,25
**corporation** 2:12
**correct** 8:9 20:13,14 28:6 34:7,11 35:11 36:21,22 37:2 38:18,21 39:21 51:8,9 54:17 58:16,17 71:13 71:14 72:9,10 75:21 76:4 78:25 83:11,17 83:25 94:5 96:18 97:11
**counsel** 2:2,12 3:6 12:9 21:16 25:10 28:15,20 28:22 31:5 40:8 56:12 84:21,22 91:8 91:22 95:16 96:8 97:15 102:22
**counseling** 46:22
**country** 104:3
**county** 100:5
**course** 99:6,7
**court** 1:2,18,19 3:19 4:3,6,20 6:20 7:20 13:24 17:5 18:23

**court's** 25:2
**courts** 37:7
**covered** 14:24
**covid** 30:13 72:24 73:17 86:12 102:13
**crafting** 89:23
**creation** 92:5
**criteria** 72:25 73:20 74:6,24
**curiosity** 12:8
**current** 38:14
**currently** 18:17
**cut** 14:7 26:3
**cv** 1:6

**d**

**d** 4:10,18 101:2
**date** 59:12 62:5 64:18 69:6 86:17 90:10 91:12 92:22 95:12,13 96:4 104:5
**dated** 62:3 64:16 69:3,13 70:9 86:14 87:15 90:8 91:9 92:19 101:23 102:4,7 102:15,19,24 103:4
**dates** 89:15
**day** 27:24 99:18 100:21 104:19

A-905

**[dealing - different]** Page 6

| | | | |
|---|---|---|---|
| **dealing** 74:2 | **default** 40:18 | **denied** 9:16,21 | 86:21 92:19 |
| **dear** 72:12,21 | **defendant** 1:9 | 33:6 35:10 | 93:8,18 94:2 |
| **decide** 43:7 | 2:10 8:2,3,8 | 36:17 39:20 | 94:11,19 97:3 |
| **decided** 23:6 | 59:6 62:11 | 41:6,8 45:23 | 98:3,5,10,10 |
| 28:25 52:15 | 64:21 69:10 | 46:7 53:7 | 100:11,13 |
| 82:11 | 86:22 90:13 | 58:13 70:20 | 103:3 104:5 |
| **deciding** 53:11 | 91:15 93:2 | 71:13,21 | **depositions** 5:5 |
| 58:4 83:9 | **defendant's** | **deny** 28:8 | 12:15 |
| 84:10 | 59:7 62:12 | 33:12 39:14 | **designation** |
| **decision** 28:5,7 | 64:22 65:25 | 40:5 54:3 | 28:3 |
| 28:8 31:21 | 66:6 67:12,13 | 71:11 89:5 | **determination** |
| 32:10 44:24 | 67:13 69:9 | **denying** 56:19 | 36:11 44:3 |
| 45:8,12,19 | 70:6 87:14 | 94:20 | 70:19 71:6 |
| 46:3 57:4 89:7 | 88:2 | **department** 1:8 | **determine** |
| 89:18,21 | **defendants** | 1:17 2:11 | 28:14 29:5 |
| **decisions** 31:13 | 101:15 | 18:20 19:9 | 36:9 52:25 |
| 42:4,18 43:11 | **defense** 37:19 | 21:12 22:11,18 | 54:4 89:25 |
| **declaration** | **define** 31:19 | 22:20 26:14 | **determined** |
| 95:4 96:2,17 | **definitely** 15:7 | 27:6 28:16 | 8:21 28:17 |
| 96:20 103:6 | 43:18 | 59:10 73:5 | 29:2 34:5 35:8 |
| **def** 66:17 | **definition** 83:2 | 85:15 101:19 | 35:15 37:14 |
| **def000003** 90:9 | **delivery** 99:12 | **depended** | 38:11 57:22 |
| 102:20 | **demonstrate** | 27:20 43:14,14 | 80:8 |
| **def000006** | 54:4 | 43:15 | **determining** |
| 59:11 101:20 | **demonstrated** | **dependent** 44:4 | 32:8 36:7 53:8 |
| **def000009** | 41:21,25 53:17 | 44:5 | 56:8 |
| 64:16 102:5 | 54:19,22 56:11 | **deposed** 94:12 | **deviate** 50:16 |
| **def000034** 69:4 | 57:8,24 58:3 | **deposition** 1:15 | 51:10 |
| 102:8 | 58:15,19 72:6 | 3:9,16 5:10 | **deviated** 51:19 |
| **def000038** | **demonstrating** | 10:21 12:4 | **differences** |
| 91:10 102:25 | 54:15 55:20 | 13:18 14:4 | 52:13 |
| **def000425** | **denial** 40:12,18 | 16:4,7,20 17:6 | **different** 73:22 |
| 86:15 102:16 | 52:4 70:17 | 17:10 18:24 | 74:2 80:19 |
| **def000458** | 94:16 | 56:16 59:5 | 83:3 98:3 |
| 92:20 103:5 | | 62:7 64:7 | |

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 111 of 129 PageID #: 1015

**[difficulties - employee]**                                    Page 7

**difficulties** 32:16
**digging** 37:10
**direct** 73:8 85:18
**directions** 101:7
**directly** 26:22
**director** 19:4,6 19:10,14 21:9 21:25 22:13,22 27:8,12 30:19
**disability** 19:22
**disagree** 85:4
**discovery** 59:6 62:11 64:21 69:9 86:22 90:12 91:14 96:7 97:20
**discrimination** 9:11 64:15 102:3
**discuss** 13:7 94:19
**discussed** 18:14 83:24
**discussing** 17:24
**discussion** 95:24
**district** 1:2,3 7:22,24 20:20 20:21 44:21
**divided** 27:15 28:4

**division** 19:8
**divisions** 19:18
**document** 16:16,22,23,25 54:12 59:9,13 59:16 60:21 61:9,13 62:13 62:16,24 63:11 64:20,24 65:9 65:13,19,24 66:10,20 67:7 67:16 70:23 74:5 86:10,24 90:14,16,18 91:16,24 92:6 92:9,14,25 93:4 96:6,14 97:5,7,10,13,19 101:18 102:10
**documentation** 72:4,14,23 73:16 92:4
**documents** 16:3,6,8,11,18 18:7 61:17,23 63:8,11,18,20 63:20,23 64:2 64:3,5,9 68:9 68:14 71:17 86:9,25 87:9 102:9
**doe** 8:17 11:8 25:6 26:12,14 26:15 31:24 52:24 62:17

72:24 73:5,6 73:12,17 75:7 76:7,14,22,25 77:3 80:21,23 81:24 82:22 85:16,17,25,25 86:13 91:7,21 93:14 94:21 102:14,21 104:4
**doing** 78:17
**driver's** 20:18
**drop** 71:18
**due** 49:19
**duly** 4:11 100:12

**e**

**e** 4:10,10,18,18 6:17 69:3,11 69:12,15,18 70:9,11,12,15 70:15 71:2,7 71:10,14 72:17 81:16,22 87:19 100:2,2 101:2 102:6
**earlier** 15:7 63:16,16
**early** 24:15 49:3
**eastern** 1:3 7:22,23
**ed** 46:21 81:4,9 81:10

**education** 1:8 1:18 18:21 21:12 22:12,18 22:20 26:14 27:7 30:7 32:2 32:4 59:10 73:5 85:16 86:2 101:20
**eeoc** 64:13 91:8 91:20 101:25 102:22
**effect** 3:18 87:18
**either** 9:10,15 9:20 10:22 13:5 14:16 54:18 79:20 82:6,6,22 84:25
**elicited** 12:14
**embryo** 66:23
**employed** 18:17,19
**employee** 8:14 8:15,20 11:11 19:4,11,14,23 21:9 25:16 26:6,12,15 27:7 32:25 35:17,18 41:21 52:2 69:22 71:12,16,21,24 75:11,15,20 93:14

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 112 of 129 PageID #: 1016

**[employees - familiar]**                                                       Page 8

**employees**
  19:25 21:12
  22:12,19,25
  23:7,13,16
  37:14 43:8
  50:3 54:14,18
  62:17 69:19,19
  73:4,7 75:15
  77:19 78:16
  85:15,17 86:13
  102:14
**employer** 52:24
**encyclopedia**
  66:24
**ensure** 19:23
  19:25 29:22
**ensured** 38:6
**enter** 46:15,18
**entire** 49:9,24
**entirely** 98:3
**errata** 104:2
**esq** 1:16 2:7,15
  2:16 99:15
  100:10 104:5
  104:17
**essence** 77:23
**essential** 77:11
  77:22
**essentially**
  29:23 44:18
**et** 5:23
**everybody**
  34:13 77:16
**everybody's**
  45:18

**evidence** 96:10
**exact** 60:9
**exactly** 39:2
  70:14 88:25
**examination**
  4:22 101:3
**examined** 4:12
**except** 3:12
**executive** 19:3
  19:6,10,14
  21:9,25 22:13
  22:21 27:8,12
  30:19
**exemption** 9:21
  16:14 21:19
  22:2,6 24:18
  27:4,5,11,16
  28:9 29:7
  30:15,16,18
  33:3,6,10,12,15
  34:6 35:8,9
  36:6,21 37:15
  38:2,8,17,25
  39:11,17,19
  40:2,13 41:13
  41:18,24,25
  45:24 46:8
  47:18 48:2,6
  48:13,22 51:11
  51:18,23 52:16
  53:7,9 54:17
  56:20 57:23
  58:13 59:8
  61:14 62:25
  63:4,13,19

  64:8 65:16,22
  67:5,9 68:2,6
  68:10 69:21
  70:18,21 71:12
  71:21 72:14,23
  73:17 75:2,12
  75:20 76:3,20
  77:21 78:4
  79:18 80:10
  82:12 83:11
  84:11,14 86:4
  88:20 90:8,25
  92:13 93:15
  94:20 101:17
  102:18
**exemptions**
  23:21 24:11
  27:25 28:12,18
  29:3,16 30:4,8
  30:10,10,11
  31:22 33:20,22
  33:24 46:17
  50:22 51:5
  88:15,18,22
  89:5,6
**exhibit** 59:5,8
  61:25 62:2,6
  64:11,13 66:11
  66:14 67:11
  68:24 69:2,8
  86:8,9,21
  89:11,19,23
  90:3,4,6 91:6,7
  92:17,18 95:17
  95:25 96:6,23

  97:9,17 101:17
  101:22,25
  102:6,9,17,21
  103:2,6
**exhibits** 101:14
  103:9
**existed** 83:17
**existing** 38:15
  49:20
**expires** 104:22
**explain** 31:19
  32:7
**explained**
  31:13,17
**expressed** 39:5
**expressing** 56:2
**extent** 25:3
  32:21 49:16
  50:19 89:13
**extraordinary**
  31:23 32:16

**f**

**f** 100:2
**fact** 25:7 37:7
  48:24 98:4
**factor** 53:10
**facts** 9:5 57:2
**factual** 31:8,10
  92:8
**failed** 8:21 54:4
  72:3,25 73:19
  74:6
**failure** 33:7
**familiar** 45:18
  45:21

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 113 of 129 PageID #: 1017

**[families - hardships]**                                    Page 9

**families**  73:7 85:18
**far**  70:3,16
**fault**  34:19
**fbi**  20:10
**federal**  50:11 50:16,21,24 51:2,4,7,19,24 52:2,6,14,19 55:7 64:13 65:11 101:25
**feel**  5:25 26:23 96:10
**figure**  23:14 47:11
**filed**  8:16
**filing**  3:7
**fine**  99:7
**finish**  8:2 77:12 80:6,7
**first**  30:9 33:11 38:22 52:19 69:12 73:15 86:9 87:3,5,6 95:13 102:9
**five**  58:25
**florida**  62:3,22 101:23
**following**  98:12
**follows**  4:13
**force**  3:18
**forced**  47:4
**form**  3:12 12:23 13:5

**formal**  26:25
**former**  8:14 11:10
**forth**  100:12
**forward**  29:8 30:16 94:9 95:19
**foundation**  57:16
**frame**  23:10
**frank**  13:3
**free**  5:25 96:10
**friday**  24:15 49:3
**front**  77:24 78:10 79:10
**fulfill**  29:23
**fully**  7:3
**functions**  19:23 33:16 77:22 79:9
**furnished**  10:11 15:21 101:9
**further**  3:11,15 56:10 99:8 100:15

**g**

**g**  6:17
**gariepy**  6:17
**general**  28:17 28:20,22 71:6 91:8,22 102:22
**generic**  65:10

**gestures**  5:23
**give**  26:24 37:19 53:2 56:14 74:5 95:21
**given**  41:3 87:11 100:14
**go**  5:6 12:13 14:11 23:15 26:5 27:3,24 35:24 37:22 43:21 61:25 64:11 66:13 68:24 70:5 71:15,16,19 75:3,17 78:5 78:22 79:11 80:21 81:12,13 86:6,8 87:12 87:13,25 90:3 91:5 92:17 94:7,8,24 96:25
**god**  53:23,24 55:23
**goes**  40:11 67:13 87:13
**going**  6:3 10:8 11:2 15:18 30:15 34:12 40:17 55:10 56:12 77:4,4 78:6,18,19 79:11,11

**good**  4:24
**grant**  28:8 76:19 80:9 82:12 83:10 84:11,14
**granted**  30:7 33:20
**granting**  30:4 33:14,22,23,25
**great**  6:13 16:2
**ground**  5:7 6:11
**grounds**  94:14
**guess**  67:20
**guidelines**  64:14 102:2

**h**

**h**  4:10,18
**hajj**  25:14
**hand**  100:21
**handle**  20:8 47:15 90:19,21
**happened**  15:14 17:24
**happening**  14:25
**hard**  37:18
**hardship**  56:23 58:5 73:11 75:6 76:19 79:25 80:9 81:23 82:11 83:10 84:11,13
**hardships**  81:16

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 114 of 129 PageID #: 1018

**[head - know]**                                                Page 10

| | | | |
|---|---|---|---|
| **head** 63:14 | 64:18 69:6 | **information** | **issues** 17:2 |
| **healing** 62:3 | 86:17 90:10 | 29:6 101:6 | **j** |
| 101:23 | 91:12 92:22 | **inquire** 56:10 | **job** 1:25 19:2,3 |
| **health** 19:21 | 96:4 | **inquiries** 20:10 | 54:15 77:4,23 |
| 73:3,8 85:14 | **identify** 10:14 | **insert** 10:9 | 78:17 79:9 |
| 85:19,23 86:10 | **ieps** 29:23 | 15:19 | 84:16 |
| 86:11 102:11 | **immunocom...** | **instruction** | **july** 1:11 104:5 |
| 102:11 | 44:17 45:6 | 29:22 | **k** |
| **hear** 14:23 | 47:6 | **instructs** 5:20 | **k** 4:10,18 101:4 |
| 42:12,16 56:23 | **impair** 6:23 | **interested** | **katherine** 1:16 |
| **heard** 14:21 | **implying** 60:8 | 100:18 | 4:17 92:19 |
| **hearing** 26:11 | 84:5,7 | **interrupt** 55:11 | 96:2 99:15 |
| **held** 1:16 41:14 | **impose** 73:10 | 73:13 | 100:10 103:3,7 |
| 41:22 42:2 | 75:6 79:25 | **interrupted** | 104:5,17 |
| 52:23 53:18 | 81:23 | 55:13 | **kathleen** 2:16 |
| 54:5,15 56:9 | **imposing** 58:5 | **interrupting** | **keep** 31:3 44:7 |
| 57:9,25,25 | **inbox** 95:22 | 55:14 | 55:10 57:12 |
| 58:3,16 62:18 | **include** 64:2,9 | **introduced** | **kid** 81:8 |
| 72:7 | 88:18 | 52:20 | **kids** 29:18 |
| **help** 25:22 | **includes** 78:24 | **introducing** | 80:24 81:2,3,4 |
| **hereinbefore** | 79:2 | 96:9 | 81:5,6,11 |
| 100:11 | **including** 19:19 | **investigation** | **kind** 12:18 |
| **hereto** 3:7 | 45:5 58:21,22 | 19:20 | 30:17 71:23 |
| **hereunto** | **incorrect** 94:12 | **involve** 21:10 | 74:22 |
| 100:21 | **index** 10:5,10 | 21:25 28:21,21 | **klinnane** 2:18 |
| **home** 80:17,24 | 11:3 15:19 | **involved** 7:15 | **knew** 36:16 |
| **honestly** 64:10 | **individual** 38:7 | 10:18 25:22 | 47:6 |
| 94:22 95:9 | 46:2 47:11 | 43:10 49:7 | **know** 6:5 11:8 |
| **house** 83:4 | 70:3 71:7,7 | 80:23 | 12:14 14:20 |
| **hygiene** 86:12 | **individually** | **involvement** | 17:18 26:21 |
| 102:12 | 29:9 38:11 | 9:4 11:13,19 | 35:23 39:8 |
| **i** | 51:14 52:8 | **is392** 44:22 | 49:16 62:7 |
| **i.e.** 73:11 75:6 | **individuals** | 45:9 | 64:6,12 68:25 |
| **identification** | 28:10 | **issue** 50:6 | 70:3,16 81:4 |
| 59:12 62:5 | | | |

**[know - makers]**                                    Page 11

86:18 89:14,15 90:4 91:6,17 95:21 97:25
**knowing** 35:21 37:11,12
**known** 6:18

**l**

**language** 60:12 74:22,23 89:9 89:19,23
**large** 92:25
**law** 2:11 20:24 28:16 33:17 88:9,13
**law.nyc.gov** 2:17,18
**laws** 38:15 49:20
**lawsuit** 7:11 15:11,14 39:9 40:14 61:2
**lawsuits** 7:13
**laying** 57:15
**learning** 29:25 46:20 81:2
**leave** 10:8 15:18 24:15 49:3
**legal** 31:7 55:2 55:9 104:2
**legally** 33:19
**letter** 17:3 59:23 60:9,11 62:2 63:5 88:13 90:7,24

101:22 102:17
**level** 23:25 24:2 24:3,4,6,7,14 24:20,21,24 25:12,20 26:16 26:18 42:5,19
**license** 20:18 20:20,23 21:2 21:6
**licensed** 20:12 20:15,16
**licenses** 20:17 21:3
**lift** 31:23
**limited** 46:16
**line** 104:6
**linnane** 2:16
**listing** 16:17
**litigation** 20:8
**little** 5:15 34:24
**local** 23:25 24:4,7,14,20 25:17,20,25 26:8,18
**located** 18:22
**long** 19:13 20:15 21:5
**longer** 8:19,22 8:23 11:17 29:25 35:25 78:13
**look** 13:6 49:8 49:9,19,21,22 51:13 52:7 54:2,21 60:4

64:23 69:12 71:15,17 85:12
**looked** 23:16 46:11 50:11 51:2,6 63:5 87:20 89:10
**looking** 32:8,15 32:24 37:8 47:10 50:10 66:12 78:13 81:22
**looks** 60:5,15 66:2 69:24 70:11
**lot** 49:6,6 50:9 74:2 93:23
**love** 53:23,24
**lower** 5:14 34:15
**lydia** 15:12 93:8,10

**m**

**macioce** 2:15 8:12 9:7,12,17 9:23 10:12,24 11:6,14 12:5 12:11,23,25 14:5,20 15:23 17:13 18:3 21:13,18 22:14 23:3 24:25 27:13 29:12 30:20 31:5,15 32:11,20 34:8 34:19 36:13

37:3 38:4,19 39:22 40:15,19 42:7,10,15,22 45:15 46:9 47:20 48:9,16 49:15 50:18 53:12 54:8,23 56:12,21 57:11 57:18 71:25 76:5 77:13 83:12,18 84:2 84:22 89:12 94:8 95:20 96:11 97:21,24 99:2,9
**made** 28:8 46:2
**mail** 69:12,15 69:18 70:9,11 70:12,15,15 71:2,7,10,14 72:17 81:16,22 87:19
**mails** 69:3,11 102:6
**main** 11:9
**majority** 29:16 77:19,20
**make** 18:4 29:23,24 42:4 42:5,18,20 44:19,24 45:8 71:15 94:9
**maker** 28:7
**makers** 28:5

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 116 of 129 PageID #: 1020

**[making - notarized]**                                                    Page 12

**making** 31:12 31:21 32:10
**mandate** 9:22 22:3 41:24 72:24 73:18 75:12 88:11
**mandated** 29:20
**marital** 7:8
**mark** 40:24
**marked** 59:11 62:4 64:17 65:4 69:5 86:16 90:9 91:11 92:21 96:3,5
**marking** 62:6 69:8 86:20
**marriage** 100:17
**matter** 10:3,4 46:23 58:18 94:14 98:4 100:19
**matters** 20:8
**mean** 14:7 20:23 26:14 29:10 30:9 31:3 34:15,17 34:21 43:12,13 44:11 48:20 52:20,21 53:15 55:11 60:25 61:5 68:19 71:20 79:23

83:2 92:2,11 92:15 93:20 97:21
**meaning** 44:13 92:25
**means** 6:7 33:14
**meant** 70:25 79:5
**mecca** 25:15
**medically** 44:16
**medication** 6:23
**meet** 30:6 33:9 35:23 38:25 39:2,4,16 56:3 72:25 73:19 74:6,24
**memory** 68:8 68:18,20 93:10 93:17
**mental** 86:11 102:12
**mention** 55:17 86:7
**mentioned** 38:24 50:24 81:15,21
**message** 71:23 85:21 89:10
**met** 35:9 36:7 36:20,23,25 37:20 39:18 41:16 53:8,10

**michelle** 1:4 5:3 39:8 59:9 72:21 90:6 91:9 94:16 101:18 102:17 102:23
**middle** 6:13,16 6:20
**military** 7:6
**million** 46:14
**mineola** 104:3
**minimal** 73:11 75:7
**minimum** 37:21 41:17,19 41:20 57:24
**minute** 58:25
**moon** 82:5 83:4
**morning** 4:24
**motion** 40:21
**motions** 101:11
**move** 40:22 85:8

**n**

**n** 4:10,18 101:2
**name** 4:15,24 6:14,16,20 11:10,21 15:15 93:22 104:4,5
**named** 8:17,23 15:11
**names** 6:19 8:4 11:4
**narrow** 43:24

**narrowing** 30:23
**nature** 14:2 49:20
**necessarily** 37:6 44:15 45:18 52:9
**necessary** 13:7
**need** 5:21 6:4 13:6 20:2 49:2 49:4 75:15
**needed** 29:7,17 29:18 46:19 55:24 76:25 81:4,5,6
**needs** 55:23
**new** 1:3,8,17,18 1:21 2:6,6,11 2:14,14 4:21 18:20 20:21 100:3,5,8 104:3
**nodding** 5:23
**nonvaccinated** 85:24
**normalized** 28:14
**normally** 48:23 49:23 50:2,5,7 50:8,15 52:8
**notarization** 60:6 94:4
**notarized** 60:17,19,20 95:8,25 97:12

A-912

**[notarized - order]** Page 13

103:6
**notary** 1:20 3:17 4:12 99:21 100:7 104:22
**notch** 34:14
**note** 77:13 98:2
**noted** 25:10 57:19 96:12 98:7 99:13
**notes** 94:10
**noticed** 13:2 56:16 57:13
**noticing** 99:2
**notified** 11:17
**noting** 98:6
**number** 10:6 10:10 15:19 59:7 60:3 62:12 65:8,25 66:3,4,17,18 87:25 88:3 91:15 96:19
**numbered** 62:11
**numbers** 64:22 66:6,16 69:10 86:23 90:13 93:2
**ny6832696** 1:25
**nyc** 59:10 101:19 104:4
**nypd** 20:10

**o**

**o** 4:10,18
**oath** 5:8,9
**object** 40:17 56:13 94:14 96:9
**objection** 8:12 9:7,12,17,23 10:24 11:6,14 12:5,10,20,22 13:5 14:5 17:13 21:13,17 22:14 23:3 24:25 25:9 27:13 29:12 30:20 32:20 34:8,9 36:13 37:3 38:4,19 39:22 42:7,22 45:15 46:9 47:20 48:9,16 49:15 50:18 53:12 54:8,23 57:18 71:25 76:5 77:14 83:12,18 84:2 89:12 96:11 99:3
**objections** 3:12 4:7
**obligation** 52:10
**obviously** 11:9
**october** 7:11,14 10:19 12:4

13:19 14:17 15:5,9,10 17:10,17,25 93:19,21
**offer** 45:9,13 73:9 75:4
**offered** 45:20 45:22
**offering** 80:12 82:19
**office** 2:12 19:4 19:11,19,20,21 19:22 28:16 78:6 91:7,22 102:21
**offices** 1:17
**official** 28:2
**oh** 59:25 60:7 65:6,6
**okay** 8:4,7 10:4 11:2 12:24 14:16 16:19 17:19 18:11,14 21:21 27:3 40:23 44:19 53:6 62:23 64:20 65:6,22 65:24 66:13,13 70:5,22 72:5 73:14,18 81:12 86:8 87:5,13 91:3,4 92:23 92:24 93:25 94:18,24,25 95:2,20 96:13

99:9
**old** 104:3
**once** 52:11 71:14
**ones** 22:19 43:16 47:5 72:6
**open** 64:12,19 92:23
**operations** 73:12 75:8
**opportunity** 24:17 51:13
**opposed** 24:6 26:8 27:17
**option** 40:2 42:6,20 45:22 76:11,13,17 79:20
**options** 45:9,13 53:4 77:8 78:2 78:8 79:4,6,14 79:16,22,24 80:2,5,5 82:14 82:18,19 83:14 83:16,20,23 84:5,9 85:3
**order** 1:19 17:5 25:3 73:3 85:13,20,22 86:3,5,6 87:4,6 87:7,18,23 88:2,7,10 89:22 99:11

A-913

**[ordering - problem]**                                    Page 14

**ordering** 17:6
**orders** 86:10
  87:10 102:10
**original** 65:12
**outcome** 10:16
  17:11,16
  100:18
**outside** 13:2
  25:2,4 30:20
  42:23 53:12
  54:8 56:13
  94:15
**overall** 33:11
**overlap** 49:11
  49:14
**oversee** 19:18

**p**

**p** 6:17 54:11
**p.c.** 5:2
**p.m.** 99:13
**page** 60:3,4
  65:5,24,25
  66:4,5,5,9,14
  66:15 67:11,12
  70:6,6,7 94:7
  94:24 95:4,7
  95:13 96:2,19
  96:21,25 97:2
  98:12 101:3
  103:7 104:6
**pages** 55:3,4
  64:23 65:3
**pandemic** 43:9
  43:16,19,20,22

**paper** 37:17
**paragraph**
  75:4 85:13
**paras** 81:6
**pardon** 64:4
**part** 43:20,22
  64:6,14 71:9,9
  102:2
**particularly**
  30:3 46:20
**parties** 3:7 4:2
  8:5 11:4
  100:16
**party** 4:8 7:10
  8:25 11:9,17
**pastor** 62:22
**pay** 77:5,5
  78:19
**pc** 2:4
**pedagogues**
  29:17,19 77:2
  77:22
**pending** 6:7
**people** 45:3
  46:14,17 47:5
  49:8 60:9,11
  75:23,24 76:24
  77:20 79:7
  80:17,18 85:24
**period** 54:13,19
**permit** 33:17
**permitted**
  76:22,25 82:23
  85:24

**person** 24:14
  25:14 27:20
  37:9,9,20 39:4
  52:23 53:20
  58:19 78:20
  79:8
**personally**
  39:10
**personnel**
  19:19
**phone** 16:10
**picture** 46:12
  46:12
**piece** 37:16
**place** 33:11
**places** 79:7
**plain** 88:13
**plaintiff** 1:5 2:3
  5:3 7:25 8:25
  11:22 15:11,15
  39:9 61:2
**plaintiff's**
  40:13
**please** 4:16 5:6
  5:25 6:5 13:11
  16:10 18:4
  25:11 31:19
  34:25 35:4
  43:24 50:25
  55:14 68:25
  72:16 74:10,18
  77:12 80:6
  90:4 96:25
  99:3

**plumber** 78:4
**point** 25:9 40:9
  92:14
**policy** 20:7
  42:4,18 43:11
  46:6
**posing** 73:7
  81:16 85:18
**position** 19:17
  21:9,25 40:16
  40:20
**possible** 75:10
**possibly** 12:13
**practice** 20:23
  40:21
**pray** 24:17
  49:4
**preparation**
  16:4,7 64:7
  91:24
**presented**
  52:10
**preside** 19:9
**pretty** 65:10
**prevent** 31:24
**previously**
  61:10
**principal** 25:16
**prior** 36:11
  73:24
**probably** 51:14
  52:8
**problem** 31:23
  47:7

Case 1:23-cv-08663-BMC    Document 42-2    Filed 10/23/24    Page 119 of 129 PageID #: 1023

**[problems - refer]**                                           Page 15

**problems** 80:25
**proceed** 40:21
  55:15
**proceedings**
  14:3
**process** 25:24
  25:25 26:7,8
  28:13 31:21
  32:10 34:3
  63:24 88:20
**produced** 59:6
  62:10 64:21
  86:22 90:12
  91:14 93:2
  96:6 97:19
**production**
  17:21 69:9
**proffer** 56:15
**programs**
  46:19,21
**prohibit** 88:8
**project** 66:24
**properly** 41:13
**provide** 6:24
  20:7 29:20,21
  29:24 30:7
  32:3 33:7,19
  38:14 46:13,24
  47:3,4 51:17
  51:23 52:25
  74:4 75:2,16
  78:23 86:3
  88:10
**provided** 18:23
  38:8 46:17

50:15 52:3
53:3 56:21
62:17,20,21
75:11
**providing**
  31:25 33:18
  46:21,22
**public** 1:21
  3:17 4:12
  42:19 44:22
  99:21 100:8
  104:22
**pull** 96:23
**pursuant** 1:19
**put** 37:16 53:24

**q**

**question** 3:13
  6:2,3,7,8 13:12
  13:15,25 15:2
  22:9,16 25:11
  32:22,23 35:5
  36:5,15 38:23
  40:11 42:8,12
  42:17 43:2,4
  44:20 47:24
  53:20,22 65:14
  67:2,23 74:8
  74:10,16,19
  75:9 81:18
  82:7,18 84:20
  87:17 90:2
  92:16 95:14
  97:6
**questions** 5:19
  5:21 12:17

16:9,12,23
25:4 67:21
82:16 92:12
99:5,8,10
**quite** 49:11

**r**

**r** 4:10,10,18,18
  6:17 100:2
**rather** 26:17
  86:25
**read** 5:18 13:13
  13:16 14:9
  35:6 72:11,16
  72:18 74:13,15
  77:18 87:22
  88:5
**reading** 88:12
**really** 53:23
  65:4 78:2
  86:25
**reason** 33:7,8,9
  40:6 41:9 53:2
**reasonable**
  22:7 48:7,14
  51:7,15 86:4,7
  88:8,11
**reasoning** 33:4
  33:5 40:12
  51:16,20 52:3
  55:10 56:6,19
  56:22 79:14
  94:16,19 98:8
**reasons** 59:18
**reassignments**
  19:20

**recall** 7:23 8:4
  9:14 11:4,21
  15:13,17 28:23
  40:7,10 61:20
  64:10 68:16
  90:17 92:4,10
  94:22 95:10
**receive** 78:21
**received** 72:5
**receiving** 86:2
**recess** 59:2
**recognize**
  59:13 62:12
  65:9 66:20
  67:16 69:15
  70:22 71:2
  86:24 87:2,3
  90:14,15 91:16
  93:3 96:14
**recognized**
  30:2
**recollection**
  7:18
**record** 4:15
  5:17,18 13:13
  13:16 14:9
  26:13,25 35:6
  72:12,17,19
  74:11,11,13
  77:18 87:22
  88:6 94:10
  95:24 100:13
**refer** 18:12
  19:5 36:11

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 120 of 129 PageID #: 1024

**[referenced - reserved]**                                         Page 16

**referenced** 17:9
  89:18
**referred** 93:21
**referring** 16:24
  50:25 85:20
  87:18,24 88:24
  88:25 89:8
**refresh** 93:9,17
**refreshed** 68:8
  68:18,19
**regarding** 16:8
  16:11,25
**regular** 51:15
  92:12 99:12
**regularly** 92:11
**regulations**
  64:14 65:11
  102:2
**related** 14:13
  14:15 29:24
  69:20 100:16
**relates** 56:15
**relations** 19:4
  19:12,14,23
  21:10
**released** 91:21
**relevance**
  12:21
**relevant** 20:8
  98:11
**religion** 64:15
  102:4
**religious** 21:11
  22:10 23:2,15
  23:18,20,21,22

23:24 24:22
26:16 27:4,5
27:11,16 28:9
28:11 29:3
30:16,17 31:22
33:2,3,10
38:25 39:5
40:2,13 41:14
42:2 45:23
46:7 47:18,19
48:2,3,6,7,13
48:14,20,22,25
49:22 50:4
52:15,22 53:7
53:9,18 54:5
54:16 55:20,20
56:9,19 57:9
57:25 58:3,13
58:16 59:18
67:25 68:5,10
70:18 71:11
72:7,14,23
73:2,17,20,23
74:7 79:18
80:10 90:7,24
94:20 102:18
**remember**
  11:10 61:20
  63:15 93:22,22
**remote** 45:9,13
  45:19,22 46:24
  47:3,4 78:13
  81:2,10
**remotely** 42:6
  42:21 43:8

44:4,25 45:4
46:6 80:17
**removed** 20:2,3
**rendered** 89:8
  89:9
**rene** 2:15
**repealed** 87:4,7
**repeat** 13:10,11
  15:2 74:12
**repeatedly** 57:5
**rephrase** 5:25
**reported** 1:23
**reporter** 4:2,3
  4:6,14 5:13
  6:20 13:10
  18:23 26:10
  33:21 34:12,17
  34:23 77:16
  95:18 103:9
**represent** 5:2
**representative**
  25:7
**request** 22:11
  24:5 26:9,17
  27:11 33:12
  34:13 35:7
  36:3,7,8,21
  37:15 39:12,17
  39:19 40:2,14
  41:13,23,25
  45:23 46:7
  47:17,18,25
  48:2,6,7,13,14
  53:5,7 54:17
  56:4,20 57:24

58:13 62:25
63:5,12,19
64:8 65:16,21
67:4,8,25 68:5
68:11,15 71:12
71:21 73:23
76:20 90:8,25
94:17 102:19
**requested**
  79:18
**requests** 21:11
  21:19,20 22:2
  22:8,18,25
  23:7,13,14,17
  24:23 25:13
  27:4,5,16
  28:11 30:3,16
  30:18 34:5
  35:14 36:12
  38:2,17,25
  51:8,11 52:16
  80:13 92:13
  94:20 101:6,10
**required** 31:25
  33:16,19 39:2
  39:3,18 41:17
  78:9 79:9 88:9
**requirements**
  30:6 86:13
  102:13
**requires** 77:24
**reread** 35:4
  74:10,17
**reserved** 3:13

Case 1:23-cv-08663-BMC    Document 42-2    Filed 10/23/24    Page 121 of 129 PageID #:
1025

**[respect - scroll]**                                                  Page 17

| | | | |
|---|---|---|---|
| **respect** 76:18 | 67:5,7 68:2,9 | 50:1 51:1 52:1 | **s** |
| **respective** 3:6 | 72:13,22 73:15 | 53:1 54:1 55:1 | |
| **respond** 5:22 | 91:3 | 56:1 57:1,22 | **sabbath** 49:4 |
| 20:9 | **reviewing** | 58:1 59:1,4 | **safety** 19:21 |
| **response** 91:8 | 27:17,18 34:4 | 60:1 61:1 62:1 | 73:8 85:19 |
| 91:20 102:22 | 35:14 36:2,6 | 63:1 64:1 65:1 | **saying** 26:4 |
| **responsibilities** | 38:17 90:17 | 66:1 67:1 68:1 | 30:14 38:9 |
| 19:16 21:8,24 | **right** 8:8 21:22 | 69:1 70:1 71:1 | 55:16,25 56:2 |
| **responsibility** | 28:5 32:5 | 72:1,16 73:1 | 60:8,10 70:15 |
| 38:13 | 35:18 60:6 | 74:1 75:1 76:1 | 81:15 88:16 |
| **restate** 42:17 | 61:3,6 65:5 | 77:1 78:1 79:1 | **says** 31:11 |
| **restored** 8:15 | 66:5,15 79:13 | 80:1 81:1 82:1 | 55:22 66:17 |
| 8:18 | 80:4 81:22 | 83:1 84:1 85:1 | 72:12 90:25 |
| **result** 38:9 | 83:5 95:8 97:4 | 85:10 86:1 | **sbalken** 2:8 |
| **retained** 103:9 | 97:17 | 87:1 88:1 89:1 | **scale** 53:21 |
| **return** 78:16 | **rightful** 39:25 | 90:1 91:1 92:1 | **school** 29:18 |
| **returned** 29:18 | **rl** 40:23 | 92:19 93:1 | 42:5,5,19,19 |
| **review** 16:6,19 | **rmacioce** 2:17 | 94:1,11,18 | 43:7 44:10,22 |
| 17:5 22:17 | **road** 104:3 | 95:1 96:1,2,13 | 45:2,5,22 |
| 23:7,13 24:2,3 | **rodi** 1:16 4:17 | 97:1 98:1 99:1 | 46:24 47:11,14 |
| 26:24 28:16,18 | 5:1 6:1 7:1 8:1 | 99:15 100:10 | 49:9,24 79:10 |
| 35:19 36:9,19 | 9:1 10:1 11:1,2 | 101:4 103:3,7 | **school's** 45:19 |
| 36:24 37:25 | 12:1 13:1 14:1 | 104:5,17 | 46:6 |
| 39:11 52:22 | 15:1 16:1 17:1 | **rodi's** 17:22 | **schools** 45:17 |
| 62:23 63:19,24 | 18:1,8,12 19:1 | **room** 4:6 81:7 | 46:2,15,18,21 |
| 66:25 67:22 | 20:1 21:1 22:1 | **rq** 10:8 15:18 | 46:22,23,25 |
| 68:4 92:14 | 23:1 24:1 25:1 | 17:20 | 47:2 50:6 78:5 |
| **reviewed** 16:3 | 26:1 27:1 28:1 | **ruled** 79:24 | 84:15 |
| 16:15 22:25 | 29:1 30:1 31:1 | 81:20 | **scope** 13:2 25:2 |
| 23:25 24:23 | 32:1 33:1 34:1 | **rules** 5:5,7 6:11 | 25:5 30:21 |
| 27:5,12 29:5,9 | 35:1 36:1 37:1 | **ruling** 40:25 | 42:23 53:13 |
| 30:18 35:7,16 | 38:1 39:1 40:1 | **rulings** 101:8 | 54:9 56:13 |
| 52:15 61:13,18 | 41:1 42:1 43:1 | | 94:15 |
| 61:22 63:17,22 | 44:1 45:1 46:1 | | **screens** 30:2 |
| 64:6 65:18 | 47:1 48:1 49:1 | | **scroll** 60:2 |

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 122 of 129 PageID #: 1026

**[sealing - standard]**                                              Page 18

sealing   3:8
search   15:25
second   16:9
  85:12 87:7
  88:21,24 89:2
  89:4,17,20
  95:21
see   10:13 64:24
  65:3,6 66:2
  67:14 70:7
  71:16 88:3
  95:2
seeking   75:11
  75:20
seems   64:24
seen   60:21 61:9
  61:12 91:18
send   69:18 70:3
sense   49:2
sent   59:23 60:9
  60:11 69:19,22
  69:24 70:2,4
  71:11,22,24
  72:2 87:20
  95:17
sentence   73:15
  73:18 75:3
  85:13
september
  43:25 44:2
  45:2,10,14
  69:13 70:10
  87:15,21
service   8:15,18
  20:2,3 46:20

78:17
services   29:20
  29:24 30:7
  33:18 38:14
  46:13 81:5
set   100:12,21
setting   50:14
seven   55:3
seventh   2:5
several   12:17
  16:18 19:18
  25:15 59:17,20
  59:24 62:17
  66:17 69:10
sheet   104:2
short   19:6
showed   63:21
sick   44:14
signature   60:10
  60:18,19,20,22
  61:11 100:24
signed   3:16,18
  94:4 95:8 97:9
  97:20,24
similar   8:19
simply   55:25
sincere   39:5
sincerely   41:14
  41:22 42:2
  52:23 53:18
  54:5,15 56:9
  57:9,25 58:3
  58:15 62:18
  72:7 73:12

sincerity   56:24
single   7:9 65:25
sit   78:19
site   73:6 75:16
  75:21 76:4,17
  76:18 77:9,9
  81:4,20,25
  82:3,6,6,10,25
  82:25 83:2,3,4
  83:6,7 84:9,10
  84:25 85:16
situation   43:15
size   92:25
slow   34:24
small   95:17
solas   71:9
solely   39:20,24
solutions   104:2
somebody   77:6
someone's   83:4
someplace
  60:12
sorry   8:2 11:24
  13:9,10,24
  16:10 20:4
  21:15 22:6
  26:3 29:14
  34:8 36:5
  37:22 41:5,24
  42:15 55:10
  66:14 70:25
  73:13 90:20
sort   24:18
  50:10 56:14

space   15:19
speak   28:9
speaking   34:22
  44:16 55:10
special   46:21
  81:4,9,10
specific   19:8
  22:24 23:10
  27:10 32:18
  38:18 59:23
  94:17
specifically
  47:14 61:10
  92:5,13
spirit   62:3
  101:23
spoke   28:15
ss   100:4
stamp   59:11
  62:4 64:16
  69:4 86:15
  90:9 91:10
  92:20 96:3
  101:20,24
  102:5,8,16,20
  102:24 103:4,8
standard   28:24
  31:12,14 32:13
  32:17,18 33:10
  35:9,23 36:8
  36:21,23 38:24
  39:2,4,16
  48:19,24 50:11
  50:12,17,21,24
  51:3,4,7,11,20

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 123 of 129 PageID #: 1027

**[standard - terms]** Page 19

51:25 52:3,6 52:14,19 53:9 53:10 54:25 55:2,7,21 72:9 74:22

**standards** 28:17 49:11,13

**standing** 12:19

**standpoint** 31:7

**start** 23:22 27:22 65:8 73:14

**started** 28:13 34:3 37:10 42:13

**state** 1:21 4:15 8:21 100:3,8

**statement** 42:11

**statements** 92:8

**states** 1:2

**status** 7:8

**step** 34:18

**steven** 2:7 4:25

**stipulate** 97:16 97:18

**stipulated** 3:5 3:11,15 4:8,9

**stipulations** 3:2

**stoll** 2:4 5:2

**stop** 31:24

**street** 1:18 2:13 4:20

**strike** 13:25 22:6,8 36:5 38:22 44:19 67:2,22 90:2 95:14

**strong** 39:24 40:3

**strongly** 53:10 53:16,17,20 54:22 55:2 57:8 58:2,15 58:18,19

**students** 29:19 29:25 32:4 46:14,19 47:10 50:7,8 73:6 75:24 77:2,3 77:25,25 78:9 78:10,10,11,12 78:15,15 85:17 86:2

**submit** 72:3

**submitted** 22:20 29:6 37:15 54:11 59:9,16 63:3,7 63:8,15,23 65:15 67:3 68:14 101:18

**subscribed** 99:17 104:18

**sufficiently** 56:10

**suggest** 83:19

**suggesting** 84:4

**suite** 2:5

**summarize** 8:10

**supervisor** 26:22,24

**supplied** 33:4,5

**supported** 41:14

**supporting** 63:8,10 72:3 72:13,22 73:16

**sure** 18:6 29:23 29:24 65:7 66:19 72:18 94:3,3 95:23 96:24

**surprise** 95:15

**swear** 4:4

**sworn** 3:18 4:11 99:17 100:12 104:18

**system** 71:9

**t**

**t** 4:10,18 100:2 100:2

**take** 6:5,6 10:12 15:23 18:3 28:15 34:13 37:17 39:6 44:8,11 46:4 54:13 55:23 58:24 59:19 77:4

**taken** 8:22 60:12

**talk** 62:17

**talking** 23:9,10 23:12 24:8 43:17 56:18 75:14 77:17 95:3

**teach** 77:24 78:9 81:8 84:15

**teacher** 81:7,9

**teachers** 34:6 42:6,20 44:25 45:10 77:2,20 77:21 78:7 94:21

**teaching** 20:25 21:5

**tell** 50:25 68:21 83:20

**telling** 68:20 83:24

**temple** 62:2 101:22

**tenure** 27:7

**term** 31:3,4 52:18

**terms** 32:8 39:25 48:18 51:16,22,25 54:16 77:9 79:6 82:10 92:3

Case 1:23-cv-08663-BMC    Document 42-2    Filed 10/23/24    Page 124 of 129 PageID #: 1028

**[territory - undue]** Page 20

| | | | |
|---|---|---|---|
| **territory** 48:21 74:21 | **thought** 42:10 82:20 | **transcript** 10:9 17:21 92:18 93:7 96:18 97:3 99:12 103:2 | **unclear** 5:24 |
| **testified** 4:13 11:24 12:3 13:18 14:3 17:9,16,25 63:17 93:18 98:8 | **thousands** 27:19 29:15 35:22 37:12 49:8 63:25 75:22 76:24 | | **under** 5:8,9 10:13 15:24 18:3 33:17 39:18 40:2 48:20 55:7 88:3 |
| **testify** 7:3 10:21 | **threat** 73:8 85:18 | **transcripts** 16:20 | **understand** 5:4 5:11 6:10 32:22 36:14 40:15,19 42:25 43:3,5 47:22 47:23 50:19 55:9 56:5 81:17 82:7 85:3 |
| **testifying** 98:9 | **three** 27:22 55:4,5 | **treat** 48:12,22 | |
| **testimony** 6:24 12:12 13:22 17:22 30:23 73:24 84:24 85:8,9 94:2,5 100:14 | **time** 3:14 5:8 6:5 22:21 23:10 27:21,24 28:12 30:15 43:14 49:5 52:12 55:6 87:19 89:21 90:18 99:13 | **trial** 3:14 | |
| | | **tried** 74:4 | |
| | | **triggered** 71:19 | |
| | | **trouble** 26:11 | |
| | | **true** 96:18 100:13 | |
| | | **truthful** 6:24 | |
| **thank** 10:15 25:10 35:5 41:11 58:8,23 97:23 | | **truthfully** 7:4 | **understanding** 31:7 72:8 84:23 85:5 90:22 |
| | **times** 13:17 55:5 | **try** 35:2 | |
| **theresa** 1:20,24 74:9 100:7,25 | **timing** 49:19 | **trying** 23:14 84:3 | **understood** 6:4 56:5 79:23 |
| | **title** 19:2,3 | **twice** 13:20 | |
| **thing** 39:3 49:5 78:3,7 88:23 93:23 | **today** 6:24 7:4 17:2 18:8 60:22 63:16,21 | **two** 7:16 10:22 14:10 17:8,11 27:23 63:20 64:3,9 83:23 85:2 86:9,25 87:8 94:9 102:9 | **undue** 29:4,10 30:5 31:2,11 31:12,20 32:6 32:9,14 33:13 34:6 35:11,15 35:20,25 36:10 36:12,17,18,25 37:5,20 38:3 38:10,12 39:21 39:25 40:6 41:6 53:4,5,11 56:22 58:5,5 58:14 70:21 |
| **things** 20:5,6 50:9 57:3 81:14,23 82:2 89:16 | **today's** 17:6 | | |
| | **told** 10:16 | **type** 24:22 27:10 | |
| | **top** 63:14 91:2 95:13 | | |
| | | **u** | |
| **think** 8:20 13:4 14:14 15:8 40:9,24 84:19 91:25 | **topic** 56:16 | **umbrella** 81:25 | |
| | **topics** 13:3 | **unable** 44:7,11 | |
| | **towards** 12:13 | **unchartered** 48:21 74:21 | |
| | **tramondo** 1:20 1:24 100:7,25 | | |

Case 1:23-cv-08663-BMC   Document 42-2   Filed 10/23/24   Page 125 of 129 PageID #: 1029

**[undue - yeah]**                                   Page 21

73:10 75:6
76:19 79:25
80:9 81:16,23
82:11 83:10
84:10,13,17,17
**united** 1:2
**unprecedented** 49:7
**unvaccinated**
73:4 82:24
85:14
**upheld** 88:20
89:2,4
**use** 31:10 40:3
52:5 74:20,22
74:23
**used** 31:11
32:14 48:19,19
48:24 51:24
52:2
**using** 31:3
52:18

**v**

**vaccinated**
44:6,7,14,16
45:7 46:15
47:8 50:9 76:8
79:21,21
**vaccination**
16:14 38:14
44:8,8,12
78:21 86:12
102:13
**vaccine** 9:21
22:3 30:11,12

30:13 37:18
39:7 41:24
54:13 55:18,22
55:25 59:8,19
61:14 68:6
69:20 70:17
72:24 73:18
75:12,20 76:3
76:20 79:4,17
82:9,12 83:8
93:16 101:17
**vaccines** 14:14
14:15 44:2
55:24
**valid** 53:2
**verbal** 5:22
**veritext** 104:2
**version** 97:10
97:12
**versus** 55:4,6
**vibrating** 5:15
**video** 81:10
**view** 84:25
**virtually** 4:4
**volume** 28:3
30:3 34:16
49:19
**vs** 1:6 104:4
**vulnerable**
50:7

**w**

**waived** 3:10
**want** 25:5
37:17 40:3,9
40:20 54:12

55:18,22,25
59:19 72:18
94:9 96:9
97:25
**wanted** 8:15
24:15,16,17
25:14 26:25
**way** 26:13
49:21 52:21
100:18
**we've** 12:18
17:23 30:14
52:18 83:23
**week** 55:5,6
**weeks** 11:16,18
25:15
**went** 29:8
35:21 37:11
38:9 55:5
71:20
**whereof** 100:20
**wishes** 40:25
**witness** 4:4,5
4:11 13:12
25:7 29:14
33:23 40:10,25
74:12 84:20
94:13 98:4
100:11,14,20
101:3 104:5
**witness's** 84:23
85:4,8
**word** 31:10,20
32:14 39:24

**words** 40:4
**wore** 24:19
**work** 4:20 7:16
20:9 25:23
42:6,20 43:8
44:4,9,25 46:6
73:4 75:15,21
77:23,25 78:7
78:8 79:7,21
80:17,19 85:15
92:11 93:23
**worked** 84:25
**working** 45:4
75:24 76:4,17
77:9,9 79:17
79:19 81:8,20
81:25 82:3,5
82:10,22,25
83:6,7 84:9
**worksite** 73:9
75:5 79:17,19
80:12 81:21
**write** 71:4
**writing** 18:5
**written** 71:8
89:16 94:2
**wrote** 71:5 75:4
85:21 89:9,19

**x**

**x** 1:4,10 101:2

**y**

**y** 6:17
**yeah** 32:23
59:25 62:10

A-921

**[yeah - zoom]** Page 22

75:22 87:10
96:22
**year** 7:17 13:21
15:8 80:25
**yep** 67:15 88:4
96:24
**york** 1:3,8,17
1:19,21 2:6,6
2:11,14,14
4:21 18:20
20:21 100:3,5
100:9 104:3

**z**

**zeros** 66:17
69:10
**zoom** 1:16 4:5
4:11

A-922

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

A-923

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

A-924

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

A-925

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 1 of 93 PageID #: 1034

CONFIDENTIAL



**NYC**
Department of
Education

## ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR)
### TEACHER OBSERVATION REPORT

**Teacher Name:** MICHELLE BECKLES    **Teacher ID:** ▮▮▮▮▮
**School Year:** 2018-2019    **School Name/DBN:** 23K392-I.S. 392

## CLASSROOM OBSERVATION (OBS):

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

☐ Formal Observation (full period)    ☒ Informal Observation (15 minutes minimum)

Date of Observation: 11/20/2018    Time/Period: 10:15 AM

| Component | Ratings |
|---|---|
| **1a (obs): Demonstrating knowledge of content and pedagogy** <br> There is evidence that the teacher has procedural AND conceptual understanding of the content. | 4- Highly Effective |
| **1e (obs): Designing coherent instruction** <br> There is evidence that the lesson activities are based on student choice and allow various ways to complete the task. <br><br> The teacher has detailed, standard-aligned, lesson plan with scaffolds for all learners. | 4- Highly Effective |
| **2a: Creating an environment of respect and rapport** <br> There is some evidence that students were involved in creating the boundaries for the classroom. | 3- Effective |
| **2d: Managing student behavior** <br> The students respond to the teacher's direction and quickly response to the correction. | 3- Effective |
| **3b: Using questioning and discussion techniques** <br> You asked questions to help students: <br> What is a draft? <br> What is pre-writing? <br> Why do we write introductions? <br> How can we hook the reader? | 3- Effective |
| **3c: Engaging students in learning** <br> The lesson is structured yet proceeds in a seamless way. The teacher provides | 4- Highly Effective |

Last Revised: 11/28/18 12:14:28 PM By ljoseph2

DEF000046

A-926

CONFIDENTIAL

| | |
|---|---|
| points of entry to the material but allows the students to engage with the material for the overwhelming majority of the lesson. You allowed students to use illustrations which they used as a springboard to elaborate on their Ideas. This resulted In more writing from the students than ever before. Excellent use of differentiation. | |
| **3d: Using assessment in instruction**<br>-Teacher displays an exemplar of a personal narrative.<br><br>-Students drafted each part of their writing and elaborated on their ideas.<br><br>-Provided exemplars of each portion of writing stage.<br><br>-Gave feedback to students to help them improve their work. | 3- Effective |
| **4e (obs): Growing and developing professionally**<br>The teacher has a strong, detailed knowledge of current initiatives, programs, standards, pedagogy, etc., how these Initiatives are relevant to a variety of entities and how these initiatives are interconnected with past initiatives and to one another. You have infused the strategies from the"Powerful Writers PD in your instruction. | 4- Highly Effective |

Last Revised: 11/28/18 12:14:28 PM By ijoseph2

DEF000047

A-927

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 3 of 93 PageID #: 1036

CONFIDENTIAL

Teacher ID 0991603 _____    Teacher Name MICHELLE BECKLES _____

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM (P&P):

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component | Ratings |
|---|---|
| 1a (p&p): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (p&p): Designing coherent instruction | N/A |
| 4e (p&p): Growing and developing professionally | N/A |

**Additional Evaluator Notes (please attach more pages, as necessary):**
It's commendable how you are so open to incorporating and strengthening your practice to improve student outcomes.

Next Step: By Monday, November 26th, confer with Ms. Daniels? Ms. Braick to adopt a tool to use to assist students in monitoring their behavior. You can hold students accountable if they can view something tangible that tracks their behaviors. See attached tool.

Next Step: By the next lesson, provide student the opportunity to talk by framing questions that can sustain a discussion. This will foster more conversation thus assisting them in elaborating on each other's ideas.

**Teacher's signature:** _____    Date 11/28/18
*(I have read and received a copy of the above and understand that a copy will be placed in my file.)*

**Evaluator's name (print):** JOSEPH, INGRID _____

**Evaluator's signature:** _____    Date 11/29/18

Last Revised: 11/28/18 12:14:28 PM By ijoseph2

DEF000048

A-928

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 4 of 93 PageID #: 1037

CONFIDENTIAL



# THE NEW YORK CITY DEPARTMENT OF EDUCATION

Beverly Logan, Principal, P.S. 156        Ingrid Joseph - Principal, I.S. 392
Beth Albano, Assistant Principal          Loren Cooper, Assistant Principal
Ronda Phillips, Assistant Principal

## THE WAVERLY SCHOOL OF THE ARTS

PUBLIC SCHOOL 156                          INTERMEDIATE SCHOOL 392
(718) 498-2811                             (718) 498-2491

FAX (718) 346-2804

## Request for Personal Leave

Name: _Michelle Recules_  Date: _11-20-18_

File #: _[redacted]_

Date(s) requested: _2-15-18_

Return date: _2-25-18_

Reason for request:

_Required follow up dental visit at Vital Europe._

Approved by: _[signature]_

Date: _11/20/18_

*104 Sutter Avenue, Brooklyn, NY 11212-4139*

DEF000049

A-929

CONFIDENTIAL

Commissioner of Jurors
Queens Division of Jurors
89-17 Sutphin Boulevard
Jamaica, NY 11435-3710
718-262-7200
queensjury@nycourts.gov

October 10, 2018

Juror's Proof of Service Certificate

This letter certifies that

Michelle V. Beckles

Juror Index: 7120462624 Y1953

Served as a juror in Queens County for a total of 1 day on the following date:

10/10/2018

Thank you for your participation and contribution to the justice system. Please keep this certificate for your records.

Audrey I. Pheffer
Commissioner of Jurors

**Juror Pay**

Jurors are entitled to $40 per day unless they receive wages during jury service. The employer of more than 10 employees must pay full time, part time, temporary or night shift employees at least the jury fee of $40 per day for the first three days of service. Thereafter, jurors whose wages are withheld are paid $40 per day by the State. There is no reimbursement for transportation or parking. Judiciary Law §521. For more information www.nyjuror.gov/whopays.shtml.

Any employer who is informed of an employee's summons to jury service before service begins shall not discharge or penalize that employee for being absent while serving as a juror. An employer may not require an employee to use sick, personal or vacation time during jury service. Violation of this shall constitute a criminal contempt of court punishable pursuant to Judiciary Law Art 19, § 750.

A-929

**A-930**

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 6 of 93 PageID #: 1039



9/13/2018

NYCDOE - Advance Overall Rating Report

CONFIDENTIAL
9/13/2018

## ANNUAL PROFESSIONAL PERFORMANCE REVIEW
*Overall Rating Report*

Teacher Name: MICHELLE BECKLES

Teacher ID: ▮▮▮▮▮

School: 23K392 - I.S. 392

School Year: 2017 - 2018

OVERALL AND SUBCOMPONENT RATINGS:

Your overall APPR rating is based on the sum of two subcomponent scores: Measures of Teacher Practice and Measures of Student Learning.

| Your MOTP is | Your MOSL is | Your Overall Rating is |
|---|---|---|
| Effective | Developing | Effective |

### Measures of Teacher Practice

| | Highly Effective | Effective | Developing | Ineffective |
|---|---|---|---|---|
| **Highly Effective** | H | H | E | D |
| **Effective** | H | E | E | D |
| **Developing** | E | **E** | D | I |
| **Ineffective** | D | D | I | I |

(left axis label: Measures of Student Learning)

For more information about rating calculations, please see the SY 2017 - 2018 Advance Overall Ratings Guide.

Teacher's Signature: _____    Date: 9-13-18
(I have read and received a copy of the above and understand that a copy will be placed in my file.)

Evaluator's Name (print): Ingrid Joseph    Date: 9/11/18

*Confidentiality Notice:* This report was most recently updated on August 31, 2018. It contains data that is confidential, private, or sensitive. Please ensure the appropriate use and security of this report.

DEF000051

A-931

CONFIDENTIAL

## Measures of Teacher Practice

23K392

MICHELLE BECKLES

### School Year 2017-2018

For the 2017-2018 school year, you were rated **Effective** for your Measures of Teacher Practice.

Your MOTP Score
3.22
↑

| Ineffective | Developing | Effective | Highly Effective |
|---|---|---|---|
| 1.00 | 1.75 | 2.51 | 3.51    4.00 |

This page explains how your classroom observations in 2017-2018 were used to calculate your Measures of Teacher Practice. For detailed information on your component scores, please refer to your completed 2017-2018 Evaluator Forms and your MOTP Summary Form. For additional information on the observation options and the Danielson 2013 *Framework for Teaching*, please refer to the resources found on InfoHub.

Observation Option: You selected Option 1: 1 Formal, 3 informal observations. You received 4 total observations.

### MOTP Calculation

| Domain | Component | Number of Times Rated | Component Average x Weight = Weighted Component Average |
|---|---|---|---|
| Planning & Preparation | 1a: Demonstrating Knowledge of Content and Pedagogy | 4 | 3.50 x 0.05 = 0.1750 |
| | 1e: Designing Coherent Instruction | 4 | 3.00 x 0.05 = 0.1500 |
| Classroooom Environment | 2a: Creating an Environment of Respect and Rapport | 4 | 3.25 x 0.17 = 0.5525 |
| | 2d: Managing Student Behavior | 4 | 3.25 x 0.17 = 0.5525 |
| Instruction | 3b: Using Questioning and Discussion Techniques | 4 | 3.00 x 0.17 = 0.5100 |
| | 3c: Engaging Students in Learning | 4 | 2.75 x 0.17 = 0.4675 |
| | 3d: Using Assessment in Instruction | 4 | 3.25 x 0.17 = 0.5525 |
| Professional Responsibilities | 4e: Growing and Developing Professionally | 1 | 3.00 x 0.05 = 0.1500 |

MOTP Score (sum of the weighted component averages, rounded to the nearest hundredth) = 3.22

### Comparing Your Component Averages



2015-2016
2016-2017
2017-2018

Confidentiality Notice: This report was most recently updated on August 31, 2018. It contains data that is confidential, private, or sensitive. Please ensure the appropriate use and security of this report.

DEF000052

A-932

Case 1:23-cv-08663-BMC     Document 42-3     Filed 10/23/24     Page 8 of 93 PageID #: 1041



**NYC**
**Department of Education**
Chancellor Richard A. Carranza

New York City Department of Education
Division of Human Resources
65 Court Street, Brooklyn, New York 11201
BE/DOP 9955B (06/18) pers d1

**ATTENDANCE FORM FOR** CONFIDENTIAL
**ADVANCE-RATED TEACHERS**
(OTHER THAN SUPERVISOR, GUIDANCE COUNSELOR,
SCHOOL SOCIAL WORKER, PSYCHOLOGIST,
SCHOOL SECRETARY)

| EMPLOYEE'S FULL NAME | LICENSE | FILE NUMBER |
|---|---|---|
| BECKLES, MICHELLE | SPECIAL EDUCATION DAY | ▮ |

| EMPLOYEE'S COMPLETE HOME ADDRESS (Number and Street) | APT.NO | EMPLOYEE ID NUMBER |
|---|---|---|
| ▮ | | ▮ |

| CITY | STATE | ZIP CODE | TENURED | PROBATIONER | SUBSTITUTE |
|---|---|---|---|---|---|
| ▮ | ▮ | ▮ | ✓ | ☐ | ☐ |

| CURRENT SALARY RATE | FOR PROBATIONERS: Date of Appointment | Jarema Credit | N.Y.S. Tenure Credit (Max 1 year) | Date of Completion of Probation |
|---|---|---|---|---|
| $98,644.00 | | | | |

| BCO SCHOOL | BOROUGH | DISTRICT |
|---|---|---|
| KFSN-K392-I.S. 392 | BROOKLYN | 23 |

| Printed as of 06-10-19 | FIRST YEAR 2019 | | | | SECOND YEAR | | | | THIRD YEAR | | | | FOURTH YEAR | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | TIMES NO | TIME LOST | | | TIMES NO | TIME LOST | | | TIMES NO | TIME LOST | | | TIMES NO | TIME LOST | | |
| | | DAYS | HRS | MIN | | DAYS | HRS | MIN | | DAYS | HRS | MIN | | DAYS | HRS | MIN |
| LATENESS* | | 0 | 0 | 37 | | | | | | | | | | | | |
| ABSENCE* Exclude non-Attendance | | 2 | 0 | 0 | | | | | | | | | | | | |

| DAYS IN C.A.R. | 106 | OR BORROWED DAYS | SUBSTITUTE SERVICE NO. OF DAYS |
|---|---|---|---|
| | | | |

*NOTE: For reports on probationers, complete 1 to 4 years as applicable. For all other personnel use "First Year" to denote current year.

| SIGNATURE OF PRINCIPAL (If other, give title) | 6/14/19 DATE | ACKNOWLEDGEMENT BY EMPLOYEE I have received this report on: SIGNATURE OF EMPLOYEE | 6/14/19 DATE |
|---|---|---|---|

**This is not a Rating Form for *Advance*-eligible teachers**

DEF000053

A-933

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 9 of 93 PageID #: 1042

CONFIDENTIAL



**Department of Education**

## ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR)
## TEACHER OBSERVATION REPORT

**Teacher Name:** MICHELLE BECKLES          **Teacher ID:** ▇▇▇▇

**School Year:** 2018-2019          **School Name/DBN:** 23K392-I.S. 392

## CLASSROOM OBSERVATION (OBS):

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

[ ]  **Formal Observation (full period)**          [X]  **Informal Observation (15 minutes minimum)**

Date of Observation: 06/07/2019          Time/Period: 9:09 - 9:29

| Component | Ratings |
|---|---|
| *1a (obs): Demonstrating knowledge of content and pedagogy*<br>T Think about that again<br><br>T What is your cause<br><br>S I didn't take a bath<br><br>T and your effect<br><br>S Iwas dirty<br><br>T take a look at your anchor chart<br><br>T Can someone help him out with his sentence<br><br>Knowledge of Grade Level Content: There is evidence that the you have procedural AND conceptual understanding of the content and how to scaffold it for your students.<br><br>Learning Progressions: You have strong understanding of prerequisite skills needed for students to reach their learning goal. | 4- Highly Effective |
| *1e (obs): Designing coherent instruction*<br>T When I say go find your partner<br><br>T Go<br><br>S Students walking around reading slips of paper and pairing up | 4- Highly Effective |

Last Revised: 06/24/19 10:23:35 AM By irancefjsher

DEF000054

A-934

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 10 of 93 PageID #: 1043

CONFIDENTIAL

| | |
|---|---|
| T when you find your partner find a spot in the room to stand with your partner<br><br>T consult with your partner to ensure it makes sense<br><br>The concept was explained, students worked through a number of examples with the teacher and then students worked independently to prove mastery. Throughout the lesson each activity allowed students to interact with the material independently, in groups, and as a class.<br><br>Learning activities illustrate the student's ability to process and apply the information in a variety of ways. The instructional resources and materials used supported the lesson objectives. | |
| **2a: Creating an environment of respect and rapport**<br>T Can someone help him out with his sentence<br><br>T help your partners and make sure they understand the task<br><br>S ▮▮▮ to ▮▮▮ do you understand the task.<br><br>S ▮▮▮ a bee stung my finger is the cause<br><br>S ▮▮▮ my finger swelled up<br><br>T ▮ are really working well as a team<br><br>T great job guys<br><br>Students treat one another, the teacher, and para professionals, with kindness, respect and encouragement. There is a culture of respect and support promoted and embedded as a norm in the classroom.<br><br>All students are treated at the same level of respect. | 4- Highly Effective |
| **2d: Managing student behavior**<br>T Another 30 seconds, stay on task<br><br>There were no misbehaviors, it is evident that students view their behavior as a representation of their character and respect for the classroom.<br><br>Student Response: There is evidence that the students view classroom behavior is important to create a safe, productive environment for work and learning. As such, students are responsible for maintaining this environment as much as it is the teacher's responsibility. | 4- Highly Effective |
| **3b: Using questioning and discussion techniques**<br>T what is your cause?<br><br>T someone tell me her cause<br><br>T who agrees and who disagrees<br><br>S ▮▮▮ forgot to charge his phone. He couldn't call anyone. | 3- Effective |

Last Revised: 06/24/19 10:23:35 AM By jrancefisher

DEF000055

A-935

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 11 of 93 PageID #: 1044

CONFIDENTIAL

T Who wants to go next

S ████ didn't listen to his teacher.

S ████ he didn't know what to work on

Group 2 If an elephant jumped into a tiny pool, What would happen?

████ writes for the group, it would get stuck in a tiny pool

Group 1 If you saw an alien what would happen?

████ i would run away

████ I would hit it with a fire extinguisher

████ I would run away

Let's take a look at the other groups question, what would happen to the elephant in the tiny pool

Questions are thoughtful and designed to push student thinking. Questions require students to make connections to prior knowledge. Questions were planned in advance based on anticipated student responses.

You created many opportunities for your students to discuss their work and learn from each other.

| | |
|---|---|
| | 4- Highly Effective |
| **3c: Engaging students in learning**<br>S Students walking around reading slips of paper and pairing up<br><br>T Now each group will tell me which is your cause and which is your effect.<br><br>T Read the sentence on the tent and figure out which is the cause and which is the effect.<br><br>T these are silly situations but we are going to stretch our imaginations<br><br>Task Design: The teacher has completely aligned the task, materials, and resources to the standards and objectives.<br><br>Lesson Design & Pace: The lesson is structured yet proceeds in a seamless way. Direct Instruction, if any, is focused and only used to address student need.<br><br>Use of Materials: The students are given time to explore ideas on their own with clarification, rather that direct instruction, from the teacher. | 3- Effective |
| **3d: Using assessment in instruction**<br>Fist of five are we ready to move on?<br><br>T Ok, lets look at the exit ticket, come over to this table and pick one of the hot dog tents and respond. | |

Last Revised: 06/24/19 10:23:35 AM By jrancefisher

DEF000056

A-936

CONFIDENTIAL

| | |
|---|---|
| T read your sentence that you created to your partner<br><br>Student self-assessment and monitoring of progress: The concept was explained, students worked through a number of examples with the teacher and then students worked independently to prove mastery. The lesson uses a number of strategies so that all learners can understand the learning objectives.<br><br>Assessment Criteria: Students are actively engaged in the lesson. | 4- Highly Effective |
| **4e (obs):** *Growing and developing professionally*<br>T read your sentence that you created to your partner<br><br>It is evident from your lesson that you have incorporated the school's engagement strategies and are attempting to implement AVID strategies, tweaked to meet the needs of your learners. | |

Last Revised: 06/24/19 10:23:35 AM By jrancefisher

DEF000057

A-937

CONFIDENTIAL

Teacher ID ███████          Teacher Name MICHELLE BECKLES

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM (P&P):

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component | Ratings |
|---|---|
| 1a (p&p): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (p&p): Designing coherent instruction | N/A |
| 4e (p&p): Growing and developing professionally | N/A |

**Additional Evaluator Notes (please attach more pages, as necessary):**

Next Step: Remember to create opportunities for student choice.

Next Step: Think about incorporating prompting tools to aid distracted students, without verbal warnings.

Next Step: Encourage your students to question each other to further conversation and deepen understanding of the material.

Next Step: For next year, think about how you can incorporate various student check in strategies, in addition to your fist of five and thumbs up and down. Perhaps colored die, or pin wheels of mastery.

Teacher's signature: _____    Date 6/26/19
(I have read and received a copy of the above and understand that a copy will be placed in my file.)

Evaluator's name (print): RANCE FISHER, JOYELLE

Evaluator's signature: _____    Date 6/26/19

Last Revised: 06/24/19 10:23:35 AM By jrancefisher

DEF000058

A-938

CONFIDENTIAL

Teacher ID ███████        Teacher Name MICHELLE BECKLES

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM (P&P):

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component | Ratings |
|---|---|
| **1a (p&p): Demonstrating knowledge of content and pedagogy** <br> The teacher can identify important concepts and how these relationships are intertwined within the grade level domains. <br><br> The teacher has competent, working knowledge of how prior knowledge has laid the foundation for the current unit of study as well as how this learning will build schema for future learning experiences. | 3- Effective |
| **1e (p&p): Designing coherent instruction** <br> -Lesson plan scaffolds the task with multiple strategies for students. <br> -Technology was infused throughout lesson. <br> -Many visuals were used . <br> -Differentiated strategies and additional support was provided <br><br> The learning activities are connected to the lesson objectives and all students are highly engaged.  There is evidence that the lesson activities are based on student choice and allow various ways to complete the task. | 4- Highly Effective |
| **4e (p&p): Growing and developing professionally** | N/A |

**Additional Evaluator Notes (please attach more pages, as necessary):**
You are creating an environment where students feel safe and nurtured. You are also using your paras in a very productive way to support learning. Its always a pleasure to see the progress your students make every time I visit.

Essential question: How do you find and use and absolute value?

Next Step: As previously reminded, a monitoring chart would be beneficial to hold students accountable for their behavior and as a tool for tracking their behavior.  Please ensure this is done immediately with the support of Ms. Braick/ Ms.Daniels

Next Step: While questions are designed to push student thinking and make connections, students can benefit by extending the discussion by challenging each other more. By the next lesson, you can integrate some conversation STEMS to ensure that all students participate . It would be helpful if you introduce one stem at a time until they master it, confer with Ms. Rancefisher for some assistance in this area.

Last Revised: 01/21/19 4:40:25 PM By ijoseph2

DEF000059

A-939

CONFIDENTIAL

| | |
|---|---|
| Teacher showed a chart that explained what the absolute value was. Teacher modeled several examples from guided practice sheet. An exit ticket was assigned to students at the end of lesson. The instructor models how to complete the activity and provides plenty of strategies for students to prove mastery Students use prior knowledge to build upon the skill being taught | |
| *4e (obs): Growing and developing professionally* You are actively involved in Learning Partners and other school PLC's . | 3- Effective |

Last Revised: 01/21/19  4:40:25 PM By ijoseph2

DEF000060

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 16 of 93 PageID #: 1049

CONFIDENTIAL

T

1:28

Teacher explained some more examples.

T What can you say about the distance of -55 and 55 from 0?

T I think you can go on your own.j

T Let's take

T Find your W partner.

Students worked in pairs.

1:35 p.m.

S Student volunteer went to the board.

Used online tool as feedback.

T ▮▮▮▮ what is the absolute value of -2 and 2

S Absolute value of -7? 7

Other questions asked in independent practice :

Which pairs of negative numbers have the same absolute value?
How are these numbers related?
Negative numbers are less than positive numbers. Does this meant that the
absolute value of a negative number must be less than the absolute value of a
positive number. Explain.

Questions are thoughtful and designed to push student thinking. There is adequate
wait time in between questions.
Students are required to demonstrate how they "know".

| | 4- Highly Effective |

3c: Engaging students in learning
-Talk to your elbow partner.

-Stand share sit was used.

-Fist to five.

-Find your writing partner.

Collaborative groups are an integral part of the learning in this classroom. The
lesson is structured yet proceeds in a seamless way. The teacher provides points
of entry to the material but allows the students to engage with the material for the
overwhelming majority of the lesson. Multiple engagement strategies were used
throughout.

| | 4- Highly Effective |

3d: Using assessment in instruction

Last Revised: 01/21/19 4:40:25 PM By ijoseph2

DEF000061

A-941

Case 1:23-cv-08663-BMC     Document 42-3     Filed 10/23/24     Page 17 of 93 PageID #: 1050

CONFIDENTIAL

S I do.

T How do we write it?

T Does anyone watch football?

K Field goal

T If you went to buy the concord 7, was it added or subtracted ?

S My dad used his card, so it was subtracted.

T Heres the same question:

If you borrow money from a friend, how do you represent it?

S -3

T How do we write it?

I-3I

T Who understands?

6 out of 6 students raise their hands.

S I have a question.

T If you walk. What does that mean?

S It's +

1:21 p.m.

Teacher explained more examples of absolute values.

S 9

T Who agrees with ██████?

T . Where do we start?

S 0

T Is absolute value negative or positive?

T Can you explain to ██████?

S ██████ goes to explain on the board.

T Mark it.

S I waned to add on to something that ██████ said.

Last Revised: 01/21/19  4:40:25 PM By ijoseph2

DEF000062

A-942

CONFIDENTIAL

| | |
|---|---|
| -Students are reminded to demonstrate classroom decorum.<br><br>Students understand the components of professional classroom conduct (i.e. low/moderate noise level to allow for collaboration but not too noisy that others cannot concentrate, appropriate language, respect for personal items and space, etc). | |
| *3b: Using questioning and discussion techniques*<br>T Who wants to share their route.<br><br>██████.<br><br>S ███████ said:  I will do it.<br><br>T<br>████████where is your starting point?<br><br>T Where you started is a zero.<br><br>T What's the distance?<br><br>S 1/2 mile<br><br>S 19 minutes<br><br>T Have you ever borrowed money?   Describe what that meant mathematically.<br><br>S I have borrowed from my mom.<br><br>S I don't borrow<br><br>S From my mom and grandma.<br><br>S Not sure<br><br>S ████ stands.  Sometimes , I get money for a snack.<br><br>1:11 p.m.<br><br>████████explained<br><br>T<br>How do you show owing?<br><br>S Subtraction.<br><br>T How does it relate?<br><br>S<br><br>T Where████████starts at home is his zero?<br><br>T . Fist to five.  Who understands? | 3- Effective |

Last Revised: 01/21/19  4:40:25 PM By ijoseph2

DEF000063

A-943

CONFIDENTIAL



**Department of Education**

# ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR)
# TEACHER OBSERVATION REPORT

**Teacher Name:** MICHELLE BECKLES        **Teacher ID:** ▮▮▮▮▮▮

**School Year:** 2018-2019        **School Name/DBN:** 23K392-I.S. 392

## CLASSROOM OBSERVATION (OBS):

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

[X] **Formal Observation (full period)**        [ ] **Informal Observation (15 minutes minimum)**

Date of Observation: 12/12/2018        Time/Period: 9:00 AM

| Component | Ratings |
|---|---|
| **1a (obs): *Demonstrating knowledge of content and pedagogy*** <br> The teacher can identify important concepts and how these relationships are intertwined within the grade level domains. <br><br> The teacher has competent, working knowledge of how prior knowledge has laid the foundation for the current unit of study as well as how this learning will build schema for future learning experiences. | 3- Effective |
| **1e (obs): *Designing coherent instruction*** <br> -Lesson plan scaffolds the task with multiple strategies for students. <br> -Technology was infused throughout lesson. <br> -Many visuals were used . <br> -Differentiated strategies and additional support was provided <br><br> The learning activities are connected to the lesson objectives and all students are highly engaged. <br> There is evidence that the lesson activities are based on student choice and allow various ways to complete the task. | 4- Highly Effective |
| **2a: *Creating an environment of respect and rapport*** <br> -"▮▮▮▮▮ have a seat." <br> -Students were reminded to raise their hands. <br> -Appropriate voices are used throughout lesson. <br><br> There is evidence of student/teacher created practices for the classroom | 3- Effective |
| **2d: *Managing student behavior*** <br> -Fist to five was used. | 3- Effective |

Last Revised: 01/21/19  4:40:25 PM By ijoseph2

DEF000064

A-944

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 20 of 93 PageID #: 1053
CONFIDENTIAL

Teacher ID [redacted]                    Teacher Name MICHELLE BECKLES

Teacher's signature: _____    Date 6/26/19

(I have read and received a copy of the above and understand that a copy will be placed in my file.)

Evaluator's name (print): JOSEPH, INGRID

Evaluator's signature: _____    Date 6/26/18

Last Revised: 01/21/19 4:40:25 PM By ijoseph2

DEF000065

A-945

Case 1:23-cv-08663-BMC     Document 42-3     Filed 10/23/24     Page 21 of 93 PageID #: 1054     CONFIDENTIAL



**Department of Education**

# ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR)
## TEACHER OBSERVATION REPORT

**Teacher Name:** MICHELLE BECKLES     **Teacher ID:** ▮▮▮▮
**School Year:** 2018-2019     **School Name/DBN:** 23K392-I.S. 392

## CLASSROOM OBSERVATION (OBS):

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

☐ **Formal Observation (full period)**     ☒ **Informal Observation (15 minutes minimum)**

Date of Observation: 05/23/2019     Time/Period: 12:29 - 12:52

| Component | Ratings |
|---|---|
| **1a (obs):** *Demonstrating knowledge of content and pedagogy*<br>T If you missed something we are connecting to prior learning, so you will now get it<br><br>There is evidence that you have procedural and conceptual understanding of the content. Along with a strong understanding of prerequisite skills needed for students to reach their learning goal. | 3- Effective |
| **1e (obs):** *Designing coherent instruction*<br>T I am mixing in the key understandings, you have a vertical and a horizontal line that intersect where?<br><br>T questions, wonderings, concerns<br><br>T ok lets move on, graphing<br><br>T you always do the x and then the y (x,y)( pointing to model examples on the board<br><br>T Lets plot 2,3 my x is 2 and my y is 3<br><br>T What is the coordinate for R Bernache?<br><br>T ▮▮▮ is my 1 negative or positive, do i go up or down<br><br>The learning activities are connected to the lesson objectives and all students were highly engaged.<br>There is evidence that the lesson activities provided students various ways to | 4- Highly Effective |

Last Revised: 06/07/19  3:54:10 PM By jrancefisher

DEF000066

A-946

CONFIDENTIAL

| | |
|---|---|
| understand the content, process information, and apply specific knowledge to the task to confirm understanding.<br><br>Students are grouped and paired with the classroom paras appropriately.<br><br>The concept built on prior knowledge and prepared students for the next skill set. | |
| *2a: Creating an environment of respect and rapport*<br>T right, you got it<br><br>S- ▮▮▮ and ▮▮▮ assist one another<br><br>Students monitor one another with the classroom norms as needed.<br><br>The teacher and paras reinforced class norms throughout the lesson. Students treat one another and the teacher with kindness, respect and encouragement.<br><br>Paraprofessionals are empowered by the teacher to contribute and assist with instruction. | 4- Highly Effective |
| *2d: Managing student behavior*<br>T notes should be open, sit properly and direct your eyes to the board<br><br>You delivered an appropriate response to redirect or address student behavior in a timely manner (either with verbal or non-verbal cues). | 3- Effective |
| *3b: Using questioning and discussion techniques*<br>T up and down which axis is this ?<br><br>T Which axis is horizontal?<br><br>T First question, the horizontal number on a coordinate plan is called?<br><br>T What coordinate is the origin?<br><br>T what does intersect mean?<br><br>T are there any quadrants that contain negative numbers<br><br>T which axis have the positive and the negative<br><br>T How would describe it if you are looking at the x axis<br><br>T Is it at the left or the right, ▮▮▮ going back to you.<br><br>T what cordinate do we plot first<br><br>S - ▮▮▮ x then y<br><br>T Whats my X for point P<br><br>S - ▮▮▮ goes up to the board to plot<br><br>T what is my x ? | 3- Effective |

Last Revised: 06/07/19  3:54:10 PM By jrancefisher

DEF000067

A-947

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 23 of 93 PageID #: 1056

CONFIDENTIAL

| | |
|---|---|
| S - ▉ raises hand<br><br>Your questions allowed student's an opportunity to demonstrate their understanding of the topic and display their thinking. | |
| **3c: Engaging students in learning**<br>T These words are also our vocabulary words for the day<br><br>T we are going to move on, lets cut out our cards real quick<br><br>S ▉ Ms. Beckles can Ipass them out<br><br>Tok guys, we are all cut out?<br><br>Which one Is quadrant one<br><br>You have completely aligned the task, materials, and resources to the standards.<br><br>The teacher's matching activity engaged the class while assessing their understanding of the concept taught. | 3- Effective |
| **3d: Using assessment in instruction**<br>S - ▉ goes up and and labels the coordinates on the board<br><br>S - ▉ this one, points<br><br>T how do you say it?<br><br>S - ▉ i don't know<br><br>T roman numeral 1,2,3,4 shows class<br><br>T Were is my y axis, do I go up or down?<br><br>S goes up to the board<br><br>T fist of 5 do we understand<br><br>Class 4, 5,5 3<br><br>T Let's try T, Whats my X, do we go left or right first, put your hand here and where do we go?<br><br>T good go down wlth your hand where does it stop?<br><br>S- ▉ -11<br><br>Throughout the lesson the teacher checked for understanding on the concept being taught and activated prior knowledge.<br><br>Feedback was provided by students, the teacher, and the paras in the room. | 4- Highly Effective |
| **4e (obs): Growing and developing professionally** | N/A |

A-948

CONFIDENTIAL

Teacher ID 0991603          Teacher Name MICHELLE BECKLES

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM (P&P):

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component | Ratings |
|---|---|
| 1a (p&p): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (p&p): Designing coherent instruction | N/A |
| 4e (p&p): Growing and developing professionally | N/A |

**Additional Evaluator Notes (please attach more pages, as necessary):**
Next Step: Incorporate higher-level questioning that pushes student thinking.

Next Step: Embed open-ended questions and differentiated activities throughout the lesson to create opportunities for independent student discovery of the content.

Teacher's signature: _____   Date 6/26/19
(I have read and received a copy of the above and understand that a copy will be placed in my file.)

Evaluator's name (print): RANCE FISHER, JOYELLE

Evaluator's signature: _____   Date 6/26/19

Last Revised: 06/07/19  3:54:10 PM By jrancefisher

DEF000069

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 25 of 93 PageID #: 1058

CONFIDENTIAL

**NYC Department of Education** (formerly Richard A. Carranza)

New York City Department of Education
Division of Human Resources
65 Court Street, Brooklyn, New York 11201
BE/DOP 9955B (04/14) pers d1

**ATTENDANCE FORM FOR ADVANCE-RATED TEACHERS**
(other than supervisor, guidance counselor, school social worker, psychologist, school secretary)

| EMPLOYEE'S FULL NAME BECKLES, MICHELLE | LICENSE SPECIAL EDUCATION DAY | | FILE NUMBER ▓ |
|---|---|---|---|
| EMPLOYEE'S COMPLETE HOME ADDRESS (Number, Street and Apt. No.) | | | EMPLOYEE ID ▓ |

| CITY ▓ | STATE ▓ | ZIP CODE ▓ | TENURED ☒ | PROBATIONER ☐ | SUBSTITUTE ☐ |
|---|---|---|---|---|---|

| CURRENT SALARY RATE $94,198.00 | FOR PROBATIONERS: Date of Appointment | Jarema Credit | N.Y.S. Tenure Credit (Max 1 year) | Date of Completion of Probation |
|---|---|---|---|---|

| FSC SCHOOL KFSN-K392-I.S. 392 | | BOROUGH BROOKLYN | DISTRICT 23 |
|---|---|---|---|

| PRINTED AS OF 06-13-18 | FIRST YEAR 2018 | | | | SECOND YEAR | | | | THIRD YEAR | | | | DAYS IN C.A.R. | OR BORROWED DAYS | SUBSTITUTE SERVICE NO. OF DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | TIMES NO. | TIME LOST | | | TIMES NO. | TIME LOST | | | TIMES NO. | TIME LOST | | | | | |
| | | DAYS | HRS | MIN | | DAYS | HRS | MIN | | DAYS | HRS | MIN | | | |
| LATENESS* | | 0 | 0 | 58 | | | | | | | | | | | |
| ABSENCE* Exclude non-Attendance | | 1 | 1 | 13 | | | | | | | | | 98 | | |

*NOTE: For reports on probationers, complete 1 to 3 years as applicable. For all other personnel use "First Year" to denote current year.

ACKNOWLEDGEMENT BY EMPLOYEE
I have received this report on
Signature of employee _____ Date 6/14/18    Signature of Principal _____ Date 6/12/18

**This is not a Rating Form for *Advance*-eligible teachers**

DEF000070

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 26 of 93 PageID #: 1059

CONFIDENTIAL



**INTERMEDIATE SCHOOL 392 : The School For The Gifted & Talented**
**104 Sutter Avenue**
**Brooklyn, NY 11212**
**Ingrid Joseph, Principal**
**Loren Cooper, Assistant Principal**



The School for the
Gifted & Talented

March 22, 2018

**To:**   Michelle Beckles
**From:** Ingrid Joseph
**Re:**    Attendance

   IS 392's Core Values are represented by *TEAM392: Teamwork, Engagement, Advocacy and Mentorship.* To this extent we must continuously strive for excellence. Our goal is that we achieve 100% attendance for staff and students.   We must set an example for students as part of our responsibility as educators and role models. Moreover, if you are not present your students are missing valuable instruction. Excessive absences are viewed as any number of absences that impede the education of our children.  Also, as a small school each time you are out it has an impact on your colleagues due to coverages; as a professional team and a family let's be responsible in our actions.  Attendance is also part of showing professionalism; Danielson 4f. ***In addition, you are to be present in the auditorium at 8:10 a.m. on Mondays and at your post in the hallway or classroom door in order to start your day and model appropriate behavior for your students.***  Below you will find your days absent/late.

| Number of Days Absent: 0 | Number of Days Late: 4 |
|---|---|
| ☐ This is Excessive and <u>MUST</u> be improved.<br>☐ This is moderate and should be improved.<br>☐ This shows dedication and professionalism. Thank You!<br>☐ You have a perfect attendance record! This shows excellence and dedication to your profession. It is duly recognized and appreciated. | ☐ This is Excessive and <u>MUST</u> be improved.<br>☐ This is moderate and should be improved.<br>☐ This shows dedication and professionalism. Thank You!<br>☐ You have a perfect attendance record! This shows excellence and dedication to your profession. It is duly recognized and appreciated. |

Thank you.

*[signature]*

Educationally Yours,
Principal Joseph

DEF000071

A NATIONAL TITLE I DISTINGUISHED SCHOOL
TEL: (718) 498-2491                                   FAX (718) 346-2804

A-951

Case 1:23-cv-08663-BMC   Document 42-3   Filed 10/23/24   Page 27 of 93 PageID #: 1060



# JUROR SUBPOENA FAILURE TO RESPOND
# QUEENS COUNTY

STATE OF NEW YORK UNIFIED COURT SYSTEM

Office Use CONFIDENTIAL

WGN4

Dear Michelle V. Beckles,                                    04/11/2018

Due to your failure to complete and return 3 jury questionnaires on 10/19/2017, 12/19/2017, and 02/16/2018, you are subpoenaed to appear for a hearing before the commissioner of jurors. NY law requires that questionnaires must be answered. Therefore you are ordered to appear at the:

Kew Gardens Assembly Room at 120-55 Queens Blvd., 82nd Avenue Entrance, Kew Gardens, NY 11424 on Friday, May 4, 2018 at 9:15 AM.

If you are not eligible or able to serve, please bring appropriate documentation. You must bring this questionnaire and photo ID with you.

Failure to appear may result in imprisonment and/or a fine of up to $1000. This personal appearance does not constitute jury service.

## *** PLEASE MARK APPROPRIATE BOX WITH ☒ ***

The New York State Court System does not ask for information such as credit card or bank account numbers or personal information such as names and ages of family members. Do not give this kind of information to anyone claiming to represent the courts. If you receive this type of request, contact your county Commissioner of Jurors.

If you have questions, please call **718-262-7200** OR visit **www.nyjuror.gov**.

**MICHELLE V. BECKLES**
**11411 178TH ST**
**JAMAICA, NY 11434**

Please indicate here if your name or address has changed or if you use a different mailing address.

Name_____

703046262                    17022      Address_____Apt.#_____

City/Town_____Zip_____

Phone_____   Email_____

1. What is your date of birth? _____  1968

2. Can you understand and communicate in English?                    YES ☐    NO ☐

3. Are you a citizen of the United States?                              YES ☐    NO ☐
   **IF NO**, bring a copy of a current Visa, Passport, Green Card or Employment
   Authorization Card with the completed questionnaire.

4. Are you a resident of **QUEENS COUNTY**?                            YES ☐    NO ☐
   **IF NO**, bring copies of **TWO** forms of proof with the completed questionnaire:
   Acceptable proof includes tax return (with amounts deleted), voter registration card, deed,
   lease, mortgage, driver's license, DMV-ID, utility bill. Only one can be a utility bill.
   Commissioner has discretion to require tax return. You will be advised if this is required.

5. Are you at least 18 years old?                                      YES ☐    NO ☐
   **IF NO**, bring a copy of birth certificate with the completed questionnaire.

6. Have you been convicted of a felony?                                YES ☐    NO ☐
   **IF YES**, indicate crime, sentence, court and date of conviction in the space provided on
   back of this form and return a copy of the certificate of disposition. If you have a
   Certificate of Good Conduct or Relief from Civil Disabilities, you are eligible to serve.

7. Have you served as a juror in a court in New York state or a federal court in the last six    YES ☐    NO ☐
   years?
   **IF YES**, bring a copy of certificate of service with completed questionnaire.

False statements are punishable as a crime under Penal Law Section 210.45.

SIGNATURE: _____    DATE: _____/_____/_____
                                                          Month   Day   Year

DEF000072

A-952

CONFIDENTIAL

703046262
COMMISSIONER OF JURORS OFFICE
QUEENS DIVISION OF JURORS
89-17 SUTPHIN BOULEVARD
JAMAICA, NY 11435-3710

MICHELLE V. BECKLES

**WEB AND PHONE INSTRUCTIONS:**

**PROSPECTIVE JURORS:**

We urge you to take advantage of the qualification by WEB or Telephone options. Either of these methods will save you time and the cost of postage. If you receive a second qualification questionnaire in the mail please complete that form and mail it to your local jury commissioner.

USE THIS AREA IF YOU NEED TO EXPLAIN OR EXPAND ON THE QUESTIONS ON THE FRONT OF THIS QUESTIONNAIRE.

MICHELLE V. BECKLES

Save a stamp.
Go to the web.
www.nyjuror.gov/qualify

COMMISSIONER OF JURORS OFFICE
QUEENS DIVISION OF JURORS
89-17 SUTPHIN BOULEVARD
JAMAICA, NY 11435-3710

DO NOT MAIL THIS QUESTIONNAIRE IF YOU HAVE SUCCESSFULLY QUALIFIED BY WEB OR PHONE

DEF000073

A-953



**INTERMEDIATE SCHOOL 392 : The School For The Gifted & Talented**

**104 Sutter Avenue**
**Brooklyn, NY 11212**
**Ingrid Joseph, Principal**
**Loren Cooper, Assistant Principal**

CONFIDENTIAL

The School for the
Gifted & Talented

June 25, 2018

Dear Ms. Beckles,

Thank you for making students believe that anything is possible. Your commitment to your craft, mentoring of students and support for all their endeavors has helped to produce confident students who are extraordinary thinkers, writers and public speakers who are ready to take on the many challenges they will face beyond middle school. In addition, you attended to their social emotional needs as they faced adolescent changes. As you continue to help students achieve new goals, continue to develop your craft in order to make the best instructional choices so they can flourish. As always, it is a privilege to serve a group of individuals who share their time and talents so generously. Enjoy your summer and I look forward to making more dreams happen for our students in the upcoming year.

Professionally,

Ingrid Joseph

A NATIONAL TITLE I DISTINGUISHED SCHOOL

TEL: (718) 498-2491                                                         FAX (718) 346-2804

DEF000074

A-954

Case 1:23-cv-08663-BMC   Document 42-3   Filed 10/23/24   Page 30 of 93 PageID #: 1063                           CONFIDENTIAL



**Department of Education**

# ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR)
## TEACHER OBSERVATION REPORT

**Teacher Name:** MICHELLE BECKLES   **Teacher ID:** ▓▓▓▓▓

**School Year:** 2017-2018   **School Name/DBN:** 23K392-I.S. 392

## CLASSROOM OBSERVATION (OBS):

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

☐ **Formal Observation (full period)**   ☒ **Informal Observation (15 minute minimum)**

Date of Observation: 11/20/2017   Time/Period: 10:54 AM

| Component | Ratings |
|---|---|
| 1a (obs): *Demonstrating knowledge of content and pedagogy* | 3- Effective |
| 1e (obs): *Designing coherent instruction*<br>Students worked in groups at various points in the lesson.<br><br>There is evidence that the instructional groups have been formed based on student ability and/or assessment data. | 3- Effective |
| 2a: *Creating an environment of respect and rapport*<br>The teacher's reaction to a student's behavior, culture, work, etc. is respectful. | 3- Effective |
| 2d: *Managing student behavior*<br>Student yelled, teacher immediately said "raise your hand".<br><br>On another occassion, student yells -"Expands the number." Teacher replies: "Don't call out"<br><br>Students that need special attention are spoken to by the teacher in private at an appropriate time. | 4- Highly Effective |
| 3b: *Using questioning and discussion techniques* | N/A |
| 3c: *Engaging students in learning*<br>The lesson has a clear beginning, middle AND end (teacher-directed summary of the main points and objectives). | 3- Effective |
| 3d: *Using assessment in instruction*<br>Circulated the room and ask questions . Modeled multiple examples for the | 3- Effective |

Last Revised: 01/17/18 12:52:22 PM By joseph2

A-955

CONFIDENTIAL

| | |
|---|---|
| students.  An exit ticket was provided at the end of the lesson.  -  The concept was explained, students worked through a number of examples with the teacher and then students worked independently to prove mastery. | |
| *4e (obs): Growing and developing professionally*  You frequently seek opportunites to learn and develop your craft. For example, you are a participant in the interschool program, Learning Partners and you willingly serve as a mentor to teachers. You make students a priority in all your decisions. | 4- Highly Effective |

Last Revised: 01/17/18 12:52:22 PM By joseph2

A-956

CONFIDENTIAL

Teacher ID 0991603                    Teacher Name MICHELLE BECKLES

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM (P&P):

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component | Ratings |
|---|---|
| 1a (p&p): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (p&p): Designing coherent instruction | N/A |
| 4e (p&p): Growing and developing professionally | N/A |

**Additional Evaluator Notes (please attach more pages, as necessary):**

Next Step: Remember to ensure materials challenge the student's comprehension and ability to apply specific information from the lesson. Provide an array of materials that will accommodate various learning styles.

Next Step: To assist students in monitoring their progress, anchor charts with specific aspects of the task should be available for students to reference, this will assist students is assessing their work against established criteria.

Next Step: While many questions were asked, always have pre-planned questions that address the key ideas you want students to glean from lesson.(this ensures that you elicit evidence of student understanding) In addition, avoid questions that are prefaced by "what". This path of questions leads to one word predictable responses.  You attempted to start a discussion, however,  there was only one turn and talk.

Teacher's signature: _____            Date 6/26/18
*(I have read and received a copy of the above and understand that a copy will be placed in my file.)*

Evaluator's name (print): JOSEPH, INGRID _____

Evaluator's signature: _____            Date 6/26/18

Last Revised: 01/17/18 12:52:22 PM By ijoseph2

DEF000077

A-957

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 33 of 93 PageID #: 1066

CONFIDENTIAL



**Department of Education**

## MEASURES OF TEACHER PRACTICE
Summary Report of MOTP Score and Rating

**Name of Teacher:** MICHELLE BECKLES          **Teacher ID:**    0991603

**School Year:**    2017-2018                  **School Name/DBN:** 23K392-I.S. 392

This report provides summary information about your Measures of Teacher Practice (MOTP) subcomponent only, and **is not a final rating.** Your *Advance* Overall Rating, which includes the Measures of Student Learning subcomponents, will be provided to you by September 1.

### SUMMARY

**Observation Option:**      **Option # 1**

**MOTP Score:**              **3.22**

**MOTP HEDI Rating:**        **Effective**


**Teacher's signature:** _____      Date __6/26/18__
*(I have read and received a copy of the above and understand that a copy will be placed in my file.)*

**Evaluator's name (print):** _____

**Evaluator's signature:** _____      Date __6/26/18__

---

**Confidentiality Notice:** This report may contain data that is confidential, private or sensitive. Please ensure the appropriate use and security of this report.

Created By: ijoseph2                06/26/2018  8:48 AM

DEF000078

A-958

CONFIDENTIAL

| Component | Component Ratings | Overall Component Average (OCA) |
|---|---|---|
| discussion techniques | 4 | 3.00 |
|  | 3 |  |
| 3c: Engaging students in learning | 3 | 3.00 |
|  | 3 |  |
|  | 3 |  |
|  | 3 |  |
| 3d: Using assessment in Instruction | 3 | 3.00 |
|  | 3 |  |
|  | 3 |  |
|  | 3 |  |
| 4e (obs): Growing and developing professionally | 4 | 4.00 |
|  | 4 |  |
| 4e (p&p): Growing and developing professionally |  |  |

**Confidentiality Notice:** This report may contain data that is confidential, private or sensitive. Please ensure the appropriate use and security of this report.

Created By: ijoseph2                    06/26/2018  8:48 AM                    3
NYC Department of Education

DEF000079

A-959

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 35 of 93 PageID #: 1068

CONFIDENTIAL



### THE NEW YORK CITY DEPARTMENT OF EDUCATION

Beverly Logan, Principal, P.S. 156  Ingrid Joseph - Principal, I.S. 392
Beth Albano, Assistant Principal  Loren Cooper, Assistant Principal
Ronda Phillips, Assistant Principal

### THE WAVERLY SCHOOL OF THE ARTS

**PUBLIC SCHOOL 156**    **INTERMEDIATE SCHOOL 392**
**(718) 498-2811**      **(718) 498-2491**

FAX (718) 346-2804

## Request for Personal Leave

Name: _Michelle Beckles_  Date: _1-17-18_

File #: ██████████

Date(s) requested: _4-10-18_

Return date: _____

Reason for request:
_Wellness and mindfulness_

_____

_____

_____

Approved by: _____

Date: _____

*104 Sutter Avenue, Brooklyn, NY 11212-4139*

DEF000080

A-960

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 36 of 93 PageID #: 1069



**NYC
Department of
Education**
Carmen Fariña, Chancellor

9/14/2017
CONFIDENTIAL

# ANNUAL PROFESSIONAL PERFORMANCE REVIEW

### *Advance Overall Rating*

Teacher Name: MICHELLE BECKLES                    School DBN: 23K392

Teacher ID: ████                                   School Year: 2016-2017

## OVERALL AND SUBCOMPONENT RATINGS:

Your *Advance* Overall Rating is based on two subcomponent ratings: Measures of Teacher Practice and Measures of Student Learning.

Your MOTP Rating is
**Effective**

Your MOSL Rating is
**Effective**

Your Overall Rating is
**Effective**

### Measures of Teacher Practice

|  | Highly Effective | Effective | Developing | Ineffective |
|---|---|---|---|---|
| **Highly Effective** | H | H | E | D |
| **Effective** | H | E | E | D |
| **Developing** | E | E | D | I |
| **Ineffective** | D | D | I | I |

Measures of Student Learning

For more information about rating calculations, please see the SY 2016-2017 *Advance* Overall Ratings Guide.

Teacher's Signature: _Michelle Beckles_                    Date: 9/15/17

(I have read and received a copy of the above and understand that a copy will be placed in my file.)

Evaluator's Name (print): _Ingrid Joseph_                    Date: 9/15/17

Confidentiality Notice: This report was most recently updated on 08/31/2017. It contains data that is confidential, private, or sensitive. Please ensure the appropriate use and security of this report.

DEF000081

A-961

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 37 of 93 PageID #:
1070



**INTERMEDIATE SCHOOL 392 : The School For The Gifted & Talented** CONFIDENTIAL

**104 Sutter Avenue**
**Brooklyn, NY 11212**
**Ingrid Joseph, Principal**
**Loren Cooper, Assistant Principal**

The School for the
Gifted & Talented

January 17, 2018

Dear Ms. Beckles,

Thank you for opening your classroom to our LPP collaborating schools on Wednesday, December 6th, 2017.  In addition to preparing for the visit, you modeled strong instructional practices that they can adopt in their schools.

Thank you for all you do to enhance the instruction of teachers across the city and their students.

Sincerely,

Ingrid Joseph
Principal

A NATIONAL TITLE I DISTINGUISHED SCHOOL

TEL: (718) 498-2491                                    FAX (718) 346-2804    DEF000082

A-962

CONFIDENTIAL



**NYC Department of Education**
Carmen Fariña, Chancellor

## MEASURES OF TEACHER PRACTICE
## OBSERVATION OPTION SELECTION FORM

**Teacher Name:** Michelle Becker    **Teacher ID:** ████████

**School Year:** 2017-2018    **School Name/DBN:** IS 392

### OBSERVATION OPTION: (check one)

☑ **Option 1:**
Formal Observation (minimum of 1)
Informal Observations (minimum of 3)

☐ **Option 2:**
Informal observations (minimum of 6)

☐ **Option 3:**
Informal Observations (minimum of 4)
Non-evaluative classroom visits by a colleague (max of 2, unless teacher consents to additional)
*Only teachers who are rated Effective or Highly Effective in the prior school year may select Option 3.*

☐ **Option 4:**
Informal Observations (minimum of 3)
Non-evaluative classroom visits by a colleague (max of 3, unless teacher consents to additional)
*Only teachers who are rated Highly Effective in the prior school year may select Option 4.*

### CONSENT TO HAVE OBSERVATION(S) VIDEOTAPED: (check one)

| | |
|---|---|
| ☐ | **For all observation options**<br>Evaluator may choose which observations, if any, to videotape. |
| ☐ | **For observation option(s) as indicated below**<br>If Observation **Option 1** selected: Formal Classroom Observation ONLY<br>If Observation **Option 2** selected: Two (2) Informal Classroom Observations ONLY<br>If Observation **Option 3** or Observation **Option 4** selected: One (1) Informal Classroom Observation ONLY |
| ☑ | **For all observation options**<br>DO NOT CONSENT TO VIDEOTAPE EVALUATIVE CLASSROOM OBSERVATIONS |

**Teacher's signature:** Michelle Becker    **Date** 9/20/17
*(I have read and received a copy of the above and understand that a copy will be placed in my file.)*

**Evaluator's name (print):** Joseph

**Evaluator's signature:** _____    **Date** 9/20/17

DEF000083

A-963

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 39 of 93 PageID #: 1072
CONFIDENTIAL
5/14/2017



**Department of Education**
Carmen Fariña, Chancellor

# ANNUAL PROFESSIONAL PERFORMANCE REVIEW

## *Advance Overall Rating*

Teacher Name: MICHELLE BECKLES
Teacher ID: ▮▮▮▮▮

School DBN: 23K392
School Year: 2016-2017

---

## OVERALL AND SUBCOMPONENT RATINGS:

Your *Advance* Overall Rating is based on two subcomponent ratings: Measures of Teacher Practice and Measures of Student Learning.

Your MOTP Rating is
**Effective**

Your MOSL Rating is
**Effective**

Your Overall Rating is
**Effective**

### Measures of Teacher Practice

| | | Highly Effective | Effective | Developing | Ineffective |
|---|---|---|---|---|---|
| Measures of Student Learning | Highly Effective | H | H | E | D |
| | Effective | H | **E** | E | D |
| | Developing | E | E | D | I |
| | Ineffective | D | D | I | I |

For more information about rating calculations, please see the SY 2016-2017 *Advance* Overall Ratings Guide.

---

Teacher's Signature: *[signature]*                                    Date: 9/15/17

(I have read and received a copy of the above and understand that a copy will be placed in my file.)

Evaluator's Name (print): Ingrid Joseph                              Date: 9/15/17

Confidentiality Notice: This report was most recently updated on 08/31/2017. It contains data that is confidential, private, or sensitive. Please ensure the appropriate use and security of this report.

A-964

Case 1:23-cv-08663-BMC   Document 42-3   Filed 10/23/24   Page 40 of 93 PageID #: 1073

3/16/2017        VitalEurope Budapest – your appointment [VE_ID:81692_189841_0]        CONFIDENTIAL

**From:** VitalEurope Customer Care <ve_crm@vitaleurope.eu>
**To:** ▓▓▓▓▓▓@aol.com>
**Subject:** VitalEurope Budapest – your appointment [VE_ID:81692_189841_0]
**Date:** Wed, Mar 8, 2017 11:35 am

----- PLEASE DO NOT TYPE BELOW THIS LINE OR ALTER THE SUBJECT WHEN REPLYING TO THIS MESSAGE. -----



Your VitalEurope ID:81692
Hello Ms. Michelle Beckles,

We're delighted to confirm your appointment with VitalEurope Budapest. Your reservation details are below:

Date of appointment: **15-05-2017**

Date of arrival: **1 day in advance**

Length of treatment: **5**

Return date and time: **19-05-2017** after **18.00**.

**Please confirm**

In order to confirm your reservation with us, please forward the email booking confirmation your airline provider would have sent to you in a reply. If we haven't heard from you within 10 working days we are unfortunately unable to hold your reservation.

**Information on timings**
Please note that the exact time of your appointment will be sent to you via email and text message 1 working day before your appointment date. It is also very important you arrive in Budapest the night before your dental appointment begins in order to be both mentally and physically prepared for the treatment. Details on the dates and times of your subsequent appointments will be discussed during your first appointment.

**Health form**
Please fill in our online health form to update us on your health status. Please mark any changes and if there are none, simply press **SAVE.**

**Accommodation**
Please click here find some suggested options for accommodation. Let us know where you would like to stay and we would be delighted to make the necessary arrangements on your behalf.

**Airport transfers**
Airport transfers are offered free of charge if you book your accommodation through us for your entire stay (min. 2 working days). Upon request, we can arrange this service for a maximum fee of 9000 HUF (approx. £25) one way.

DEF000085

1/2

A-965

3/16/2017                    VitalEurope Budapest – your appointment [VE_ID:81692_189841_0]        CONFIDENTIAL

If you need to reschedule this appointment or if you require any more information about our travel services whatsoever we'd be delighted to help you via email: customercare@vitaleurope.com or phone: **+44 203 432 5957**.

VitalEurope – positive steps to a healthier smile.

Kind regards,

Péter Csécsi



Smile with us on Facebook! www.facebook.com/smilecompany

VitalEurope Customer Care
UK Number : +44 203 432 5957
customercare@vitaleurope.com
http://www.vitaleurope.co.uk
http://www.vitaleurope.com

VitalEurope is a privately owned dental services provider. All our UK dentist are registered with the GDC. Please consider all health information general unless it comes from one of our dentists and follows a consultation.
Please consider the environment before printing this document.

DEF000086

Case 1:23-cv-08663-BMC   Document 42-3   Filed 10/23/24   Page 42 of 93 PageID #: 1075

CONFIDENTIAL

VitalEurope – your next step [VE_ID:81692_0_0]

3/16/2017

**From:** VitalEurope Customer Care <ve_crm@vitaleurope.eu>
**To:** ▇▇▇▇@aol.com>
**Subject:** VitalEurope – your next step [VE_ID:81692_0_0]
**Date:** Fri, Mar 3, 2017 6:10 am

----- PLEASE DO NOT TYPE BELOW THIS LINE OR ALTER THE SUBJECT WHEN REPLYING TO THIS MESSAGE. -----



Your VitalEurope ID:81692

**Hello Ms. Michelle Beckles,**

Thank you for your email.

There are some options below. I will send you the scan soon.

You are due to continue your dental treatment in 10 weeks after the last completed visit, therefore the next stage of your treatment is due to be carried out after the **5th May 2017.** (Visit 2)

We'd be delighted if you could get in touch to arrange your next visit as soon as possible. The visit will require **5 workdays in Budapest.**

Please find available dates below:

**between 8th-12th May**

**between 15th-19th May**

**between 22nd-26th May**

Please also ensure you fill in our online online health form to update us on your health status. If you are a returning patient, please mark any changes since your last visit, then simply press SAVE.

If you have any questions whatsoever, please feel free to contact us via phone: +44 203 432 5957 (Monday to Friday, 8am - 7pm) or email. We look forward to welcoming you back soon.

VitalEurope – positive steps to a healthier smile.

Kind regards,

Péter Csécsi

DEF000087

1/2

A-967

3/16/2017                          VitalEurope – your next step [VE_ID:81692_0_0]                          CONFIDENTIAL



Smile with us on Facebook! www.facebook.com/smilecompany


VitalEurope Customer Care
UK Number : +44 203 432 5957
customercare@vitaleurope.com
http://www.vitaleurope.co.uk
http://www.vitaleurope.com


VitalEurope is a privately owned dental services provider. All our UK dentist are registered with the GDC.
Please consider all health information general unless it comes from one of our dentists and follows a
consultation.
Please consider the environment before printing this document.

A-968

Case 1:23-cv-08663-BMC     Document 42-3     Filed 10/23/24     Page 44 of 93 PageID #: 1,037

3/16/2017     admin.vitaleurope.hu/admin_proposal_preview.aspx?chat=1&uid=fb7285ce-ffd1-45f7-8632-818101937f34     CONFIDENTIAL



# Dental Treatment Proposal

| | |
|---|---|
| **Customer name:** | **Michelle Beckles** |
| **Proposal type:** | **Treatment plan** |
| **Proposal is based on:** | **Consultation in person** |
| **Proposal id:** | ▓ |
| **User id:** | ▓ |
| **Date:** | **24/02/2017** |
| **Main specialist:** | **Orosházi Kata Dr.** |
| **Clinic:** | **VitalEurope** |
| | **1113 Budapest Nagyszőlős u. 11-15.** |
| **Number of visits:** | **3** |

Below please find the details and prices of your dental treatment:
**This treatment plan is valid for a full mouth reconstruction.**
**Treatments included are recommended for the upper and lower jaw for a full dental restoration.**

### Visit 1:  4 working days stay is required

| Treatment: | Amount: | Our Budapest price: | Our London price: |
|---|---|---|---|
| **Root Canal Treatment (per canal)** 36 Kustán Lica Dr. | 3 | (£ 119) £ 357 | N/A |
| **Filling, temporary (tooth coloured medium)** 36 Kustán Lica Dr. | 1 | £ 20 | N/A |
| **Administration fee** Guarantee: none Orosházi Kata Dr. | 1 | £ 6 | N/A |
| **Visit SUM:** | | **£ 383** | |

I hereby agree with and sign this visit and accept the fact that in case of treatment done in London the number of visits might change due to unforeseen circumstances.

Signature of Client

Dentist's signature - VitalEurope
Dental Clinic

### Visit 2:  approximately 10 weeks later 5 working days stay is required

| Treatment: | Amount: | Our Budapest price: | Our London price: |
|---|---|---|---|
| **The finalise of the root canal treatment** | 1 | £ 0 | N/A |
| **Long term temporary crown/teeth** 35 36 Kustán Lica Dr. | 2 | (£ 40) £ 80 | N/A |
| **Visit SUM:** | | **£ 80** | |

I hereby agree with and sign this visit and by signing it I also confirm that all previous visits were done as included in this treatment plan. I also accept that in case of treatment done in London the number of visits might change due to unforeseen circumstances.

Signature of Client

Dentist's signature - VitalEurope
Dental Clinic

### Visit 3:  8 weeks later 5 working days stay is required

| Treatment: | Amount: | Our Budapest price: | Our London price: |
|---|---|---|---|
| **Crown, Bridge (CAD/CAM Zirconia)** Guarantee: 3 years | 2 | (£ 299) £ 598 | N/A |

http://admin.vitaleurope.hu/admin_proposal_preview.aspx?chat=1&uid=fb7285ce-ffd1-45f7-8632-818101937f34

DEF000089     1/5

A-969

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 45 of 93 PageID #: 1078



CONFIDENTIAL

**INTERMEDIATE SCHOOL 392 : The School For The Gifted & Talented**

104 Sutter Avenue
Brooklyn, NY 11212
Ingrid Joseph, Principal
Loren Cooper, Assistant Principal

The School for the
Gifted & Talented

January 10, 2018

Dear Fabulous TEAM 392,

Thank you for trudging through the snow and difficult travel conditions to come to work today. "The unusual winter storm that passed parts of Florida, Georgia and South Carolina with ice and snow Wednesday explosively intensified Wednesday night becoming one of the strongest East Coast winter storms in modern history."  It was referred to as a "bomb cyclone," yet you persevered!
(https://www.washingtonpost.com/news/)

Your presence here demonstrate your commitment to our school community and your professionalism. Please continue to maintain your great work ethic and your drive for excellence. Your consistent efforts are truly appreciated. The Student at I.S. 392 are fortunate to have your in their lives.

Thanks again!!!!

Professionally,

Ingrid Joseph
Principal

I understand that a copy of this letter will be placed in my file.

_____    1-11-18
Staff Signature                Date

A NATIONAL TITLE I DISTINGUISHED SCHOOL

DEF000090

TEL: (718) 498-2491                FAX (718) 346-1804

A-970

3/16/2017        admin.vitaleurope.hu/admin_proposal_preview.aspx?chat=1&uid=fb7285ce-ffd1-45f7-8632-818101937f34  CONFIDENTIAL

| | | | |
|---|---|---|---|
| 35 36<br>Kustán Lica Dr.<br>**Temporary crown per tooth**<br>35 36<br>Kustán Lica Dr. | 2 | (£ 0) £ 0 | N/A |
| **Fitting of the crown(s)/bridge (up to 4 teeth)**<br>35 36<br>Kustán Lica Dr. | 1 | £ 0 | N/A |
| **Frame try**<br>Kustán Lica Dr. | 1 | £ 0 | N/A |
| **Dental Hygiene Treatment (scale and polish)**<br>Kustán Lica Dr. | 1 | £ 50 | N/A |
| **Visit SUM:** | | **£ 648** | |

I hereby agree with and sign this visit and by signing it I also confirm that all previous visits were done as included in this treatment plan. I also accept that in case of treatment done in London the number of visits might change due to unforeseen circumstances.


Signature of Client

Dentist's signature - VitalEurope
Dental Clinic


**Treatment sum:**                                                                    **£ 1,111**

68 % Savings compared to the typical UK price of £ 3,492


The guide below is an illustration of the treatments detailed in your treatment plan.
If the treatment plan states "Crown 43" it means a crown will be placed on your lower right 3. If we state "Implantation 27" it means the implant will be place to your upper left 7 position.

Veneer                Extraction                Implant

Porcelain-fused       Surgical extraction       Root canal treatment
to metal crown

Ceramic crown         Partial cast              White filling

Procera crown         Denture                   Inlay / Onlay

CAD/CAM crown                                   Post / Core



DEF000091

A-971

3/16/2017                    admin.vitaleurope.hu/admin_proposal_preview.aspx?chat=1&uid=fb7285ce-ffd1-45f7-8632-818101937f34    CONFIDENTIAL

## Conditions

Treatment will be carried out in accordance with the Trading Terms of Vital Europe Ltd. to which your attention is directed. Vital Europe has the right to outsource a part of its services to be done by a subcontractor. This treatment plan is valid for 90 days.

## Payment terms

VitalEurope Dental Clinic may require you to pay for treatments carried out at the end of each appointment. Prices shown are for cash payment. Cash payments can be made in British Pounds. Credit and debit card payments are subject to an additional 1.5% administration fee and are converted to Hungarian forints on the daily rate. Payments by bank transfer in GBP and Euro are accepted if the funds are received prior to the start of treatment. Any additional banking fees are to be paid by the patient. If there are any changes made to your treatment plan, you will be billed or refunded accordingly.

## Post-Treatment Care - London

Aftercare is provided at our London clinic at additional cost. Yearly check-ups cost GBP 50 including X-ray. If addtional scale and polish is required it is to be paid separately. Dental check-ups promote good dental health and ensure the validity of the guarantees on your dental work.

## Consent

By signing this form I acknowledge having read and understood the information given by my dentist regarding the treatment recommended in this treatment plan and have had the opportunity to ask questions and read more about the possible risks of the proposed treatment on the www.vitaleurope.co.uk website. I confirm that I have received a detailed explanation of the planned treatment. I am fully aware of the cost and potential side effects /complications of this treatment as well as alternative treatment options. I also confirm that I have read and understand the Trading Terms of Vital Europe Ltd. The contents of those Trading Terms have been fully explained to me and I agree to be bound by them.


Signature of Client

Dentist's signature - VitalEurope
Dental Clinic

## VitalEurope Dental Clinic



DEF000092

A-972

3/16/2017                admin.vitaleurope.hu/admin_proposal_preview.aspx?chat=1&uid=fb7285ce-ffd1-45f7-8632-818101937f34 CONFIDENTIAL

VitalEurope in Budapest is a newly built state-of-the-art Dental Clinic located on the Buda side of the city offering a complete range of dental treatments from operative dentistry and implantation through preservative and prosthetic dentistry to orthodontic treatments. This nine-chair clinic is proud of its high-tech treatments such as electrosurgery, professional polishing with airflow; long-lasting tooth whitening using the most effective equipment; advanced endodontic methods using the latest instruments; extremely precise preparation of teeth using the newest generation equipments. X-rays, CTs and all other information are stored in a state-of-the art CRM system.

The more than 1000 sqm clinic features well-equipped treatment rooms manned by highly qualified dentists and nurses and spacious, air-conditioned waiting rooms with Internet access in a luxurious environment to accommodate our patients as they deserve.

**The dental professionals of VitalEurope aim to satisfy and welcome you into a professional yet convivial environment to brighten your smile!**

## Your dentists / specialist



**Dr. Kata Orosházi**
Dentist, DMD.
GDC: 262897

She graduated at the Faculty of Dentistry of the Semmelweis University in 2012. Between 2012 and 2015 she worked at the same university and gained a lot of experience in general, ambulatory and surgical dentistry. Besides she practiced at private clinics as an aesthetic dentist and studied more about endodontics. She passed her professional exam with excellent results in 2015, thus she became an expert in tooth replacement and conservative dentistry. Her interests involve prostetic rehabilitations, endodontics and conservative dentistry. She is fluent in English.

**Dr. Hariklia Kustán**

Dentist

She graduated from the dental faculty of Semmelweis University with summa cum laude. During her studies she spent a year at Université Paris Descartes as a student of the Sorbonne, Paris. She gained extensive experience in preservative and restorative denitsry. She is a very precise and patient focused dentist. She speaks French and English.



**Should your treatment require other specialists, e.g.: implantologist, periodontologist, facial surgeon, etc., other members of our team will be involved.**

## Your personal coordinator for all travel and medical arrangements

**Péter Csécsi**

Coordinator

DEF000093

A-973

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 49 of 93 PageID #: 1082

CONFIDENTIAL

admin.vitaleurope.hu/admin_proposal_preview.aspx?chat=1&uid=fb7285ce-ffd1-45f7-8632-818101937f34

3/16/2017



DEF000094

5/5

http://admin.vitaleurope.hu/admin_proposal_preview.aspx?chat=1&uid=fb7285ce-ffd1-45f7-8632-818101937f34

A-974

CONFIDENTIAL



**INTERMEDIATE SCHOOL 392 : The School For The Gifted & Talented**
**104 Sutter Avenue**
**Brooklyn, NY 11212**
**Ingrid Joseph, Principal**
**Loren Cooper, Assistant Principal**



The School for the
Gifted & Talented

June 27th, 2017

Dear Amazing Team,

Thank you for exposing students and delving into the possibilities which will enable them to flourish in life. The daily demonstration of professionalism, persistence, patience and passion you exude is commendable. While aiding students in making academic discoveries, you created multiple opportunities for students to present, explore, revise, solve and excel while ensuring their talents were developed and social emotional needs were met. As your principal, I continue to be humbled in your presence because every day you make new dreams materialize for students, while taking your practice to a new level. As always, it is a privilege to serve a group of individuals who share their time and talents so generously. Enjoy your well-deserved summer and I look forward to collaboratively growing and making more goals become a reality in the 2017-2018 school year. (*#team392rocks #392onamission #392Passion #392magic #mindsetreset*)

Professionally,

Ingrid Joseph

I understand that a copy of this letter will be placed in my file.

Michelle Beedes                                    6/28/17
Staff (Print)          Staff Signature          Date

A NATIONAL TITLE I DISTINGUISHED SCHOOL
TEL: (718) 498-2491                    FAX (718) 346-2804

DEF000095

A-975

CONFIDENTIAL

## MEASURES OF TEACHER PRACTICE
### Summary Report of MOTP Score and Rating

**Name of Teacher:** MICHELLE BECKLES          **Teacher ID:** ███████

**School Year:** 2016-2017          **School Name/DBN:** 23K392-I.S. 392

This report provides summary information about your Measures of Teacher Practice (MOTP) subcomponent only, and is **not a final rating.** Your *Advance* Overall Rating, which includes the Measures of Student Learning subcomponents, will be provided to you by September 1.

### SUMMARY

**Observation Option:**     **Option # 1**

**MOTP Score:**     **3.11**

**MOTP HEDI Rating:**     **Effective**

**Teacher's signature:** _____     Date 6/28/17
*(I have read and received a copy of the above and understand that a copy will be placed in my file.)*

**Evaluator's name (print):** Ingrid Joseph

**Evaluator's signature:** _____     Date 6/28/17

**Confidentiality Notice:** This report may contain data that is confidential, private or sensitive. Please ensure the appropriate use and security of this report.

Created By: ijoseph2          06/28/2017  8:29 AM

DEF000096

A-976

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 52 of 93 PageID #: 1085

CONFIDENTIAL



**NYC**
**Department of Education**
Carmen Fariña, Chancellor

## Measures of Teacher Practice (MOTP) Score Tracker

| | | |
|---|---|---|
| **Teacher:** MICHELLE BECKLES | **All observations complete?** Y | |
| **Option:** Option # 1 | **All 8 components rated at least once?** Y | **Overall MOTP Score:** 3.11 |
| **Created:** 06/28/2017 | | |

### SCORING STEPS:

1. For each component, average all ratings for that component from all recorded observations to produce 8 <u>overall component averages.</u>

2. Average the 8 overall component averages using the weights below to produce <u>MOTP score:</u>
   (1a x .05) + (1e x .05) + (2a x .17) + (2d x .17) + (3b x .17) + (3c x .17) + (3d x .17) + (4e x .05)

3. Convert the MOTP score into an MOTP HEDI Rating.

| Component | Component Ratings | Overall Component Average (OCA) |
|---|---|---|
| 1a (obs): Demonstrating knowledge of content and pedagogy | 4 | |
| | 3 | |
| | 3 | 3.50 |
| | 4 | |
| 1a (p&p): Demonstrating knowledge of content and pedagogy | | |
| 1e (obs): Designing coherent instruction | 3 | |
| | 3 | |
| | 3 | 3.00 |
| | 3 | |
| 1e (p&p): Designing coherent instruction | | |
| 2a: Creating an environment of respect and rapport | 4 | |
| | 3 | |
| | 3 | 3.25 |
| | 3 | |
| 2d: Managing student behavior | 3 | |
| | 3 | 3.25 |
| | 4 | |

**Confidentiality Notice:** This report may contain data that is confidential, private or sensitive. Please ensure the appropriate use and security of this report.

Created By: ijoseph2            06/28/2017 8:29 AM            2
NYC Department of Education

DEF000097

A-977

CONFIDENTIAL

| Component | Component Ratings | Overall Component Average (OCA) |
|---|---|---|
| 2d: Managing student behavior | 3 | 3.25 |
| 3b: Using questioning and discussion techniques | 3 | 3.00 |
| | 3 | |
| | 3 | |
| | 3 | |
| 3c: Engaging students in learning | 3 | 2.75 |
| | 2 | |
| | 3 | |
| | 3 | |
| 3d: Using assessment in instruction | 4 | 3.25 |
| | 3 | |
| | 3 | |
| | 3 | |
| 4e (obs): Growing and developing professionally | 3 | 3.00 |
| 4e (p&p): Growing and developing professionally | | |

**Confidentiality Notice:** This report may contain data that is confidential, private or sensitive. Please ensure the appropriate use and security of this report.

Created By: ijoseph2                06/28/2017  8:29 AM                3
NYC Department of Education

DEF000098

A-978

CONFIDENTIAL



**Department of Education**
Carmen Fariña, Chancellor

## ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR)
## EVALUATOR FORM

**Teacher ID:** ▮▮▮▮▮▮▮    **Teacher Name:** MICHELLE BECKLES
**School Year:** 2016-2017    **School Name/DBN:** 23K392-I.S. 392

## CLASSROOM OBSERVATION:

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

☐ **Formal Observation (full period)**    ☒ **Informal Observation (15 minute minimum)**

Date of Observation: 11/21/2016    Time/Period: 10:00 AM

| Component/Rationale for Score | |
|---|---|
| **1a (obs): Demonstrating knowledge of content and pedagogy**<br>The teacher connected the essential concepts of one discipline to others essential concepts within and outside of the discipline. | 4- Highly Effective |
| **1e (obs): Designing coherent instruction**<br>Learning activities illustrate the student's ability to process and apply in the information in a variety of ways. | 3- Effective |
| **2a: Creating an environment of respect and rapport**<br>There is evidence of student/teacher created practices for the classroom . | 3- Effective |
| **2d: Managing student behavior**<br>There is a feedback mechanism implemented in the classroom to aide students in monitoring their behavior. | 3- Effective |
| **3b: Using questioning and discussion techniques**<br>Is there a different way that we can write 7,000,000,000?<br>Why do you think that is?<br>How did you get that answer?<br>What happened when the numbers got too big?<br>Explain what happened in number 5?<br>Compare your response to your partner's response. | 3- Effective |
| **3c: Engaging students in learning**<br>All students worked in small groups of about 2 to 3 people. | 3- Effective |
| **3d: Using assessment in instruction**<br>Students were provided with exit ticket for them to complete. to further assess | 3- Effective |

Last Revised: 06/27/17 1:14:46 PM By ijoseph2

DEF000099

A-979

CONFIDENTIAL

Teacher ID 0991603                              Teacher Name MICHELLE BECKLES

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM:

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component/Rationale for Score | |
|---|---|
| 1a (p&p): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (p&p): Designing coherent instruction | N/A |
| 4e (p&p): Growing and developing professionally | N/A |

**Additional Evaluator Notes (please attach more pages, as necessary):**

It is always a pleasure to visit your room, there are various effective practices in place that enable students to flourish.

Next Step: More questions to check for understanding should be prepared ahead of time and asked throughout the lesson, in addition, more opportunities for discussion should be provided . This will allow students time to build on each other's responses and incorporate the ideas of each other in their thinking. This also enables students to see alternate strategies for solving a problem.

Teacher's signature: _____     Date 6/28/17
*(I have read and received a copy of the above and understand that a copy will be placed in my file.)*

Evaluator's name (print): JOSEPH, INGRID

Evaluator's signature: _____     Date 6/27/17

Last Revised: 06/27/17 1:14:46 PM By ijoseph2

DEF000100

A-980

CONFIDENTIAL

**New York City Department of Education**
Division of Human Resources
65 Court Street, Brooklyn, New York 11201
BE/DOP 9955B (04/14) pers d1

**ATTENDANCE FORM FOR ADVANCE-RATED TEACHERS**
(other than supervisor, guidance counselor, school social worker, psychologist, school secretary)

| EMPLOYEE'S FULL NAME | LICENSE | FILE NUMBER |
|---|---|---|
| BECKLES, MICHELLE | SPECIAL EDUCATION DAY | |

| EMPLOYEE'S COMPLETE HOME ADDRESS (Number, Street and Apt. No.) | | EMPLOYEE ID |
|---|---|---|
| | | |

| CITY | STATE | ZIP CODE | TENURED ☒ | PROBATIONER ☐ | SUBSTITUTE ☐ |
|---|---|---|---|---|---|
| | | | | | |

| CURRENT SALARY RATE | FOR PROBATIONERS: Date of Appointment | Jarema Credit | N.Y.S. Tenure Credit (Max 1 year) | Date of Completion of Probation |
|---|---|---|---|---|
| $89,696.00 | | | | |

| FSC SCHOOL | BOROUGH | DISTRICT |
|---|---|---|
| KFSN-K392-I.S. 392 | BROOKLYN | 23 |

| PRINTED AS OF 06-20-17 | FIRST YEAR 2017 | | | | SECOND YEAR | | | | THIRD YEAR | | | | DAYS IN C.A.R. | OR BORROWED DAYS | SUBSTITUTE SERVICE NO. OF DAYS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | TIMES NO. | TIME LOST | | | TIMES NO. | TIME LOST | | | TIMES NO. | TIME LOST | | | | | |
| | | DAYS | HRS | MIN | | DAYS | HRS | MIN | | DAYS | HRS | MIN | | | |
| LATENESS* | | 0 | 0 | 35 | | | | | | | | | | | |
| ABSENCE* Exclude non-Attendance | | 8 | 2 | 13 | | | | | | | | | 87 | | |

*NOTE: For reports on probationers, complete 1 to 3 years as applicable. For all other personnel use "First Year" to denote current year.

| ACKNOWLEDGEMENT BY EMPLOYEE I have received this report on: Signature of employee _____ Date 6/23/17 | Signature of Principal _____ Date 6/21/17 |
|---|---|

**This is not a Rating Form for *Advance*-eligible teachers**

DEF000101

A-981

CONFIDENTIAL



## THE NEW YORK CITY DEPARTMENT OF EDUCATION

Beverly Logan, Principal, P.S. 156        Ingrid Joseph – Principal, I.S. 392
Beth Albano, Assistant Principal          Loren Cooper, Assistant Principal
Ronda Phillips, Assistant Principal

## THE WAVERLY SCHOOL OF THE ARTS

PUBLIC SCHOOL 156                          INTERMEDIATE SCHOOL 392
(718) 498-2811                             (718) 498-2491
FAX (718) 346-2804

## Request for Personal Leave

Name: Michelle Beckles    Date: 3-28-17

File #: ▇▇▇▇▇▇▇

Date(s) requested: 4-19-17

Return date: 4-20-17

Reason for request: To facilitate my brother's memorial.

Approved by: _____

Date: 4/3/2017

*104 Sutter Avenue, Brooklyn, NY 11212-4139*

DEF000102

A-982

CONFIDENTIAL



**INTERMEDIATE SCHOOL 392 : The School For The Gifted & Talented**

104 Sutter Avenue
Brooklyn, NY 11212
Ingrid Joseph, Principal
Loren Cooper, Assistant Principal

I.S. 392
Molding Minds that Build the Future

The School for the
Gifted & Talented

February 12th, 2016

Dear Awesome TEAM 392,

Thank you for coming to school in the hazardous conditions on Friday, February 10th, 2017. Your presence here demonstrated your commitment to our school community and your professionalism. Please continue to maintain your dedication to our school, it does not go unrecognized. The students at IS 392 are fortunate to have you in their lives.

Professionally,

Ingrid Joseph
Principal

I understand that a copy of this letter will be placed in my file.

_Feb 13, 2017_
Date

Staff Signature

A NATIONAL TITLE 1 DISTINGUISHED SCHOOL    FAX (718) 346-2864

TEL: (718) 498-2491

DEF000103

Case 1:23-cv-08663-BMC   Document 42-3   Filed 10/23/24   Page 59 of 93 PageID #: 1092

CONFIDENTIAL



**INTERMEDIATE SCHOOL 392 : The School For The Gifted & Talented**

**104 Sutter Avenue**
**Brooklyn, NY 11212**
**Ingrid Joseph, Principal**
**Loren Cooper, Assistant Principal**



The School for the
Gifted & Talented

February 12th, 2016

Dear Awesome TEAM 392,

　　Thank you for coming to school in the hazardous conditions on Friday, February 10th, 2017. Your presence here demonstrated your commitment to our school community and your professionalism. Please continue to maintain your dedication to our school, it does not go unrecognized. The students at IS 392 are fortunate to have you in their lives.

Professionally,

Ingrid Joseph
Principal

I understand that a copy of this letter will be placed in my file.

_____          2-13-17
Staff Signature                              Date

A NATIONAL TITLE I DISTINGUISHED SCHOOL

TEL: (718) 498-2491          FAX (718) 346-2804

DEF000104

**A-984**

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 60 of 93 PageID #: 1093    CONFIDENTIAL



**Department of Education**
Carmen Fariña, Chancellor

## ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR) EVALUATOR FORM

Teacher ID: ███████          Teacher Name: MICHELLE BECKLES
School Year: 2016-2017          School Name/DBN: 23K392-I.S. 392

## CLASSROOM OBSERVATION:

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

☐ Formal Observation (full period)          ☒ Informal Observation (15 minute minimum)

Date of Observation: 11/10/2016     Time/Period: 9:56 AM

| Component/Rationale for Score | |
|---|---|
| 1a (obs): Demonstrating knowledge of content and pedagogy | 4- Highly Effective |
| | 3- Effective |
| 1e (obs): Designing coherent instruction | 4- Highly Effective |
| 2a: Creating an environment of respect and rapport | 3- Effective |
| 2d: Managing student behavior | 3- Effective |
| 3b: Using questioning and discussion techniques<br>Questions-<br><br>What's a prime number?<br><br>Anyone else ?<br><br>What's a composite number ?<br><br>What about 12?<br><br>Alex, what is the difference ?<br><br>Can anyone add on to what Alex said? T<br><br>When you see compose , what comes to mind?<br><br>What do you recognize in the word? | |

Last Revised: 01/10/17 10:41:53 AM By ijoseph2

DEF000105

A-985

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 61 of 93 PageID #: 1094

CONFIDENTIAL

| What about 13 Jaylen?<br><br>Can someone help Alex out? | |
|---|---|
| *3c: Engaging students in learning* | 3- Effective |
| *3d: Using assessment in instruction*<br>You had various checks for understanding and circulated the room when necessary to give feedback. | 4- Highly Effective |
| *4e (obs): Growing and developing professionally*<br>The teacher is open to ideas and develops a plan to implement these ideas in future lessons. | 3- Effective |

Last Revised: 01/10/17 10:41:53 AM By ijoseph2

DEF000106

A-986

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 62 of 93 PageID #: 1095

CONFIDENTIAL

Teacher ID 0991603 _____            Teacher Name MICHELLE BECKLES _____

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM:

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component/Rationale for Score | |
|---|---|
| 1a (p&p): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (p&p): Designing coherent instruction | N/A |
| 4e (p&p): Growing and developing professionally | N/A |

### Additional Evaluator Notes (please attach more pages, as necessary):

It is a delight to see the stability and confidence you have instilled in a group of challenging students. Continue to mold and cultivate their behaviors.

Next Step: Ensure that all the questions you want that assess learning of the task are prepared to make sure that all components of the task are assessed. Remind students to build on each other's ideas using the conversation STEMS.

Next Step: Provide students with lesson activities based on student choice and allow various ways to complete the task.

Next Step: Utilize the online resources from GoMath to provide more practice for deficient and proficient students.

Teacher's signature: _____            Date 1-23-17
(I have read and received a copy of the above and understand that a copy will be placed in my file.)

Evaluator's name (print) JOSEPH, INGRID _____

Evaluator's signature: _____            Date 1/17/17

Last Revised: 01/10/17 10:41:53 AM By ijoseph2

DEF000107

**A-987**

Case 1:23-cv-08663-BMC   Document 42-3   Filed 10/23/24   Page 63 of 93 PageID #: 1096

CONFIDENTIAL


**Department of Education**
Carmen Fariña, Chancellor

## MEASURES OF TEACHER PRACTICE
## OBSERVATION OPTION SELECTION FORM

**Teacher Name:** Michele Beales   **Teacher ID:** ███████

**School Year:** 2016 2017   **School Name/DBN:** ███████

### OBSERVATION OPTION: (check one)

☑ **Option 1:**
Formal Observation (minimum of 1)
Informal Observations (minimum of 3)

☐ **Option 2:**
Informal observations (minimum of 6)

☐ **Option 3:** Informal Observations (minimum of 3)
Classroom Visits (max of 3 unless teacher consents to additional)
*Only teachers who are rated Highly Effective in the prior school year may select Option 3.*

☐ **Option 4:** Informal Observations (minimum of 4)
*Only teachers who are rated Effective in the prior school year may select Option 4.*

### CONSENT TO HAVE OBSERVATION(S) VIDEOTAPED: (check one)

| | |
|---|---|
| ☐ | **For all observation options:** Evaluator may choose which observations, if any, to videotape |
| ☐ | Formal Classroom Observation ONLY (if Observation Option 1) **or** two (2) Informal Classroom Observations ONLY (If Observation Option 2) **or** one (1) Informal Classroom Observation ONLY (if Observation Option 3 or Observation Option 4) |
| ☑ | **DO NOT CONSENT TO VIDEOTAPE EVALUATIVE CLASSROOM OBSERVATIONS** |

**Teacher's signature:** _M Beales_   **Date** 10-25-16
(I have read and received a copy of the above and understand that a copy will be placed in my file.)
**Evaluator's name (print):** Loren Cooper
**Evaluator's signature:** _Loren Cooper_   **Date** 10/25/16

DEF000108

A-988

CONFIDENTIAL



**Department of Education**

Carmen Fariña, Chancellor

**Office of the Chancellor**
52 Chambers Street | New York | NY 10007

**212 374 0200** tel | **212 374 5588** fax
nycchancellor@schools.nyc.gov email

September 13, 2016

Ms. Ingrid Joseph
Principal
I.S. 392
104 Sutter Avenue
Brooklyn, NY 11212

Dear Principal Joseph:

I would like to thank you for allowing us to visit on the first day of school. I apologize for the intrusion; I know it is a hectic day fraught with unexpected twist and turns, and adding photographers, press, and politicians can certainly make things more chaotic. However, you handled the extra excitement with ease, which clearly demonstrates why your school was chosen for this visit.

I was particularly excited to see our Equity and Excellence initiative in practice. Although it was the first day, you and your school community have already embraced this initiative. Introducing the Singe Shepherd Program by going to a student's home to pick her up and accompany her to school was exciting to witness. If Chyna is any indication of the students you serve at I.S. 392, I have no doubt that there will be real competition as to who will be the graduating valedictorian.

Moreover, when speaking with Rashida Sealey, your new Single Shepherd, and hearing of her prior relationship as a Parent Coordinator in your school, I am sure that it will be a seamless transition that could even serve as a City-wide model. I know that Mayor de Blasio was impressed with the emphasis that you place on the whole family and the mental health initiative.

I would appreciate it if you can send me progress updates over the course of the school year. In order to truly make your school a model for others, I would like to see District 23 embrace a more inclusive environment for special needs students. Adding ICT classes would be a big step in that direction, as special needs students are also gifted and deserve an opportunity to learn in inclusive classrooms with their general education classmates. This is a City-wide initiative and one that I am particularly committed to.

Once again, thank you for hosting us. I look forward to hearing of your continued progress.

Sincerely,

Carmen Fariña
Chancellor

CF:mdt

DEF000109

A-989

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 65 of 93 PageID #: 1098

CONFIDENTIAL

**NYC** Department of Education

New York City Department of Education
Division of Human Resources
65 Court Street, Brooklyn, New York 11201
BE/DOP 9955B (04/14) pers d1

**ATTENDANCE FORM FOR ADVANCE-RATED TEACHERS**
(other than supervisor, guidance counselor, school social worker, psychologist, school secretary)

| EMPLOYEE'S FULL NAME BECKLES, MICHELLE | LICENSE SPECIAL EDUCATION DAY | | FILE NUMBER ▮▮▮ |
| --- | --- | --- | --- |
| | | | EMPLOYER ID |

EMPLOYEE'S COMPLETE HOME ADDRESS (Number, Street and Apt. No.)

| CITY | STATE | ZIP CODE | TENURED ☒ | PROBATIONER ☐ | SUBSTITUTE ☐ |
| --- | --- | --- | --- | --- | --- |

| CURRENT SALARY RATE $85,793.00 | FOR PROBATIONERS: Date of Appointment | Jarema Credit | N.Y.S. Tenure Credit (Max 1 year) | Date of Completion of Probation |
| --- | --- | --- | --- | --- |

| | | | BOROUGH BROOKLYN | DISTRICT 23 |
| --- | --- | --- | --- | --- |

HFSC SCHOOL KFSN-K392-I.S. 392

PRINTED AS OF 06-22-16

| | FIRST YEAR 2016 | | | | SECOND YEAR | | | | THIRD YEAR | | | | DAYS IN C.A.R. | OR BORROWED DAYS | SUBSTITUTE SERVICE NO. OF DAYS |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | TIMES NO. | TIME LOST | | | TIMES NO. | TIME LOST | | | TIMES NO. | TIME LOST | | | | | |
| | | DAYS | HRS | MIN | | DAYS | HRS | MIN | | DAYS | HRS | MIN | | | |
| LATENESS^ | | 0 | 1 | 51 | | | | | | | | | | | |
| ABSENCE^ Exclude non-Attendance | | 1 | 0 | 0 | | | | | | | | | 85 | | |

^NOTE: For reports on probationers, complete 1 to 3 years as applicable. For all other personnel use "First Year" to denote current year.

| ACKNOWLEDGEMENT BY EMPLOYEE I have received this report on Signature of employee _____ Date 6/23/16 | Signature of Principal _____ Date 6/21/16 |
| --- | --- |

**This is not a Rating Form for *Advance*-eligible teachers**

DEF000110

A-990

Case 1:23-cv-08663-BMC  Document 42-3  Filed 10/23/24  Page 66 of 93 PageID #: 1099

CONFIDENTIAL



**Department of Education**
Carmen Fariña, Chancellor

# ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR)
## *Overall Rating (Transition Rating)*

**Teacher Name:** MICHELLE BECKLES     **Teacher ID:** ▮▮▮▮▮

**School Year:** 2015-2016     **School DBN:** 23K392—I.S. 392

## OVERALL AND SUBCOMPONENT RATINGS:

The overall APPR rating is based on the sum of three subcomponent scores: Measures of Teacher Practice (60%), State Measures (20%), and Local Measures (20%).

| Measures of Teacher Practice | State Measures | Local Measures | Overall Rating |
|---|---|---|---|
| 0 - 60 points: **55** | All measures dropped due to Transition Rules. | 0 - 20 points: **15** | 70 / 80 ⬇ 0 - 100 points: **88** [†] |
| **Highly Effective** HEDI Rating | | **Effective** HEDI Rating | **Effective** HEDI Rating |



[†] During the transition period (2015-16 through 2018-19), any measure based 50% or more on 3-8 math and/or ELA state assessments is excluded. If all measures contributing to a subcomponent are excluded, then your Overall Rating is based on the remaining subcomponent(s), scaled up to 100 points.
For more information about rating calculations, please see the SY 2015-16 *Advance* Overall Ratings Guide.

**Teacher's Signature:** _MBeckles_     **Date:** _9-7-16_
(I have read and received a copy of the above and understand that a copy will be placed in my file.)

**Evaluator's name (print):** _____

**Evaluator's signature:** _____     **Date:** _9/2/16_

*Confidentiality Notice:* This report was produced on 8/31/2016. It contains data that is confidential, private, or sensitive. Please ensure the appropriate use and security of this report.

DEF000111

A-991

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 67 of 93 PageID #: 1100

CONFIDENTIAL



**Department of Education**
Carmen Fariña, Chancellor

# ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR) EVALUATOR FORM

**Teacher ID:** ▮▮▮▮▮▮    **Teacher Name:** MICHELLE BECKLES
**School Year:** 2015-2016    **School Name/DBN:** 23K392-I.S. 392

## CLASSROOM OBSERVATION:

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

☐ **Formal Observation (full period)**    ☒ **Informal Observation (15 minute minimum)**

Date of Observation: 03/03/2016    Time/Period: 10:01 a.m.

| Component/Rationale for Score | |
|---|---|
| **1a (obs): Demonstrating knowledge of content and pedagogy** Knowledge of Grade Level Content: The teacher can identify important concepts and how these relationships are intertwined within the grade level domains. | 3- Effective |
| **1e (obs): Designing coherent instruction** The activities are challenging and provide students the opportunity to process information and apply specific knowledge to the task to confirm understanding. | 4- Highly Effective |
| **2a: Creating an environment of respect and rapport** Students used appropriate voices and waited their turns to respond. | 3- Effective |
| **2d: Managing student behavior** Teacher Response: The teacher delivers an appropriate response to address student behavior in a timely manner (either with verbal or non-verbal cues). | 3- Effective |
| **3b: Using questioning and discussion techniques** How do you know in What do you think translate means? How have you encountered that word? If I give you a hint : Palazzolo. If a math speak, what are we doing? Asked : What did I do to at point? Here's a line. We can move the line up, down , left or right ? | 3- Effective |

Last Revised: 06/02/16  1:13:44 PM By ijoseph2

DEF000112

A-992

CONFIDENTIAL

| | |
|---|---|
| When you translate a kind, it becomes a prime , b prime or c prime.<br><br>What's the relevance of this?<br><br>Who wants to try?<br><br>How many units are you moving? | |
| 3c: Engaging students in learning<br>You modeled several examples and used multiple resources in your lesson.<br><br>Differentiation: The teacher provides some differentiation for according to general achievement of the concept. (For example, students that struggle might be given attention via small group instruction, additional scaffolding, visual aids, etc.). | 3- Effective |
| 3d: Using assessment in instruction<br>You assessed for understanding throughout the lesson while circulating and conferring with students.  An exit slip was also used at the end of the lesson. | 3- Effective |
| 4e (obs): Growing and developing professionally | N/A |

Last Revised: 06/02/16  1:13:44 PM By ijoseph2

DEF000113

A-993

CONFIDENTIAL

Teacher ID 0991603                    Teacher Name MICHELLE BECKLES

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM:

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component/Rationale for Score | |
|---|---|
| 1a (p&p): *Demonstrating knowledge of content and pedagogy* | N/A |
| 1e (p&p): *Designing coherent instruction* | N/A |
| 4e (p&p): *Growing and developing professionally* | N/A |

**Additional Evaluator Notes (please attach more pages, as necessary):**

Next Step: Encourage students to use conversation stems to preface their responses.

Next Step: To move your lesson to the next level, I would recommend some more peer modeling. This will reinforce the characteristics of high quality work.

Next Step: Have a student review example and then have another find mistakes or explain misconception.Have students use an object and change its position as a different strategy.

Teacher's signature: _____    Date 6/2/16
*(I have read and received a copy of the above and understand that a copy will be placed in my file.)*

Evaluator's name (print): JOSEPH, INGRID _____

Evaluator's signature: _____    Date 6/2/2016

Last Revised: 06/02/16  1:13:44 PM By ijoseph2

DEF000114

A-994

CONFIDENTIAL



**Department of Education**
Carmen Fariña, Chancellor

# ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR) EVALUATOR FORM

**Teacher ID:** ▮▮▮▮▮▮    **Teacher Name:** MICHELLE BECKLES
**School Year:** 2015-2016    **School Name/DBN:** 23K392-I.S. 392

## CLASSROOM OBSERVATION:

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

[ ] **Formal Observation (full period)**    [X] **Informal Observation (15 minute minimum)**

Date of Observation: 11/30/2015    Time/Period: 10:05/4th Period

| Component/Rationale for Score | |
|---|---|
| *1a (obs): Demonstrating knowledge of content and pedagogy*<br>What is 4 to the 4th power?<br><br>I will apply the properties of the order of operation to solve problems ccls 8.EE.1<br><br>Teacher reviewed the prereq. skill of exponents before having the students apply the order of operation to solve problems. | 3- Effective |
| *1e (obs): Designing coherent instruction* | N/A |
| *2a: Creating an environment of respect and rapport*<br>so we understand how we got to 16<br><br>calculate out of 19 sign your name and return the book<br><br>each student had someone elses book<br><br>make sure you sign name and return book Ss calculating other students scores<br><br>T:: questions? wonderings?  can I erase? Lets move on.<br><br>If we are working in a group let's be nice.<br><br>let's be pleasant.<br><br>This group. do you agree or disagree? ▮▮▮▮ I disagree b/c... | 4- Highly Effective |
| *2d: Managing student behavior* | 3- Effective |

Last Revised: 12/22/15 10:42:23 PM By lcooper12

DEF000115

A-995

CONFIDENTIAL

| | |
|---|---|
| Tataianna got a + on a +/- chart on the board | 3- Effective |
| 3b: Using questioning and discussion techniques<br>Christopher I can see you and call on you even If your head is down<br><br>Then I guess you multiply ?? T do you?? groups, do you multiply?? Tryee does this dot mean multiply yes it does I am right | 3- Effective |
| 3c: Engaging students in learning<br>we are gonna have unevengroups break yourself up into two groups<br><br>T: your wasting time<br><br>if you cannot choose I will choose for you<br><br>Do Now.:Solve the following expression<br><br>(8-2) to the third powerX4 squared<br><br>7 minutes max to complete do now<br><br>Ss not talking about the problem, not really working together 2 groups of 2 and 1 group of 1.<br><br>T ▉ you should be helping your group member. | N/A |
| 3d: Using assessment in instruction | N/A |
| 4e (obs): Growing and developing professionally | |

Last Revised: 12/22/15 10:42:23 PM By lcooper12

DEF000116

A-996

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 72 of 93 PageID #: 1105                    CONFIDENTIAL

Teacher ID 0991603 _____        Teacher Name MICHELLE BECKLES _____

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM:

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component/Rationale for Score | |
|---|---|
| 1a (p&p): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (p&p): Designing coherent instruction | N/A |
| 4e (p&p): Growing and developing professionally | N/A |

**Additional Evaluator Notes (please attach more pages, as necessary):**
Next Step: Christopher voluntarily opted out of the lesson. You reminded him that he could be called on and encouraged him to participate in his group throughout the group work portion of the Do Now Task. This is a good strategy.  As a way to prevent him from opting out of lessons and the learning, call on him often to repeat what someone else has said. If he is unable to respond, have the student repeat the response and have Christopher repeat the response. This will help him to realize that he must be listening and paying close attention and that he is expected to learn, and to have a voice in classroom discussions. This is also a simple  way to boost his confidence. He will be called on and he will get the answer correct.

Teacher's  signature: _Michelle Beckles_                    Date 12/22/15
(I have read and received a copy of the above and understand that a copy will be placed in my file.)

Evaluator's name (print): COOPER, LOREN _____

Evaluator's signature: _Loren Cooper_                    Date 12/22/15

Last Revised: 12/22/15 10:42:23 PM By lcooper12

DEF000117

A-997

CONFIDENTIAL



**Department of Education**
Carmen Fariña, Chancellor

# ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR)
## EVALUATOR FORM

**Teacher ID:** 0991603
**School Year:** 2015-2016

**Teacher Name:** MICHELLE BECKLES
**School Name/DBN:** 23K392-I.S. 392

## CLASSROOM OBSERVATION:

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

[X] **Formal Observation (full period)**        [ ] **Informal Observation (15 minute minimum)**

Date of Observation: 01/21/2016        Time/Period: 10:35 AM/4th Period

| Component/Rationale for Score | 4- Highly Effective |
|---|---|
| *1a (obs): Demonstrating knowledge of content and pedagogy*<br>I will create a list of character traits from reading written text RL .8.3<br><br>Vocabulary: narration, narrator, dialogue, quotation marks, direct explicit Indirect, and implicit characterization<br><br>T gives out passage classic , high school reference Jane Eyre<br><br>T: What made you choose bully?<br><br>████ reads from passage he bullied and punished me<br><br>S:she was scared of him so he Is scary<br><br>T: Any supporting evidence for bullying?<br><br>████he is evil- T: evidence? S reads same text as ████<br><br>████he thinks he runs them, he controls them<br><br>████reading evidence from the passage<br><br>T what paragraph are you in?<br><br>████tells T where it starts reads the passage.  continue ████<br><br>████and ████did an excellent job of giving evidence from the text. | |

Last Revised: 02/22/16 12:00:57 AM By lcooper12

DEF000118

Case 1:23-cv-08663-BMC   Document 42-3   Filed 10/23/24   Page 74 of 93 PageID #: 1107

CONFIDENTIAL

| | 4- Highly Effective |
|---|---|
| **1e (obs): Designing coherent instruction**<br>Do Now<br><br>Character Trait industrious<br><br>def. working energetically and devotedly hardworking diligent<br><br>What are some actions or behaviors that would show this character trait?<br><br>T gives out passage classic , high school reference Jane Eyre<br><br>T front loads vocabulary before students read the story.<br><br>you can read together on your own but you have to come up with your own words<br><br>do you feel comfortable reading it or should I<br><br>students ask T to read the passage aloud<br><br>t reading the passage aloud<br><br>students following alone and appear to engaged in the story<br><br>read the text again to yourself and look for character traits we will share out at the end and i want everyone to share out | |

| | 3- Effective |
|---|---|
| **2a: Creating an environment of respect and rapport**<br>S: instead of telling a lie she told the truth right away. She is true to herself, she was honest<br><br>████████: we agree because she was honest she told the truth she was a truthful person<br><br>T tells ████to sit up, who put her head down again. ████████: It is hard to keep my eyes open. T invited her to wash her face.<br><br>The teacher's reaction to a student's behavior, culture, work, etc. is respectful.<br><br>There is evidence that students are not receptive to the teacher's interactions with them.<br><br>There is evidence of occasional disrespect. | |

| | 3- Effective |
|---|---|
| **2d: Managing student behavior**<br>T tells ████to sit up, who put her head down again. ████████: It is hard to keep my eyes open. T invited her to wash her face.<br><br>T: focus guys... focus<br><br>T: ████talk less and focus on your work.<br><br>T: One more minute guys. I hear chit chat so we are sharing.<br><br>Teacher Response: The teacher delivers an appropriate response to address | |

Last Revised: 02/22/16 12:00:57 AM By lcooper12

DEF000119

**A-999**

CONFIDENTIAL

| | |
|---|---|
| student behavior in a timely manner (either with verbal or non-verbal cues). | |
| *3b: Using questioning and discussion techniques*<br>Do Now<br><br>Character Trait industrious<br><br>def. working energetically and devotedly hardworking diligent<br><br>What are some actions or behaviors that would show this character trait?<br><br>no response goes back reminds of homework word uncouth (reviews character trait)<br><br>Explicit Characterization T how does it look? S: what the character says.<br><br>T: Can some one add to that?<br><br>do we have notes to jog our memory?<br><br>students taking out  looking at notes.<br><br>T:Alright lets wrap up our thoughts. Any group with wonderings this is a good time to flush it out<br><br>T: Which group wants to share: ▮ and ▮<br><br>S: instead of telling a lie she told the truth right away. She is true to herself, she was honest<br><br>▮ we agree because she was honest she told the truth she was a truthful person<br><br>T: What evidence do we have to back up some of the character traits we just shared?<br><br>T: What made you choose bully?<br><br>▮ reads from passage he bullied and punished me<br><br>S:she was scared of him so he is scary<br><br>T:Any supporting evidence for bullying?<br><br>▮ he is evil- evidence? reads same text as cristina<br><br>▮ he thinks he runs them, he controls them<br><br>▮ reading evidence from the passage<br><br>T what paragraph are you in?<br><br>▮ tells T where it starts reads then the passage.  continue ▮ | 4- Highly Effective |

Last Revised: 02/22/16 12:00:57 AM By lcooper12

DEF000120

A-1000

CONFIDENTIAL

| | |
|---|---|
| Tyree and Posh did an excellent job of giving evidence from the text.<br><br>Questions are thoughtful and designed to push student thinking. There is adequate wait time in between questions.<br><br>Questions require students to seek patterns among concepts and then apply that knowledge to a new situation.<br><br>Questions require students to make connections to prior knowledge.<br><br>Questions are directed at small groups of students. Students are required to demonstrate how they "know". | |
| *3c: Engaging students in learning*<br>Vocabulary: narration, narrator, dialogue, quotation marks, direct explicit Indirect, and implicit characterization<br><br>Explicit Characterization T how does it look? S: what the character says.<br><br>T: Can someone add to that?<br><br>T: Do we have notes to jog our memory?<br><br>students taking out looking at notes.<br><br>Counting off for guided practice 1,2,3<br><br>ones twos threes get together<br><br>Read short passage and figure out the character trait.<br><br>███ ████ go with███ and ███ sit in ███████ s seat<br><br>students reluctant to move it groups<br><br>Alright lets wrap up our thoughts. Any group with wonderings this is a good time to flush it out<br><br>which group want to share: ███ and ███<br><br>T gives out passage classic , high school reference Jane Eyre<br><br>T front loads vocabulary before students read the story.<br><br>you can read together on your own but you have to come up with your own words<br><br>T: Do you feel comfortable reading it or should I read it to you?<br><br>students ask T to read the passage aloud<br><br>t reading the passage aloud<br><br>students following alone and appear to engaged in the story | 3- Effective |

Last Revised: 02/22/16 12:00:57 AM By lcooper12

DEF000121

CONFIDENTIAL

| | |
|---|---|
| read the text again to yourself and look for character traits we will share out at the end and i want everyone to share out<br><br>Task Design: The teacher has completely aligned the task, materials and resources to the standards.<br><br>Differentiation: The teacher provides some differentiation for according to general achievement of the concept. (For example, students that struggle might be given attention via small group instruction, additional scaffolding, visual aids, etc.).<br><br>Creating Collaborative Groups: The students collaborate but each person is responsible for their own work.<br><br>Lesson Design & Pace: Teacher allows students appropriate wait time/work time to complete activities. | 3- Effective |
| 3d: Using assessment in instruction<br>After a review of most vocabulary T: fist to 5... all students 3, 4, 5<br><br>Alright lets wrap up our thoughts. Any group with wonderings this is a good time to flush it out<br><br>which group want to share: ██ and ██<br><br>do you feel comfortable reading it or should I<br><br>students ask T to read the passage aloud<br><br>t reading the passage aloud<br><br>T: you must have at least 5 character traits.<br><br>Exit ticket and Homework.<br><br>T reminding Ss to focus on exit ticket<br><br>██ and ██ talking during exit ticket<br><br>many student are copying from the passage on the exit ticket and not writing down actual character traits, but whole sentences from the passage.<br><br>T going around and helping them improve work on the exit ticket.<br><br>Student self-assessment and monitoring of progress: The lesson uses a number of strategies so that all learners can understand the learning objectives.<br><br>Monitoring of student learning: Materials challenge students to apply a deeper level of understanding | 4- Highly Effective |
| 4e (obs): Growing and developing professionally<br>T: I want us to use more sophisticated and challenging words<br><br>Observations & Response to Feedback: The teacher is welcoming to observers for both formal and informal observations. | |

Last Revised: 02/22/16 12:00:57 AM By lcooper12

DEF000122

A-1002

CONFIDENTIAL

| | |
|---|---|
| Observations & Response to Feedback: The teacher comes prepared to reflect on the lesson during the post-observation discussion and offers much insight into how the lesson went as compared to what was planned.<br><br>Observations & Response to Feedback: The teacher is open to ideas and develops a plan to implement these ideas in future lessons. | |

Last Revised: 02/22/16 12:00:57 AM By lcooper12

DEF000123

A-1003

CONFIDENTIAL

Teacher ID 0991603                    Teacher Name MICHELLE BECKLES

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM:

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component/Rationale for Score | |
|---|---|
| 1a (p&p): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (p&p): Designing coherent instruction | N/A |
| 4e (p&p): Growing and developing professionally | N/A |

### Additional Evaluator Notes (please attach more pages, as necessary):

Next Step: As we discussed in our post observation conversation, students would have benefit from having a more structured exit ticket. The Exit Ticket was basically a copy of a slide with a passage centered in the middle. As a alternative, the directions, questions, and lines for writing could have been added to make the exit ticket less confusing and more user-friendly for students. This can apply to any handouts given to students. Students might not have performed as well as expected on the exit ticket, because it had no structures or scaffolds in place to support students.

Teacher's signature: _____                    Date 2/21/16
*(I have read and received a copy of the above and understand that a copy will be placed in my file.)*

Evaluator's name (print): COOPER, LOREN _____

Evaluator's signature: _____                    Date 2/21/16

Last Revised: 02/22/16 12:00:57 AM By lcooper12

DEF000124

A-1004

CONFIDENTIAL



**Department of Education**
Carmen Fariña, Chancellor

## ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR)
## EVALUATOR FORM

**Teacher ID:** ▬▬▬▬    **Teacher Name:** MICHELLE BECKLES
**School Year:** 2015-2016    **School Name/DBN:** 23K392-I.S. 392

## CLASSROOM OBSERVATION:

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

☐ **Formal Observation (full period)**    ☒ **Informal Observation (15 minute minimum)**

Date of Observation: 05/31/2016    Time/Period: 9:44 AM 1st Period

| Component/Rationale for Score | |
|---|---|
| **1a (obs):** *Demonstrating knowledge of content and pedagogy*<br>LO I will write a summary of a nonfiction article depicting Booker T Washington's character ccls Literacy w.8.2b<br><br>Posh: looking for facts details, main idea<br><br>T: what are you doing when you use those facts, details main idea?<br><br>T: Can someone get the gist?<br><br>T: Can we say it is a retelling?<br><br>▬▬: A short retelling<br><br>T writes on board a short retelling of the most important parts of the story/article details, facts, main idea,<br><br>Knowledge of Grade Level Content: There is evidence that the teacher has procedural AND conceptual understanding of the content. | 4- Highly Effective |
| **1e (obs):** *Designing coherent instruction*<br>LO I will write a summary of a nonfiction article depicting Booker T Washington's character ccls Literacy w.8.2b<br><br>Character traits of Booker T Washington<br><br>hardworking, dedicated, determined, believes in self | 3- Effective |

Last Revised: 06/05/16  8:48:52 PM By lcooper12

DEF000125

A-1005

CONFIDENTIAL

| | |
|---|---|
| respectful, wise, helpful<br><br>T: You are going to use some of these as a starting point to write our summary<br><br>The teacher uses appropriate prompts to develop critical thinking skills.<br>The use of discussion around character traits was an excellent strategy to prepare students for writing a summary<br>Teacher notes on the board based on the discussion was a great scaffold to help students who find writing to be a challenge. | |
| 2a: *Creating an environment of respect and rapport*<br>one voice<br><br>ladies...<br><br>ladies to ▓ and ▓ focus you should join the discussion..Christopher you can help us out<br><br>The teacher's reaction to a students' behavior, culture, work, etc. is respectful<br><br>The reaction is appropriate and clearly addresses the situation. | 4- Highly Effective |
| 2d: *Managing student behavior*<br>one voice when more than one talking<br><br>one voice<br><br>one voice ▓ and ▓ talking at same time<br><br>Rules and Consequences: Overall classroom behavior is good. | 4- Highly Effective |
| 3b: *Using questioning and discussion techniques*<br>T: when walking them to school what did he have to do?<br><br>▓ kept eyes off of forbidden books<br><br>▓ respected owners by not looking at books even though he wanted to ..i would have took a piece<br><br>What did he want to do?  Get an education (▓)<br><br>What was he dying to do with ABCs? Learn  to read spell<br><br>How was he wise?.. He became a famous man, but did that make him wise?<br><br>it says as Booker wrote if you want to lift yourself up lift someone else up<br><br>what in essence did he do that would make him wise?how would you describe him?<br><br>▓ did not have much but lifted up others<br><br>T Booker believed that if you want to lift self up...T was he selfish.. ▓ no he would not go to salt mines to help parents | 3- Effective |

Last Revised: 06/05/16  8:48:52 PM By lcooper12

DEF000126

A-1006

CONFIDENTIAL

| | |
|---|---|
| ██ that does not make him wise?<br><br>Para to ██ what is you definition of wise?<br><br>my definition ...you cant just say wise because he succeeded in his dream<br><br>T: What could ██ do to improve?<br><br>Questions require students to make connections to prior knowledge. | |
| 3c: Engaging students in learning | N/A |
| 3d: Using assessment in instruction<br>you are going to use some of these as a starting point to write our summary<br><br>t goes over what is a summary<br><br>Activities relate to the lesson objective<br><br>Students are challenged to provide procedures and processes and apply that information verbally and ultimately in writing. | 3- Effective |
| 4e (obs): Growing and developing professionally | N/A |

Last Revised: 06/05/16  8:48:52 PM By lcooper12

DEF000127

A-1007

CONFIDENTIAL

Teacher ID 0991603          Teacher Name MICHELLE BECKLES

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM:

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component/Rationale for Score | |
|---|---|
| 1a (p&p): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (p&p): Designing coherent instruction | N/A |
| 4e (p&p): Growing and developing professionally | N/A |

**Additional Evaluator Notes (please attach more pages, as necessary):**

Next Step: Using the discussion around character traits was a great way to prepare students for writing the summary. You encouraged other students to participate in the conversation but their responses were minimal to none throughout the lesson. Remember to always hold them accountable. If they do not have ideas of their own it is perfectly fine to have them repeat what someone else said. At least if they can repeat the response of another person, you know that they are actually listening and paying attention rather than just day dreaming or checking out of the lesson.

Teacher's signature: _Michelle Beckles_          Date 6/27/16
*(I have read and received a copy of the above and understand that a copy will be placed in my file.)*

Evaluator's name (print): COOPER, LOREN

Evaluator's signature: _Loren Cooper_          Date 6/5/16

Last Revised: 06/05/16  8:48:52 PM By lcooper12

DEF000128

A-1008

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 84 of 93 PageID #: 1117

CONFIDENTIAL



**Department of
Education**
Carmon Fariña, Chancellor

## ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR)
## EVALUATOR FORM

Teacher ID: ▓▓▓▓▓    Teacher Name:    MONIQUE ORDDE
School Year: 2015-2016    School Name/DBN: 23K392-I.S. 392

## CLASSROOM OBSERVATION:

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

☐ **Formal Observation (full period)**    ☒ **Informal Observation (15 minute minimum)**

Date of Observation: 11/23/2015    Time/Period: 12:29 PM/ 6th Period

| Component/Rationale for Score | |
|---|---|
| 1a (obs): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (obs): Designing coherent instruction | N/A |
| 2a: Creating an environment of respect and rapport<br>Why do we need to be careful when we are gathering data? ▓▓▓▓ ?<br><br>S: Can you repeat the question? | 3- Effective |
| 2d: Managing student behavior | N/A |
| 3b: Using questioning and discussion techniques<br>T: Whats the next one ▓▓▓▓ "aninference" T why? S:aninferenceis a conclusionyou observe.<br><br>What do you combine with inference? S:what you already know<br><br>If we did an experiment wherewould we put our information?Data table, data chart<br><br>Why do we need to be careful when we are gathering data?▓▓▓▓ ?<br><br>S: repeat question T:▓▓▓▓ PS: If you have wrong data you wont get the right answer.<br><br>What does your conclusion depend on ? S: your hypothesis<br><br>Many question were asked of students and you enlisted many students to respond | 2- Developing |

Last Revised: 12/20/15 10:12:32 PM By lcooper12

DEF000129

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 85 of 93 PageID #: 1118

CONFIDENTIAL

| | |
|---|---|
| to your questions, however many of the questions were closed questions that only required a short response even when you followed it up by asking why. Students had no opportunity to talk in groups or with a partner.<br><br>Provide sufficient time to allow well-thought out responses from students. The questions do ask students to form relationships and connections between concepts but the students are not pushed to apply skills in a new situation. Questions are directed to the whole class | |
| **3c: Engaging students in learning**<br>Put star it is hard factor truth<br><br>It begins with a c. certainty. Write that word down. T spells word<br><br>The students are not grouped; the whole class listens to the lecture and never collaborate. The teacher uses direct instruction for most of the class period. | 2- Developing |
| **3d: Using assessment in instruction**<br>T: Any questions or concerns so far?<br><br>who understands hypothesis: calls s to stand up if you understand go close to ▮▮▮ 3 people by ▮▮▮<br><br>▮▮▮ stand by ▮▮▮ 15 students<br><br>s i want to hear the last option<br><br>if you know nothing stand by ▮▮▮ 0 students<br><br>▮▮▮ oined shakey group and left expert group. | 3- Effective |
| **4e (obs): Growing and developing professionally** | N/A |

A-1010

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 86 of 93 PageID #: 1119

CONFIDENTIAL

Teacher ID 0831171                     Teacher Name MONIQUE ORDDE

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM:

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component/Rationale for Score | |
|---|---|
| 1a (p&p): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (p&p): Designing coherent instruction | N/A |
| 4e (p&p): Growing and developing professionally | N/A |

**Additional Evaluator Notes (please attach more pages, as necessary):**

Next Step: It helps to have open questions prepared in advance that can be used for turn and talk or group discussion. Another strategy is to establish an optimum length of response by saying something like 'I don't want an answer of less than 15 words.' Although this was test-review, mixing in some pre planned open ended questions and having students talk in groups and share out answers could have been beneficial and boosted engagement. Also, always encourage students to respond in complete sentences.

Next Step: This may have been a review, but reviewing for a test does not need to be teacher directed. Students could have been given a task that required them to go over the worksheet in groups, compare answers, come up with 2-3 questions that they still have as a group, and then share out what they learned after completing a chart. Test review should be just as engaging as any other lesson. Work on being a facilitator and making all lessons more student led.

Teacher's signature: _Mongu Ordd_        Date 12/20/15
*(I have read and received a copy of the above and understand that a copy will be placed in my file.)*

Evaluator's name (print): COOPER, LOREN

Evaluator's signature: _Loren Cooper_        Date 12/20/15

Last Revised: 12/20/15 10:12:32 PM By lcooper12

DEF000131

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 87 of 93 PageID #: 1120

CONFIDENTIAL



## THE NEW YORK CITY DEPARTMENT OF EDUCATION

Beverly Logan, Principal, P.S. 156      Ingrid Joseph - Principal, I.S. 392
Beth Albano, Assistant Principal        Loren Cooper, Assistant Principal
Ronda Phillips, Assistant Principal

## THE WAVERLY SCHOOL OF THE ARTS

PUBLIC SCHOOL 156                          INTERMEDIATE SCHOOL 392
(718) 498-2811                             (718) 498-2491
                    FAX (718) 346-2804

## Request for Personal Leave

Name: _Michelle Becker_ Date: _2-24-16_

File #: _____

Date(s) requested: _4-11-16_

Return date: _4-12-16_

Reason for request:

_I am requesting a personal day._

_____

_____

_____

Approved by: _____

Date: _2/26/16_

*104 Sutter Avenue, Brooklyn, NY 11212-4139*

DEF000132

A-1012

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 88 of 93 PageID #: 1121



**INTERMEDIATE SCHOOL 392 : The School For The Gifted & Talented**

**104 Sutter Avenue**
**Brooklyn, NY 11212**
**Ingrid Joseph, Principal**
**Loren Cooper, Assistant Principal**

The School for the
Gifted & Talented

CONFIDENTIAL

January 25th, 2016

Dear Awesome TEAM 392,

Thank you for trudging through the snow and difficult travel conditions to come to work today. This weekend marked a record amount of snowfall in New York City.  Your presence here demonstrated your commitment to our school community and your professionalism.  Please continue to maintain your great work ethic and your drive for excellence. Your consistent efforts are truly appreciated. The students at IS 392 are fortunate to have you in their lives.

Professionally,

Ingrid Joseph
Principal

I understand that a copy of this letter will be placed in my file.

_____          1-29-16
Staff Signature                              Date

A NATIONAL TITLE I DISTINGUISHED SCHOOL

TEL: (718) 498-2491                        FAX (718) 346-2804

DEF000133

A-1013

CONFIDENTIAL

# IS 392
### The School for the Gifted and Talented
104 Sutter Avenue • Brooklyn, NY 11212

Office (718) 498-2811 • Fax (718) 346-2804

Ms. Ingrid Joseph
Principal

Ms. Loren Cooper
Assistant Principal

**I have received and retained a copy of the Faculty Handbook including the attached Chancellor's Regulations.**

_____
Teacher's Signature

9-25-15
_____
Date

Michelle Becues
_____
Print Name

DEF000134

A-1014

Case 1:23-cv-08663-BMC    Document 42-3    Filed 10/23/24    Page 90 of 93 PageID #: 1123

CONFIDENTIAL



**Department of Education**
Carmen Fariña, Chancellor

## ANNUAL PROFESSIONAL PERFORMANCE REVIEW (APPR) EVALUATOR FORM

**Teacher ID:** ▮▮▮▮▮        **Teacher Name:** MICHELLE BECKLES
**School Year:** 2015-2016    **School Name/DBN:** 23K392-I.S. 392

### CLASSROOM OBSERVATION:

In each observation, all components for which there is observed evidence must be rated. Each form must contain lesson-specific evidence for each of the components observed during a classroom observation.

This observation was: (check one)

☐ **Formal Observation (full period)**        ☒ **Informal Observation (15 minute minimum)**

Date of Observation: 10/20/2015    Time/Period: 10:37 a.m.

| Component/Rationale for Score | |
|---|---|
| **1a (obs): Demonstrating knowledge of content and pedagogy**<br>Knowledge of Grade Level Content: There is evidence that the teacher has procedural AND conceptual understanding of the content.<br><br>Knowledge of Grade Level Content: The teacher can identify important concepts and how these relationships are intertwined within the grade level domains. | 3- Effective |
| **1e (obs): Designing coherent instruction**<br>Your lesson infused various resources with a structured sequence and time allocations.<br><br>The learning activities are connected to the lesson objectives and the students are actively engaged.<br><br>Learning activities illustrate the student's ability to process and apply in the information in a variety of ways.<br><br>The materials challenge the student's comprehension and ability to apply specific information from the lesson. | 3- Effective |
| **2a: Creating an environment of respect and rapport** | N/A |
| **2d: Managing student behavior**<br>Students understand that their behavior is being tracked and is their own responsibility to monitor.<br><br>The students respond to the teacher's direction and quickly response to the correction. | 3- Effective |

Last Revised: **12/03/15 11:52:08 AM** By ljoseph2

DEF000135

**A-1015**

CONFIDENTIAL

| | 3- Effective |
|---|---|
| **3b: Using questioning and discussion techniques**<br>Examples of questions asked:<br><br>Do you have something different ? T<br><br>Would like to try ▮▮▮▮▮? T<br><br>Can you do it? T<br><br>▮▮▮▮▮, what do you think?T<br><br>What's a rational number ? T<br><br>Do you agree ▮▮▮ why? T<br><br>It s a positive number ? ▮▮▮▮▮<br><br>What's another word for that? T<br><br>What's the word that ▮▮▮ is describing ? T<br><br>Questions require students to seek patterns among concepts and then apply that knowledge to a new situation.<br><br>Questions require students to make connections to prior knowledge. Questions were planned in advance based on anticipated student responses. | |
| **3c: Engaging students in learning**<br>You conferred with each group to clarify and pose further questions.<br><br>Creating Collaborative Groups: Collaborate groups are part of the daily classroom routine. Teacher allows students appropriate wait time/work time to complete activities. | 3- Effective |
| **3d: Using assessment in instruction**<br>The teacher circulated room to ensure students were on task.<br><br>Pointed to error of student as a reflection tool for student to review steps of task.<br><br>Asked additional clarifying questions.<br><br>Additionally, you asked:<br><br>Look at this diagram, does it make sense in your mind?<br><br>Would ▮▮▮ diagram be correct?<br><br>The concept was explained, students worked through a number of examples with the teacher and then students worked independently to prove mastery. The lesson was not rushed and there were no lags, it was timed appropriately for students to accomplish the lesson objective. There is evidence that the instructional groups have been formed based on student ability and/or assessment data. | 4- Highly Effective |

Last Revised: 12/03/15 11:52:08 AM By ijoseph2

DEF000136

CONFIDENTIAL

| | |
|---|---|
| **4e (obs): Growing and developing professionally**<br>You take time to confer with your colleagues about school initiatives and attempt to implement these changes into the classroom with fidelity. | **3- Effective** |

Last Revised: 12/03/15 11:52:08 AM By ijoseph2

DEF000137

A-1017

CONFIDENTIAL

Teacher ID ███████          Teacher Name MICHELLE BECKLES

## ASSESSMENT OF PREPARATION AND PROFESSIONALISM:

In this section of the form, evaluators should rate evidence for components 1a, 1e, and 4e that was observed within fifteen (15) school days prior to the classroom observation as part of an assessment of a teacher's preparation and professionalism. Each form must contain teacher-specific evidence for each of the components observed.

| Component/Rationale for Score | |
|---|---|
| 1a (p&p): Demonstrating knowledge of content and pedagogy | N/A |
| 1e (p&p): Designing coherent instruction | N/A |
| 4e (p&p): Growing and developing professionally | N/A |

**Additional Evaluator Notes (please attach more pages, as necessary):**

It was a pleasure visiting your classroom, I noticed you have acclimated quite well to our school community and are working hard to adopt our school practices and procedures. I look forward to working with you this year to push your learning even further.

Next Step: Create opportunities for students to engage in a discussion to extend their learning with limited mediation from you. All of the questions were initiated by you.

Next Step: Consider using the Smartboard to model some of the activities.

Next Step: While you pushed student mastery by asking reflective questions, encourage them to assess their own work and make improvements.

Teacher's signature: _____   Date 12/8/2015
*(I have read and received a copy of the above and understand that a copy will be placed in my file.)*

Evaluator's name (print): JOSEPH, INGRID

Evaluator's signature: _____   Date 12/10/15

Last Revised: 12/03/15 11:52:08 AM By Ijoseph2

DEF000138

A-1018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MICHELLE BECKLES,

       *Plaintiff,*     **Case No.: 23-cv-08663 (BMC)**

   -against-       **Oral Argument Requested**


NEW YORK CITY DEPARTMENT OF
EDUCATION,
      *Defendant.*
-------------------------------------------------------------------X


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT


BALLON STOLL P.C.
Marshall Bellovin, Esq. (MB5508)
Steven Balken, Esq.(SB0535)
810 Seventh Avenue, Suite 405
New York, New York, 10019
(T) 212-575-7900
mbellovin@ballonstoll.com
sbalken@ballonstoll.com

A-1019

## PRELIMINARY STATEMENT

This is an action by Plaintiff Michelle Beckles ("Plaintiff"), a former employee of Defendant New York City Department of Education ("Defendant"), alleging religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 200e *et seq.* ("Title VII"), the Executive Law of the State of New York, New York State Human Rights Law § 296, *et seq.* ("SHRL"), and the Administrative Code of the City of New York, New York City Human Rights Law § 8-101, *et seq.* ("CHRL"). Plaintiff alleges Defendant discriminated against Plaintiff by denying Plaintiff's request for reasonable accommodation in the form of an exemption to Defendant's COVID-19 vaccine mandate. Plaintiff submits this memorandum of law in opposition to the instant motion by Defendants under Fed. R. Civ. P. 12 seeking to dismiss Plaintiff's Amended Complaint, ECF No. 11, filed February 6, 2024 ("Amended Complaint", "AC"). Defendants' motion is without merit and should be denied in its entirety.

## STATEMENT OF FACTS

The Court is respectfully referred to the Amended Complaint for a statement of facts.

## ARGUMENT

### STANDARD ON A MOTION TO DISMISS

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiffs' favor." Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011). At this stage, the Court's function "is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).

1

A-1020

"To survive a motion to dismiss, a complaint must meet a 'plausibility standard.'" Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Ger., 615 F.3d 97 (2d Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662 (2009). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of h[er] claims." Beck v. Coats, No. 5:11-CV-420, 2012 U.S. Dist. LEXIS 101020, at *5 (N.D.N.Y. July 19, 2012) (citations omitted).

A motion to dismiss is normally not the appropriate stage to raise the affirmative defense of statute of limitations. See Ortiz v. Cornetta, 867 F.2d 146, 148 (2d Cir. 1989) ("while a statute-of-limitations defense may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), such a motion should not be granted unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (emphasis in original) (internal quotations omitted); see also Benjamin v. Ahern, No. 10-CV-5480 (ARR)(LB), 2011 U.S. Dist. LEXIS 39782 (E.D.N.Y. 2011) (quoting Ortiz); In re SKAT Tax Refund Scheme Litig., 2020 U.S. Dist. LEXIS 225968, (S.D.N.Y. 2020); United States v. Sixty-One Thousand Nine Hundred Dollars and No. Cents $61,900.00 Seized from Account No. Xxxxxx4429, No. 10 Civ. 1866 (BMC), 2010 U.S. Dist. LEXIS 161954 (E.D.N.Y. Sep. 7, 2010).

## POINT I
### PLAINTIFF'S TITLE VII CLAIM IS NOT TIME-BARRED.

Defendant argues Plaintiff does not plead that she timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), but she does. AC ¶ 5. Plaintiff pleads that she filed her Charge with the EEOC on May 11, 2022, ninety days after her employment was

2

A-1021

terminated. AC ¶¶ 5, 19. This is within the 300-day statute of limitation for Title VII claims. See Russo v. New York Presbyterian Hosp., 972 F.Supp.2d 429, 442 (E.D.N.Y. 2013).

Defendant also argues Plaintiff's Title VII claim must be dismissed because Defendant cannot determine whether the claims in the EEOC Charge are the same as what is alleged in the Amended Complaint. However, Plaintiff is "not required to demonstrate at the pleading stage that h[er] claims were administratively exhausted[.]" DiPetto v. U.S. Postal Serv., 383 F. App'x 102, 104 (2d Cir. 2010) (summary order) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)). Regardless, the EEOC Charge is incorporated by reference to the Amended Complaint and, therefore, may be considered by the Court on this motion. AC ¶ 5; Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Bell v. SL Green Realty Corp., No. 19 CIV. 8153 (LGS), 2021 WL 516575, at *1 (S.D.N.Y. Feb. 11, 2021). The EEOC Charge provides:

> Respondent's upper management stated they would begin termination proceedings for my position on December 1st, 2021, following multiple denials for religious exemption requests submitted in accordance with the mandatory vaccination requirement imposed on all NYC government employees. These submissions also included supporting documentation/letter signed by clergy member(s) confirming my religious beliefs against such vaccinations. Instead of granting an accommodation, Respondent chose to initially place me on leave without pay (LWOP), on October 4th 2021, leading to the employment discharge on February 11th, 2022. . . . Upon belief and information, I have been discriminated against, in violation of Title VII of the Civil Rights Act of 1964 . . . .

See **Exhibit A** Annexed to the Declaration of Marshall B. Bellovin ("Ex. A"). It is, thus, clear that the allegations in the Amended Complaint are sufficiently "reasonably related" to the allegations in her EEOC Charge for administrative exhaustion purposes, Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015), even if that issue were before the Court at this stage—and it is not. DiPetto, 383 F. App'x at 104; Jones, 549 U.S. at 216.

3

A-1022

Case 1:23-cv-08663-BMC   Document 43-4 Filed 02/26/24 Page 5 of 14 PageID #: 1131

Thus, Defendant fails to establish "beyond doubt" that Plaintiff is time-barred from asserting a claim for religious discrimination under Title VII; as such, Defendant's motion to dismiss on those grounds must be denied. <u>Ortiz</u>, 867 F.2d 146, 148

## POINT II

### PLAINTIFF'S SHRL AND CHRL CLAIMS MUST NOT BE DISMISSED BECAUSE PLAINTIFF TIMELY FILED A NOTICE OF CLAIM AND THE CLAIMS ARE NOT TIME-BARRED.

**A. Plaintiff timely filed a notice of claim because an EEOC Charge may act as a substitute for such notices of claims.**

Regarding Defendant's argument that Plaintiff failed to file a notice of claim and that such failure precludes Plaintiff from asserting claims against Defendant under the SHRL and CHRL, Plaintiff's EEOC Charge may serve as a substitute for such notice of claim. An EEOC Charge can suffice as a substitute for a notice of claim "where the EEOC charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district . . . and is served within the statutory time period." <u>Brtalik v. S. Huntington Union Free Sch. Dist.</u>, No. CV-10-0010, 2010 WL 3958430, at *5 (E.D.N.Y. Oct. 6, 2010).

Here, Plaintiff filed her EEOC Charge within the three-month statute of limitations prescribed by NY Educ. § 3813(1). AC ¶¶ 6-7. Plaintiff's EEOC Charge put Defendant on notice of the claims Plaintiff alleges, as the Charge outlines her claim for religious discrimination, the same claim she asserts under state and city law. AC ¶¶ 5-8; Ex. A. Defendant claims the Amended Complaint failed to plead that the EEOC Charge was served on Defendants, but it does. AC ¶ 8.

Thus, Plaintiff sufficiently met the notice of claim requirement and her claims under the SHRL and CHRL must not be dismissed. <u>See</u> <u>Donlon v. Board of Educ. of the Greece Cent. Sch. District</u>, 2007 WL 108470 *3 (W.D.N.Y.2007) (EEOC Charge sufficient to comply with § 3813 notice of

4

claim requirement); <u>Kushner v. Valenti</u>, 285 F.Supp.2d 314, 316 (E.D.N.Y. 2003) (EEOC notice served on school district Director of Personnel held sufficient to comply with § 3813).

**B. Plaintiff's SHRL and CHRL claims are not time-barred by the statute of limitations contained in Educ. Law § 3813 because the filing of an EEOC Charge tolls the statute of limitations.**

Defendant argues that Plaintiff's SHRL and CHRL claims are time-barred under the one-year statute of limitations set forth in New York Education Law § 3813. Even assuming, *arguendo*, that the applicable statute of limitations is one year, Plaintiff's claims under the SHRL and CHRL are not time-barred because the filing of an EEOC Charge tolls the statute of limitations from when an EEOC Charge is filed until the EEOC issues a Right to Sue letter.

> [T]he Second Circuit has not yet resolved the question of whether EEOC charges toll the statute of limitations for NYCHRL claims (as well as state claims under the New York State Human Rights Law . . . . But many district courts within the Southern District of New York have concluded that EEOC charges do toll NYCHRL claims.

<u>Nixon v. TWC Admin. LLC</u>, No. 16-CY-6456 (AJN), 2017 WL 4712420, at *2 (S.D.N.Y. Sept. 27, 2017). <u>See</u> <u>Sesay-Harrell v. N.Y.C. Dep't of Homeless Servs.</u>, No. 12 Civ. 925 (KPF), 2013 WL 6244158, at *12 (S.D.N.Y. Dec. 2, 2013) ("the limitations period is tolled 'during the period in which a complaint is filed with the EEOC and the issuance by the EEOC of a right-to-sue letter" (quoting <u>E.E.O.C. v. Bloomberg L.P.</u>, 967 F. Supp. 2d 816, 831 (S.D.N.Y. 2013)). Regarding Plaintiff's claims pursuant to the CHRL,

> [T]wo different legal provisions . . . support the tolling of the applicable statute of limitations for municipal law claims during the pendency of a complaint filed with the EEOC. First, in the State context, pursuant to a work-sharing agreement between the New York State Department of Human Rights [ ] and the EEOC, charges filed with the EEOC are automatically considered dual-filed with the State . . . Thus, [a plaintiff's] EEOC complaint here would be deemed filed with the [New York State Department of Human Rights]. Second, the New York City Administrative Code states that "[u]pon the filing of a complaint with the city

5

commission on human rights *or the state division of human rights* and during the pendency of such complaint and any court proceeding for review of the dismissal of such complaint, such three year limitations period shall be tolled. ... As a result, although the New York City Commission on Human Rights does not have its own work-sharing agreement with the EEOC . . . , the interaction of these two provisions . . . indicates that a charged filed with the EEOC would also toll the statute of limitations period for NYCHRL claims.

Nixon v. TWC Admin. LLC, 2017 WL 4712420, at *3 (emphasis added).

Here, Plaintiff filed her EEOC Charge on May 11, 2022, **Ex. A**, and received her Notice of Right to Sue on August 24, 2023. AC ¶ 9. Therefore, the statute of limitations period tolled for 471 days. Hence, applying the one-year statute of limitations prescribed by NY Educ. Law § 3813 plus the 471-day tolling period, Plaintiff's deadline to file her claim SHRL and CHRL claims was May 27, 2024. Plaintiff filed her original complaint before this deadline, on November 11, 2023.

Accordingly, Plaintiff timely filed her SHRL and CHRL claims, and Defendant's motion to dismiss must be denied.

## POINT III

### PLAINTIFF PLAUSIBLY PLEADS RELIGIOUS DISCRIMINATION UNDER TITLE VII, SHRL, AND CHR

To make out a *prima facie* case of religious discrimination, employees must show (1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement. Knight v. Connecticut Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001) (citing Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 481 (2d Cir. 1985). If an employee establishes a *prima facie* case, the burden then shifts to the employer to show it could not accommodate the employee's religious beliefs without undue hardship. Id. An employer suffers an undue hardship when "the accommodation would result in substantial increased costs in

6

A-1025

relation to the conduct of [an employer's] particular business." Groff v. DeJoy, 600 U.S. 447, 470 (2023).

SHRL and CHRL claims are analyzed under the same requirements as Title VII claims but construed more leniently in Plaintiff's favor. See Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) ("a plaintiff's discrimination claims under both the NYSHRL and the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII."); Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) ("courts must analyze NYCHRL claims separately and independently from any federal and state law claims" and "broadly in favor of discrimination plaintiffs [if] reasonably possible."); Wellner v. Montefiore Med. Ctr., No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019) (2019 amendments move SHRL's standard "closer to the standard under the NYCHRL").

Here, Plaintiff pleads that her sincerely held religious beliefs forbade her from obtaining the COVID-19 vaccine. Plaintiff alleges she:

> sincerely held a religious belief that conflicted with Defendant's vaccination requirement. Specifically, at that point, and currently, it was (and is) well publicized that the vaccines were developed using aborted fetal cells in testing and/or production thereof. Plaintiff sincerely believed that abortion was prohibited by her religion and that injecting a vaccine into her body that was developed through the use of aborted fetal cell lining was prohibited by her religion.

AC ¶ 29. Further, Plaintiff alleges she wrote in her requests for religious exemptions:

> I present by Lawful Right this Notification of Vaccination Exemption . . . to include all vaccines . . . [including] COVID-19 . . . which include . . . attenuated viruses . . . . obtained from aborted fetuses, then cultivated on fetal tissue from other babies . . . . because the practice of Vaccination is contrary to my sincere and consciously held Religious Beliefs. So for the highest possible development of my mind, soul and body, I follow the Laws of Nature which are the Laws of God, designed for my good; and obedience to them is promoting happiness in my life for a very long time now, and it helps me grow to the full stature of a woman in Christ with a powerful mind, soul and spirit. I have faith in God and His laws of Nature and I am refusing to be vaccinated, because I have a problem with what that vaccine injection into my

7

A-1026

human body is going to do. It goes against my spiritual path, and my healthy living principles with God's gifts of Nature.

AC ¶¶ 31-33. As for whether Plaintiff had a sincerely held religious belief, such beliefs do not have to be "acceptable, logical, or comprehensible to others". Thomas v. Rev. Bd. of Ind. Emp. Sec. Div., 450 U.S. 707, 714 (1981). "The first requirement (*i.e.*, sincerity of a person's religious belief) is a question of fact—unsuitable to resolution at the motion to dismiss stage." Gardner-Alfred v. Fed. Rsrv. Bank of New York, 651 F. Supp. 3d 695, 721 (S.D.N.Y. 2023). Thus, Plaintiff has sufficiently pled that she holds a sincerely held belief.

Plaintiff pleads that she informed Defendant of her religious beliefs, exemplified by her filing multiple requests for religious exemption to the COVID-19 Vaccine Mandate. AC ¶¶ 27, 30-33. Plaintiff pleads that she was placed on unpaid leave and subsequently terminated for refusing to comply with Defendant's vaccine mandate. AC ¶¶ 35-37. Thus, Plaintiff sufficiently pleads a *prima facie* case of religious discrimination. Knight, 275 F.3d at 167.

At the pleading stage, Plaintiff is not required to plead more than a *prima facie* case. See Littlejohn, 795 F.3d at 311. Nonetheless, Plaintiff does plead that granting Plaintiff a religious exemption to the COVID-19 Vaccine Mandate would not have caused an undue hardship on Defendant. Plaintiff alleges Defendant could have accommodated Plaintiff given the availability of non-vaccine safety procedures that had been deemed acceptable and effectively applied prior to the vaccine mandate, the COVID-19 virus's minimal danger in Plaintiff's work environment, and the vaccines' demonstrated ineffectiveness in actually preventing the spread of the COVID-19 virus. AC ¶¶ 39-49.

Accepting Plaintiff's factual allegations as true, and drawing all reasonable inferences in Plaintiff's favor, Faber v. Metro. Life Ins. Co., 648 F.3d at 104, Plaintiff sufficiently pleads claims

8

A-1027

Case 1:23-cv-00668-BMC   Document 42-4   Filed 02/26/24   Page 10 of 14 PageID #: 1136

for religious discrimination under Title VII, the SHRL, and CHRL. See Knight, 275 F.3d at 167.

As such, Defendants' motion to dismiss Plaintiff's Amended Complaint must be denied.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that Defendants' motion be denied in its entirety and that this Court grant any other and further relief that it deems just and proper.

Dated:  New York, New York
          February 26, 2024

BALLON STOLL P.C.

By: ___s/*Marshall B. Bellovin*_____
        Marshall B. Bellovin, Esq. (MB5508)
        Steven Balken, Esq.(SB0535)
        *Attorneys for Plaintiff*
        810 Seventh Avenue, Suite 405
        New York, New York, 10019
        (T) 212-575-7900

9

A-1028

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MICHELLE BECKLES,                                    Docket No.: 23-cv-08663 (BMC)

                    *Plaintiff*,

             v.                                      **DECLARATION OF
                                                     MARSHALL B. BELLOVIN**

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                    *Defendant*.

---

I, **MARSHALL B. BELLOVIN**, an attorney at law admitted to practice before the United States District Court, Eastern District of New York, declare under penalty of perjury of the laws of the United States of America, pursuant to 28 U.S.C. §1746, as follows:

1.    I am a Partner of the firm Ballon Stoll, P.C. attorneys for Plaintiff Michelle Beckles.

2.    I respectfully submit this Declaration in Opposition to Defendants' Motion to Dismiss the Amended Complaint.

3.    I make this Declaration based on my own personal knowledge and in reliance on the exhibit attached hereto.

4.    Annexed hereto as **Exhibit "A"** is Plaintiff's Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), dated May 11, 2022.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February 26, 2024
       New York, New York

                                              _____*s/Marshall B. Bellovin*_____
                                              Marshall B. Bellovin, Esq.

1

Case 1:23-cv-08668-BMC Document 46-4 Filed 02/26/24 Page 1 of 14 PageID #: 1138

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC  FEPA | **520-2022-01971** |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Miss Michelle V. Beckles | (917) 856-1594 | |

Street Address

114-11 178 Street

JAMAICA, NY 11434

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| DEPARTMENT OF EDUATION | Unknown Number Of Employees | (718) 935-2200 |

Street Address

65 COURT ST

BROOKLYN, NY 11201

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest / Latest |
| Religion | 12/01/2021 / 12/01/2021 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.  **Digitally Signed By: Miss Michelle V. Beckles**  05/11/2022  *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT  SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Exhibit A

A-1030

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 520-2022-01971 |
| | FEPA | |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

As a tenured Special Education Teacher employed by Respondent with an impeccable work history record since 2005, Respondent's upper management stated they would begin termination proceedings for my position on December 1st, 2021, following multiple denials for religious exemption requests submitted in accordance with the mandatory vaccination requirement imposed upon all NYC government employees. These submissions also included supporting documentation/letter signed by clergy member(s) confirming my religious beliefs against such vaccinations. Instead of granting an accommodation, Respondent chose to initially place me on leave without pay (LWOP), on October 4th, 2021, leading to the employment discharge on February 11th, 2022. The discrimination occurred on or about: 9-20-2021 through 9-28-2021. Upon belief and information, I have been discriminated against, in violation of Title VII of the Civil Rights Act of 1964, as amended, and request that EEOC issue a Notice of Right to Sue letter affording me an opportunity to commence a private lawsuit before Federal District Court.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Miss Michelle V. Beckles**<br>05/11/2022<br><br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

A-1031

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# BALLON STOLL P.C.

COUNSELORS AT LAW                    FOUNDED 1931                    810 SEVENTH AVENUE
                                                                              SUITE 405
                                                                     NEW YORK, NY 10019
                                                                      Ph: 212-575-7900

                                                                     www.ballonstoll.com

March 27, 2024

**VIA ECF**

Hon. Brian M. Cogan, U.S.D.J.
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: Michelle Beckles v. New York City Department of Education, 23-cv-08663 (BMC)

Dear Judge Cogan:

      This office represents the Plaintiff, Michelle Beckles, in the above-referenced action. Pursuant to the status conference held on March 20, 2024, and Minute Order dated that same day, Plaintiff respectfully submits this Supplemental Letter in further opposition to Defendant's motion to dismiss Plaintiff's Amended Complaint. Specifically, this Letter discusses how the filing of a charge of discrimination with the EEOC tolls the statute of limitations of New York State and City Human Rights Law claims, and there is no reason to deviate from this rule for claims asserted against school districts.[1]

      "Under New York law, a complaint of discrimination must be filed with the New York State Division of Human Rights 'within one year after the alleged unlawful discriminatory practice.'" Sunshine v. Long Island Univ., 862 F. Supp. 26, 30 (E.D.N.Y. 1994) (quoting N.Y. Exec. Law § 297(5)). An EEOC charge is deemed jointly filed with the Division of Human Rights ("DHR"). Martinez-Tolentino v. Buffalo State Coll., 277 A.D.2d 899, 715 N.Y.S.2d 554 (2000); see Sunshine, 862 F. Supp. at 30.

      It is clear that the filing of a complaint with the New York State Division of Human Rights ("DHR") tolls the statute of limitations, pursuant to N.Y. Exec. Law § 297(9) and CPLR § 204. "Subdivision 9 of section 297 of the Executive Law provides a stay by prohibiting the commencement of suit when a complaint has been filed with the Division. Thus, upon the filing of such a complaint and during its pendency, the Statute of Limitations is tolled until the administrative proceeding is terminated." Pan Am. World Airways, Inc. v. New York State Hum.

---

[1] Per the Court's Minute Order dated March 20, 2024, and Order dated today, Plaintiff will respond to Defendant's Supplemental Letter on the issue of undue hardship by or before April 3, 2024 and on the notice of claim issue by or before April 5, 2024.

A-1033

Hon. Brian M. Cogan, U.S.D.J.
March 27, 2024
Page 2

Rts. Appeal Bd., 61 N.Y.2d 542, 549 (1984). See N.Y. Exec. § 297(9). Under CPLR § 204, "[w]here the commencement of an action has been stayed by the court or by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced." CPLR § 204(a).

Defendants asserted in their reply in further support of Defendants Motion to Dismiss (Doc. No. 17) that "courts have held that claims against school districts and school officers are not tolled by filings with the EEOC." (citing, e.g., Cincotta v. Hempstead Union Free Sch. Dist., 2016 U.S. Dist. LEXIS 116478, at *49 (E.D.N.Y. Aug. 30, 2016). However, the holding in Cincotta, and all other cases holding that the tolling of filings with the EEOC does not apply to claims against school districts, was made based on faulty interpretations of precedent and were akin to judicial lawmaking. Plaintiff asserts that there is no reason to deviate from the general holdings that EEOC charges toll the statute of limitations for human rights law claims when the claims are asserted against school districts.

Cincotta, in making its holding, heavily relies upon Smith v. Tuckahoe Union Free Sch. Dist., No. 03 CIV. 7951 (PGG), 2009 WL 3170302 (S.D.N.Y. Sept. 30, 2009). In Smith, the court held, "this Court would not be inclined in light of Amorosi and the clear intent of the New York legislature to limit lawsuits against school districts — to read such a provision into the statute." Smith v. Tuckahoe Union Free Sch. Dist., 2009 WL 3170302, at *11. The case cited, Amorosi v. S. Colonie Indep. Cent. Sch. Dist., 9 N.Y.3d 367 (2007), only held that the statute of limitations applicable to human rights law claims asserted against school districts is one year; Amorosi does not address tolling of statute of limitations, nor does Amorosi state there was an intent of the New York legislature to limit lawsuits against school districts. See Amorosi, 9 N.Y.3d 367; Riccardo v. New York City Dep't of Educ., No. 16CIV4891LAKJCF, 2016 WL 7106048 (S.D.N.Y. Dec. 2, 2016), report and recommendation adopted sub nom. United States v. New York City Dep't of Educ., No. 16-CV-4291 (LAK), 2017 WL 57854 (S.D.N.Y. Jan. 4, 2017); Langella v. Mahopac Cent. Sch. Dist., No. 18-CV-10023 (NSR), 2020 WL 2836760 (S.D.N.Y. May 31, 2020). Livingston v. Roosevelt Union Free Sch. Dist., No. 17CV4189JMASIL, 2020 WL 1172642 (E.D.N.Y. Jan. 15, 2020), report and recommendation adopted, No. 17CV4189JMASIL, 2020 WL 1166450 (E.D.N.Y. Mar. 11, 2020).

Even assuming, arguendo, that shortening the statute of limitations for human rights law claims against school districts from three years to one year (see Educ. Law § 3813) evidences the New York legislature's intent to limit lawsuits against school district, the legislature effectuated this intent only through the shortening of the statute of limitations. Neither within Educ. Law § 3813, nor any other statute, has the legislature barred the tolling of the statute of limitations. If the legislature intended for EEOC or DHR charges to not toll the one-year statute of limitations, the legislature would have said so. The court in Riccardo posited:

Hon. Brian M. Cogan, U.S.D.J.
March 27, 2024
Page 3

> The legislature could have expressed a clear intent to preclude tolling by classifying the limitations period as a statute of repose rather than a statute of limitations. Statutes of repose "generally may not be tolled" because they reflect "a judgment that defendants should 'be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason.'" CTS Corp. v. Waldburger, 573 U.S. 1, 10, 134 S. Ct. 2175, 2183 (2014) (quoting 54 Corpus Juris Secundum, Limitations of Actions § 7 (2010)). Statutes of limitations, on the other hand, "traditionally have been subject to tolling." Id. at 2188. Federal and state courts interpreting the language of Section 3813 uniformly classify its limitations period as a statute of limitations rather than a statute of repose. See, e.g., Smith v. City of New York, 130 F. Supp. 3d 819, 833 (S.D.N.Y. 2015); Stepper v. Department of Education of City of New York, 104 A.D.3d 412, 413, 963 N.Y.S.2d 168, 169 (1st Dep't 2013).

Riccardo v. New York City Dep't of Educ., 2016 WL 7106048, at *7. The courts that have held tolling does not apply to human rights law claims asserted against school districts do not have any statutory authority nor legislative history to justify their holdings. Thus, there is no reason to deviate from the case law demonstrating that filing an EEOC charge, which is deemed to be dual filed with the DHR, tolls the statute of limitations for state and city human rights law claims. See Riccardo v. New York City Dep't of Educ., 2016 WL 7106048; Langella v. Mahopac Cent. Sch. Dist., 2020 WL 2836760.

Here, Plaintiff was terminated from her employment by Defendant on February 11, 2022. Doc. No. 11 ("AC") ¶ 36. Plaintiff subsequently filed her charge of discrimination with the EEOC ninety (90) days later, on May 11, 2022. AC ¶ 5. The one-year statute of limitations for human rights law claims prescribed by Educ. Law § 3813 was tolled until August 24, 2023, when Plaintiff received her notice of right to sue letter from the EEOC. AC ¶ 9. See Langella v. Mahopac Cent. Sch. Dist., 2020 WL 2836760. Plaintiff then filed suit against Defendant seventy-nine (79) days later, on November 11, 2023. Thus, applying the toll required for EEOC and DHR charges and administrative proceedings, Plaintiff filed her suit against Defendant 169 days after her termination, within the one-year statute of limitations.

Thus, Defendant's motion to dismiss should be denied in its entirety.

Respectfully submitted,

_____s/Marshall B. Bellovin_____
Marshall B. Bellovin, Esq. (MB 5508)
Steven Balken, Esq. (SB 0535)

A-1035

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MICHELLE BECKLES,

                           Plaintiff,

          -against-

NEW YORK CITY DEPARTMENT
OF EDUCATION

                          Defendant.
-----------------------------------------------------------------X

Docket No.: 23-cv-08663 (BMC)

**<u>AMENDED COMPLAINT</u>**

**<u>JURY TRIAL DEMAND</u>**

Plaintiff, MICHELLE BECKLES ("Plaintiff"), by and through her attorneys, Ballon Stoll P.C., complaining of Defendant, NEW YORK CITY DEPARTMENT OF EDUCATION ("Defendant" or "DOE"), alleges with personal knowledge, unless where upon information and belief is stated, the following:

## INTRODUCTION

1. This action seeks to remedy Defendant's intentional and unlawful discrimination based on Plaintiff's religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 *et seq.* ("Title VII"), the Executive Law of the State of New York, New York State Human Rights Law § 296, *et seq.* ("SHRL"), and the Administrative Code of the City of New York, New York City Human Rights Law § 8-101, *et seq.* ("CHRL").

## JURISDICTION AND VENUE

2. This court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 2000-e5(f)(1), and 5(f)(3).

3. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

1

4.     As the Eastern District is the district where a substantial part of the events giving rise to the claims occurred, venue is proper within this district pursuant to 28 U.S.C. § 1391 (b)(2).

5.     On May 11, 2022, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant, in which she alleged, *inter alia*, that Defendant discriminated against Plaintiff on the basis of her religion and discriminatorily denied her a reasonable religious accommodation.

6.     Plaintiff's May 11, 2022 EEOC Charge also served as a substitute for a Notice of Claim, pursuant to NY Educ. § 3813.

7.     Plaintiff's May 11, 2022 EEOC Charge, also serving as a Notice of Claim, was timely filed within three months of Plaintiff's termination.

8.     Upon information and belief, immediately after Plaintiff filed her EEOC Charge, the EEOC served it on Defendant.

9.     On August 23, 2023, the EEOC issued a notice-of-right-to-sue letter under Title VII. The EEOC signed and transmitted the letter on August 24, 2023, and Plaintiff did not receive it before August 24, 2023. The letter is annexed hereto as **Exhibit A**.

### PARTIES

*Plaintiff*

10.     Plaintiff resides in Queens, County of Queens, State of New York.

11.     At all relevant times, and currently, Plaintiff has been a devout member of the Christianity religion.

12.     Plaintiff is a "person" within the meaning of 42 U.S.C. § 2000e(a); Executive Law § 292(1); and Administrative Code § 8-102(1).

13.     At all relevant times herein, Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C. § 2000e(f); Executive Law § 292(6); and Administrative Code §8-102.

*Defendant*

14. Defendant is a local government agency that operates the New York City public school system.

15. At all relevant times, Defendant employed Plaintiff at one of its public school locations in Brooklyn, Kings County, New York.

16. At all relevant times, Defendant had more than 500 employees.

17. At all relevant times, Defendant was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b); Executive Law § 292(5); and Administrative Code § 8-102.

**JURY DEMAND**

18. Plaintiff hereby demands a trial by jury in this action.

**FACTS**

19. Plaintiff was employed by Defendant as a teacher, from on or about September 8, 2005, until on or about February 11, 2022, when Defendant discharged her from employment.

20. Plaintiff began her employment as a teacher and continued in the same role for over sixteen years until Defendant terminated her employment.

21. Plaintiff was assigned at I.S. 392, a middle school located in Brooklyn, New York.

22. On August 23, 2021, Plaintiff received an email from Michael Mulgrew, President of United Federation of Teachers ("UFT"), the union Plaintiff was a member of as an employee teacher of Defendant.

23. The email stated that "the mayor announced that the city is mandating the COVID-19 vaccine for all DOE employees as part of a public health intervention. Employees must have proof of the first shot of the vaccine by Sept. 27."

3

Case 1:23-cv-00668-BMC   Document 42-6 Filed 02/06/24 Page 4 of 11 PageID #: 1147

24.     Defendant notified Plaintiff that it would be requiring its employees to be fully vaccinated with the COVID-19 Vaccine.

25.     On September 15, 2021, Plaintiff received a subsequent email from Mr. Mulgrew. This email stated that the vaccine mandate is set to go into effect on September 27, 2021, and outlined the leave options for employees who refuse to comply with the vaccine mandate. These options included being placed on unpaid leave on or receiving small severance compensation upon resigning from employment.

26.     The September 15, 2021 email also stated, "there will be no pause on requests for medical/religious exemptions."

27.     On September 20, 2021, Plaintiff requested a religious exemption, which was immediately denied.

28.     On September 27, 2021, Plaintiff sent an email to UFT inquiring about the religious exemption appeal process. UFT responded that Plaintiff was unable to appeal the religious exemption she filed but was allowed to file for a religious exemption again with new documentation.

29.     Plaintiff sincerely held a religious belief that conflicted with Defendant's vaccination requirement. Specifically, at that point, and currently, it was (and is) well publicized that the vaccines were developed using aborted fetal cells in testing and/or production thereof. Plaintiff sincerely believed that abortion was prohibited by her religion and that injecting a vaccine into her body that was developed through the use of aborted fetal cell lining was prohibited by her religion.

4

A-1039

30.   Accordingly, on September 27, 2021, Plaintiff again filed a request for a religious exemption from being injected with the COVID-19 vaccine, based on her sincerely held religious beliefs and convictions about what substances she was allowed to put in her body.

31.   As part of this request, Plaintiff wrote:

I present by Lawful Right this Notification of Vaccination Exemption . . . to include all vaccines . . . [including] COVID-19 . . . which include . . . attenuated viruses . . . obtained from aborted fetuses, then cultivated on fetal tissue from other babies . . . because the practice of Vaccination is contrary to my sincere and consciously held Religious Beliefs.

32.   Plaintiff's request for a religious exemption also stated,

So for the highest possible development of my mind, soul and body, I follow the Laws of Nature which are the Laws of God, designed for my good; and obedience to them is promoting happiness in my life for a very long time now, and it helps me grow to the full stature of a woman in Christ with a powerful mind, soul and spirit. I have faith in God and His laws of Nature and I am refusing to be vaccinated, because I have a problem with what that vaccine injection into my human body is going to do. It goes against my spiritual path, and my healthy living principles with God's gifts of Nature.

33.   As part of this request letter, Plaintiff also included a letter from her Reverend, which outlined Plaintiff's sincerely held religious beliefs and her reasons for refusing the COVID-19 vaccine.

34.   Plaintiff could have been accommodated without causing Defendant an undue burden given the availability of non-vaccine safety procedures that had been deemed acceptable and effectively applied prior to the vaccine mandate, the COVID-19 virus's proven minimal danger in Plaintiff's work environment, and the vaccines' demonstrated ineffectiveness in actually preventing the spread of the COVID-19 virus.

35.   However, Plaintiff's religious exemption request was denied.

36.   Instead, on or about October 4, 2021, Defendant placed Plaintiff on a leave of absence without pay followed by final termination date of February 11, 2022.

5

37.     Plaintiff's termination letter stated she was terminated for failing to adhere to the COVID-19 Vaccine Mandate.

38.     Notably, this date of termination was the day *after* the New York City's vaccine mandate ended.

39.     It would not have caused an undue hardship on the conduct of Defendant's business to grant Plaintiff the religious exemption.

40.     Previously, during the September 2020 to June 2021 school year, Plaintiff had successfully followed extensive COVID-19 safety protocols, including: daily health screening; wearing a face mask and shield while inside the school building; social distancing; conducting parent and student meetings remotely; working remotely and in person while being observed remotely by administrators; conducting assessments and re-evaluations of students all but one of whom were remote; and weekly COVID-19 testing once the vaccine mandate was announced. Each and all of these precautions were deemed adequate to mitigate the risk of catching or transmitting COVID-19.

41.     It would not have caused an undue hardship to allow Plaintiff to continue to follow these or similar precautions – including but not limited to remote work arrangements – in lieu of the mandatory COVID-19 vaccination policy.

42.     There were news reports that Defendant granted hundreds of exemptions to the mandatory COVID-19 vaccination policy. Since other teachers were granted exemptions, it would not have caused an undue hardship to grant Plaintiff an exemption.

43.     The Centers for Disease Control and Prevention ("CDC") has acknowledged that vaccinations or injections available for COVID-19 did not prevent transmission, infection, or reinfection in those who receive them.

A-1041

44. The CDC Director publicly stated that the injections do not prevent infection or transmission of SARS-CoV-2, which is the virus that has been identified by various public health agencies as causing the disease known as COVID-19.

45. The CDC acknowledged that the "vaccinated" and "unvaccinated" were equally likely to spread the virus.

46. Moreover, New York State, in its aggressive efforts designed to curb the spread of COVID-19 throughout the state, nevertheless provided public school staff/employees the option of either getting vaccinated or, alternatively, getting tested weekly.

47. Furthermore, the CDC had already reported extensively on how the relative risk of hospitalization and death due to COVID-19 was significantly greater among persons in the seventy-five (75) to eighty-four (84) and eighty-five plus (85+) age groups. In other words, the persons at greatest risk of becoming seriously ill or dying from COVID-19 were the least likely to be encountered by Plaintiff in her workplace.

48. Middle school students were in the age group with the lowest risk of becoming seriously ill or dying from COVID-19

49. It may be inferred that Defendant's refusal to grant Plaintiff any kind of religious exemption—despite Plaintiff's demonstrating her sincere religious beliefs and given, *inter alia*, the availability of non-vaccine safety procedures that had been deemed acceptable and effectively applied prior to the vaccine mandate, the COVID-19 virus's minimal danger in Plaintiff's work environment, and the vaccines' demonstrated ineffectiveness in actually preventing the spread of the COVID-19 virus—constituted discrimination against Plaintiff on the basis of her religion.

50. This entire experience has caused Plaintiff significant mental and emotional distress and financial hardship.

7

A-1042

## FIRST CAUSE OF ACTION
### Discrimination Based Upon Religion in Violation of Title VII

51.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

52.     The discriminatory actions of Defendant were invidious and repugnant.

53.     Defendant discriminated against Plaintiff on the basis of her religion (Christianity) in violation of Title VII by denying her request for a reasonable religious exemption to the mandatory COVID-19 vaccination policy and terminating her employment,

54.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of income, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, lost earnings, attorneys' fees, and expenses.

55.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish, and emotional distress, and loss of quality of life.

56.     Defendant's discriminatory actions in violation of Title VII were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which she is entitled to an award of punitive or exemplary damages.

## SECOND CAUSE OF ACTION
### Discrimination Based Upon Religion in Violation of SHRL

57.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

8

58.     The discriminatory actions of Defendant were invidious and repugnant.

59.     Defendant discriminated against Plaintiff on the basis of her religion (Christianity) in violation of SHRL by denying her request for a reasonable religious exemption to the mandatory COVID-19 vaccination policy and terminating her employment,

60.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of SHRL, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of income, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, lost earnings, attorneys' fees, and expenses.

61.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of SHRL, Plaintiff has suffered and continues to suffer severe mental anguish, and emotional distress, and loss of quality of life.

62.     Defendant's discriminatory actions in violation of SHRL were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which she is entitled to an award of punitive or exemplary damages.

## THIRD CAUSE OF ACTION
### Discrimination Based Upon Religion in Violation of CHRL

63.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

64.     The discriminatory actions of Defendant were invidious and repugnant.

65.     Defendant discriminated against Plaintiff on the basis of her religion (Christianity) in violation of CHRL by denying her request for a reasonable religious exemption to the mandatory COVID-19 vaccination policy and terminating her employment,

9

A-1044

66.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of CHRL, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of income, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, lost earnings, attorneys' fees, and expenses.

67.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of CHRL, Plaintiff has suffered and continues to suffer severe mental anguish, and emotional distress, and loss of quality of life.

68.     Defendant's discriminatory actions in violation of CHRL were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which she is entitled to an award of punitive or exemplary damages.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant awarding Plaintiff compensatory and punitive damages for lost income, attorneys' fees, emotional distress, and loss of quality of life.

1.     On the First Cause of Action, judgment against Defendant in compensatory and punitive damages, in an exact amount to be determined at trial; and

2.     On the Second Cause of Action, judgment against Defendant in compensatory and punitive damages, in an exact amount to be determined at trial; and

3.     On the Third Cause of Action, judgment against Defendant in compensatory and punitive damages, in an exact amount to be determined at trial; and

4.     That Plaintiff have such other, further, and different relief as the Court deems just, proper, and equitable in the circumstances, together with interest on all Causes of Action, attorney's fees, and costs and disbursements in this action.

A-1045

Case 1:23-cv-00668-BMC   Document 42-6   Filed 02/06/24   Page 10 of 11 PageID #: 1154

Dated: New York, New York
February 6, 2024

BALLON STOLL P.C.

By:_____*s/Marshall Bellovin*_____
Marshall B. Bellovin, Esq. (MB5508)
*Attorneys for Plaintiff*
810 Seventh Avenue, Suite 405
New York, New York, 10019
212-575-7900

A-1046

FROM THE DESK OF

# Michele Beckles Special Education Teacher

September 27th, 2021

Letter of Appeal for Religious Exemption Request

Intermediate School 392
104 Sutter Avenue
Brooklyn, NY 11212

To Whom It May Concern:

First, I would like to acknowledge the folks at the Department of Health and especially The World Health Organization (WHO) in its constitution regarding good health as "a state of complete mental, physical and social well-being." And I would add that I have great respect for all the work so far that they have done to handle the pandemic, and especially to try to get back the school staff and the children, all together, present in the educational institutions all over OUR COUNTRY. It is a great, very desirable plan for the children's education. So I would like to thank the Department of Education for all of their concern in reopening schools in New York this September, including all the effort that the MAYOR DEBLASIO has put in this necessary project for human kind, the education of the children, the ultimate goal of which is to secure the development of our future generation.

Now, I am teaching children with special needs. I am performing effectively at this job for the past sixteen years, and I have been successful at it, and I wish to continue. I love teaching, but today I have a matter of great concern that I want to share with you, and this is why I am writing this letter of appeal.

Spiritual well-being adds wholeness and mindfulness to good health, such as defined by the World Health Organization (WHO). This interpretation is contained in the prayer of John for his friend Gaius and the church as he declares, "I wish above all things that you mayest prosper and be in health" (3 John: 2).

Exhibit
7

DEF000002

A-1047

We are reminded that "one of the greatest aids in perfecting pure and noble characters is sound physical health". Therefore, "it is of the highest importance that men and women are instructed in the science of human life, and the best means of preserving and acquiring health."

For years I have been seeking a better way of life- a way that gives me health and freedom from being unhealthy-due to helpful, inspired sources of information coming from my studies about the guiding principles outlined in my way of living, to seek the best health in order to satisfy the need of my human body system as an health temple reflecting the image of the divine, such as Christ. I responded to God's call for changed living habits a few years ago, and this LORD God of heaven helps me through a way of healthy living as spiritual gifts. I learn better how to live and remain healthy. This was my study assignment for my spiritual path, and my first duty toward God and my fellow beings because it led me to my self-development to understand divinely appointed rules through the following of health principles for my converted spirit toward the affair with God, the laws of God and nature, thus seeking to avoid physical and moral feebleness, but especially to guard every organ and fiber of my being.

So for the highest possible development of my mind, soul and body, I follow the Laws of Nature which are the Laws of God, designed for my good; and **obedience** to them is promoting happiness in my life for a very long time now, and it helps me to grow to the full stature of a woman in Christ with a powerful mind, soul and spirit. I have faith in God and His laws of Nature and I am refusing to be vaccinated, because I have a problem with what that vaccine injection into my human body is going to do. It goes against my spiritual path, and my healthy living principles with God's gifts of Nature.

I requested a religious exemption from The Department of Education which was denied. I thank them greatly in advance for reconsidering their decision and ask for their help and support in this matter. There are great people at the Department of Education and also at WHO, and I truly appreciate their exceptional understanding for the limited case like me who wants to avoid vaccination because of my belief system, where every law governing my human body and so its machinery, is to be considered just as truly divine in origin, in character, and in importance as the word of God. Every careless action in that respect, any abuse put upon this wonderful mechanism of my human body, is a violation of God's Law and the Ten Commandments, and so this law embraces my actual decision against this vaccination.

DEF000003

A-1048

We live in a perishable world, and the perishable reflects the holy, but what is holy is not perishable, and what is perishable does rejuvenate, and what is perishable does continue, and it is renewed, by the power of the holy God.

Thank you again for all the attention that you give to this letter.  Sincerely, I have put my trust in The Department of Education all these years and I am appealing for your help in granting me this religious exemption.


Sincerely yours,

Michele Beckles

DEF000004

# Temple of the Healing Spirit

## Of The United States of North America · In The Family of Nations

[Ordination by Rev. Iris Scottland, D.D; of Assemblies of Christ Ministries]
c/o 1742 South Woodland Boulevard #417 / Deland City, Florida Republic [PZ-32720]
Tel: c/o 800.847.1291

**Church Board**
†
Rev. Phillip Valentine
Pastor/Director
Dr. Nalani Valentine
Assistant Pastor
Vernon J. Burton
Secretary

To whom it may concern;                                    9.16.2021

Ms. Michelle V. Beckles is a member in excellent standing with our Church, and as such, is bound by the moral and ethical tenets of conduct, which guide and govern our Congregation. (1 Cor 3:16,17 / 1 Cor 6:19,20 / 2 Cor 7:1 / Acts 17:24,25)

Because of her deeply held religious beliefs and convictions, Ms. Beckles is extremely concerned about her participation in certain surgical/medical/pharmaceutical procedures that radically conflict with said beliefs and convictions, viz: Vaccination/Inoculation; "Tine Tests", or, Mantoux TPPD Skin tests; all HIV-AIDS/COVID-19 tests, eg, the RT-PCR test #139900; the ELISA, CD4-Count, ATP, and CDC's "Influenza SARS-CoV-2 Multiplex Assay" tests, et al.

Therefore; Pursuant to the Congressional Laws protecting our Inalienable Rights (Human, de jure Constitutional, + Civil), We the Church herewith submit this letter in support of Ms Beckles' Notification of Vaccination Exemption (by Affidavit), because the practice of Vaccination, and/or participation in unreliable, inaccurate, prejudicial medical testing, is contrary to her/our conscientiously held religious beliefs and practices, and compelling her to do so, violates her free exercise of said religious beliefs - contravening the "Free Exercise Clause" added to the Bill of Rights (1791) - being adjudicated + upheld in Supreme Court Decisions: "Minersville vs. Gobitas" (1940), and "Wisconsin vs. Yoder" (1972).

Thank you.

Respectfully,

[Rev. Dr.] Phillip Valentine ©™
UCCI-308 All Rights Reserved
Pastor.

Temple of the Healing Spirit/Church of Universal Enlightenment of the United States of North America, is under the Protectorate of the de jure United States of North America, having original jurisdiction after having pronounced their authentic "A Declaration" of July 4th 1776, and the enshrinement of the July 14th, 1777 official 48 SixPointed Star of David original Flag enacted by the General Congress Assembled, the "Sigilla Magna Republic Confederate America", the Official Seal of the Majores People united in America, aka, "The Great Seal of the Union Republic of America, viz-a-viz; The Official Seal of the United Sates of North America, pursuant to 4 U.S.C.S., Section 41. The Temple of the Healing Spirit/Church of Universal Enlightenment, and our Congregation-at-Large, are not citizens of the British Territorial UNITED STATES, nor citizens of the Vatican's Municipal UNITED STATES. We are the pre-entitled, qualified, HaKhdar, the Autochthonous Free Inhabitants and Natural Born Citizens of the United States of North America - in the Family of Nations, Freeholder. Pursuant to Title 5 U.S.C.S. §1501(1)

DEF000005

A-1050

To Whom It May Concern:

I am seeking a religious exemption from the COVID-19 vaccination policy of mandatory vaccinations for teachers employed by the Department of Education.

I am a born again, baptized, Christian and I sincerely oppose abortion. I cannot accept a vaccine which has been manufactured, or whose efficacy has been tested and proved, using fetal cells from aborted fetuses. In addition, as a Christian, I am a believer in Jesus Christ. His Holy Spirit, God Himself, dwells within me. My Body is His Temple (1 Corinthians 6).

Scripture makes it clear that God's temples are places of great importance in the relationship between God and man. God dwells in the Temple, and there a man communes with Him. God speaks harshly of, and deals harshly with, those who defile his temple (Jeremiah 7:1-15).

All three of the vaccines -- those manufactured by Pfizer, Moderna, and Johnson & Johnson -- have all been manufactured or tested using material derived from stem cell lines from aborted fetuses. See https://lozierinstitute.org/update-covid-19-vaccine-candidates-and-abortion-derived-cell-lines/.    Abortion is a grave evil. I cannot participate in it or benefit from it, even remotely. It is unquestionable that all three available COVID-19 vaccines have been manufactured or tested using fetal cell lines from aborted human children.[1] In particular:

- Johnson & Johnson/Janssen: Fetal cell cultures are used to produce and manufacture the J&J COVID-19 vaccine and the final formulation of this vaccine includes residual amounts of the fetal host cell proteins ($\leq 0.15$ mcg) and/or host cell DNA ($\leq 3$ ng).

- Pfizer/BioNTech:   The HEK-293 abortion-related cell line was used in research related to the development of the Pfizer COVID-19 vaccine.

- Moderna/NIAID: Aborted fetal cell lines were used in both the development and testing of Moderna's COVID-19 vaccine.

Unlike other measures that can be reasonably taken to avoid illness, willingly receiving the vaccines into my body defiles God's temple. The vaccines act at a genetic level that invades the province of God. Our genetic physiology is His design, extraordinarily complex as only He could make it, and understood only as He can understand it. Our understanding is shallow. I cannot morally participate in tinkering with a powerful and dangerous thing, within this temple, that we poorly understand.

The Temple is defiled when it is used in ways that distract from its purpose, that deny the glory of God, that invite sin, that lower God from His place of dominance in the life of the believer, that

---

[1] https://lozierinstitute.org/update-covid-19-vaccine-candidates-and-abortion-derived-cell-lines/ .

DEF000006

reduce his trust in God's plan and ultimate control over his life, or that by these means or others corrupt his relationship with God. I must use my body to glorify God. I must do this to the best of my ability, employing my God-given reason and attempting at all times, in good faith and under varying circumstances, to do what pleases Him.

Further, according to federal law, as the Equal Employment Opportunity Commission's Guidance on the protection of sincere religious beliefs states, *it does not matter* whether one's sincere religious belief happens to correspond to that of any denomination or that it might even contradict the teaching of one's denomination. What matters is that one has a sincere religious belief, which I do, concerning the immorality of recourse to abortion-derived vaccines. To quote the EEOC's Guidance document in the Code of Federal Regulations:

> The fact that *no religious group espouses such beliefs* or the fact that the religious group to which the individual professes to belong *may not accept such belief* will not determine whether the belief is a religious belief of the employee or prospective employee....[2]

Also, I am aware that the United States Supreme Court has held that "[W]e reject the notion that to claim the protection of the Free Exercise Clause, *one must be responding to the commands of a particular religious organization.*" *Frazee v. Illinois Dep't of Emp. Sec.,* 489 U.S. 829, 834, 109 S. Ct. 1514, 1517–18, 103 L. Ed. 2d 914 (1989)(emphasis added). In other words, it is the law of the land that my personal religious belief against vaccination *does not have to be supported by any particular religious organization, not even the Church to which I belong.* I do not have to show that any particular religion positively forbids me to take a COVID-19 vaccine. My personal religious belief forbids me because of their connection to what I believe to be the grave sin of abortion, which I cannot condone and in which I cannot participate in any way.

Therefore, I request that an accommodation for my inability to be sinfully complicit in abortion by not requiring me to take any of these vaccines. The Equal Employment Opportunity Commission has instructed that reasonable accommodations in this context may include wearing a face mask, social distancing from coworkers or non-employees, testing, or working a modified shift. *See* EEOC COVID-19 Vaccine Guidance, Sec. K.2., https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitaact-and-other-eeo-laws.

Any of these accommodations would be an acceptable alternative to obtaining vaccines that violate my good-faith, sincerely held Christian beliefs.

Thank you for your anticipated consideration of this request.

Sincerely,

*[signature]*

[2] 29 CFR 1605.1 ("Religious" nature of a practice or belief)

DEF000007

State of New York

County of _Kings_

This instrument was signed or acknowledged before me on _09/20/2021_ by

_____
(Name of Teacher)

_____
(Signature of Notary Public)

ELROY M PHILLIPS
NOTARY
NO. 01PH6073863
QUALIFIED IN
KINGS COUNTY
COMM. EXP.
04-29-2022
PUBLIC
STATE OF NEW YORK

DEF000008

| Email From: | solas_donotreply@schools.nyc.gov | | Resend | Print |
| --- | --- | --- | --- | --- |
| **Sent:** | Saturday, September 25, 2021 01:33 AM | | | |
| **Email To:** | mbeckles@schools.nyc.gov | | | |
| **Email CC:** | | | | |
| **Email BCC:** | HRConnectLeaves@schools.nyc.gov | | | |
| **Subject:** | Your COVID-19 Vaccine Religious Exemption Application - Determination | | | |

09/24/2021

Case#: A80238
File# ▮▮▮▮▮
EMP ID: ▮▮▮▮

Dear MICHELLE BECKLES,

We have reviewed your application and supporting documentation for a religious exemption from the DOE COVID-19 vaccine mandate.

Your application has failed to meet the criteria for a religious based accommodation. Per the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety. We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.

Sincerely,

*HR Connect*
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

Ref Number : GX5931517 N3431 COVID-19_VAX_ReligousExempt_Denial_UndueHardship

DEF000035

2/29/24, 4:38 PM    Case 1:23-cv-08663-BMC    Document 42-4 apps.schools.nyc/solasbackoffice/NHEmailPopUp.aspx?NotificationID=3434&RefNumber=... Filed 10/23/34   Page=894428&UsgeID=1407.17&Source=A...

| | | |
|---|---|---|
| **Email From:** | solas_donotreply@schools.nyc.gov | Resend  Print |
| **Sent:** | Tuesday, September 28, 2021 09:48 PM | |
| **Email To:** | mbeckles@schools.nyc.gov | |
| **Email CC:** | | |
| **Email BCC:** | HRConnectLeaves@schools.nyc.gov | |
| **Subject:** | Your COVID-19 Vaccine Religious Exemption Application - Determination | |

09/28/2021

Case#: A81179
File#: ▇▇▇▇▇▇
EMP ID: ▇▇▇▇▇

Dear MICHELLE BECKLES,

We have reviewed your application and supporting documentation for a religious exemption from the DOE COVID-19 vaccine mandate.

Your application has failed to meet the criteria for a religious based accommodation. Per the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety. We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.


Sincerely,


*HR Connect*
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

Ref Number : GX5945408 N3431 Denial - Religious Exemption to Vaccine Mandate

DEF000037

https://apps.schools.nyc/solasbackoffice/NHEmailPopUp.aspx?NotificationID=3431&RefNumber=5945408&UserID=1407177&Source=Accommodatio...    1/1

A-1055

| | |
|---|---|
| **From:** | Division of Human Resources |
| **To:** | Beckles Michelle |
| **Subject:** | Termination of NYCDOE Employment |
| **Date:** | Tuesday, February 15, 2022 3:15:46 PM |

February 15, 2022

MICHELLE BECKLES
TEACHER SPECIAL EDUCATION
█████

Dear MICHELLE BECKLES:

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all NYCDOE staff and your termination from DOE effective February 11, 2022 as a result.  Compliance with that Order is a condition of employment. Since you did not comply with the Order and did not choose to extend your leave without pay, despite notice and an opportunity to do so, your employment with the New York City Department of Education was terminated, effective February 11, 2022. Please note that your health insurance coverage through the City also ceased upon termination.

If you have not already done so, you must return all DOE-issued equipment and materials, including your ID, to your supervisor. Information about COBRA will be mailed separately to you at the address on file in NYCAPS. Your school and/or office will be notified of your termination as well.


Thank you for your service to the New York City Department of Education.

Sincerely,


NYCDOE Division of Human Capital

DEF000186

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X
MICHELLE BECKLES,                                        :
                                                        :
                              Plaintiff,                 :   **MEMORANDUM DECISION AND**
                                                        :   **ORDER**
              -against-                                  :
                                                        :
NEW YORK CITY DEPARTMENT OF                              :   23-cv-8663 (BMC)
EDUCATION,                                               :
                                                        :
                              Defendant.                 :
                                                        :
------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff, a devout Christian, brings this action for religious discrimination under Title

VII.  She alleges defendant, her employer, discriminated against her by refusing to accommodate

her sincere religious objections to the COVID-19 vaccine.  Defendant has moved for summary

judgment, and its motion is granted.  The summary judgment record makes undeniable, as a

matter of law, that her proposed accommodations would have imposed an undue hardship on

defendant.

## BACKGROUND

Plaintiff Michelle Beckles is a Christian who, by virtue of her faith, opposes vaccination.

Defendant New York City Department of Education (the "DOE") is a municipal entity that

operates New York City's public schools.  Beckles worked as a special-education teacher in the

City's public school system from September 8, 2005, to February 11, 2022.  She worked with

students who are on the "autism spectrum, have Asperger's, are blind, are non-ambulatory, or

bedridden, are unable to write on their own (including having to hold and guide student hands)

and are prone to seizures."   On a typical day, she was responsible for bringing her students to

their classrooms, managing their behavior in class, and providing tailored instruction to them on topics with which they struggled.

In August 2021, the president of Beckles' union informed its members that "the mayor announced that the city is mandating the COVID-19 vaccine for all employees of the Department of Education as part of a public health intervention" and that "employees must have proof of the first shot of the vaccine by Sept. 27." Three weeks later, Beckles received another email from the president reaffirming that the vaccine policy would take effect on September 27th and outlining the leave options available to employees who declined to comply. Separately, the mayor and the chair of the City's health department issued an order "requiring COVID-19 vaccination for DOE employees, contractors, and others who work in-person in a DOE school setting or DOE building."

A week prior to the school policy's effective date, Beckles requested a religious exemption with the DOE, which was immediately denied. The date the policy went into effect, Beckles emailed her union inquiring about the appeal process. The union informed her that she was unable to appeal the rejection but that she was allowed to file a new exemption request with new documentation. Beckles again filed a request, and her request was again denied. The DOE placed her on a leave of absence without pay in early October, and then terminated her on February 11, 2022, one day before the City's vaccine order was rescinded.

Beckles timely filed this action within 90 days of receiving her right-to-sue letter from the Equal Employment Opportunity Commission. The operative amended complaint asserts three religious discrimination claims against the DOE: one under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 200e et seq.; one under New York State Human Rights Law § 296, et seq.; and one under New York City Human Rights Law § 8-101, et seq. Beckles has since

2

A-1058

withdrawn the state and local law claims, leaving only the Title VII claim.  After the close of discovery, the DOE moved for summary judgment.

## DISCUSSION

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  It must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  Ravenell v. Avis Budget Grp., Inc., No. 08-cv-2113, 2014 WL 1330914, at *1 (E.D.N.Y. March 31, 2014) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)).

Title VII failure-to-accommodate claims proceed in two steps.  First, an employee must show that she "(1) . . . held a bona fide religious belief conflicting with an employment requirement; (2) . . . informed [her] employer[] of this belief; and (3) [was] disciplined for failure to comply with the conflicting employment requirement."  Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001).   Then, the burden shifts to the employer to show it could not accommodate the employee's religious belief without suffering an "undue hardship."  Groff v. DeJoy, 600 U.S. 447, 454 (2023) (quoting 42 U.S.C. § 2000e(j)).

An undue hardship exists when "the accommodation would result in substantial increased cost in relation to the conduct of [an employer's] particular business."  Id.  Courts must apply "th[is] test in a manner that takes into account all relevant factors in the case at hand, including

3

A-1059

the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." Beickert v. N.Y.C. Dep't of Educ., No. 22-cv-5265, 2023 WL 6214236, at *3 (E.D.N.Y. Sept. 25, 2023). A reasonable accommodation "can never involve the elimination of an essential function of a job." Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003)). By extension, "[h]ir[ing] another employee to cover plaintiff's in-person duties" qualifies as an undue hardship when those duties are essential to the plaintiff's position. Wilson v. Mid-Hudson Forensic Psychiatric Ctr., No. 23-cv-8911, 2025 WL 1295655, *8 (S.D.N.Y. May 5, 2025).

Because the DOE agrees that Beckles' sincere religious beliefs conflicted with its vaccine policy, that she informed the DOE of her beliefs, and that the DOE fired her for failing to vaccinate, its motion turns on undue hardship. Beckles offers two accommodations that she claims would have been reasonable: the school could have allowed her to work in-person while unvaccinated, or the school could have allowed her to teach remotely, like it did during the first year of the pandemic. Both accommodations, however, would have imposed substantial costs on the DOE.

The Second Circuit has already summarily rejected Beckles' first proposed accommodation. In an unpublished order, a panel held that when an employer "could not have granted [its employee's] religious-exemption request without violating the [City's vaccine order], exposing itself to potential penalties," the employer "suffer[s] an undue hardship. D'Cunha v. Northwell Health Sys., No. 23-476-cv, 2023 WL 7986441, *3 (2d Cir. Nov. 17, 2023); cf. Bey v. City of New York, 999 F.3d 157, 170 (2d Cir. 2021) ("Title VII cannot be used to require employers to depart from binding federal regulations."). Forcing an employer to

4

A-1060

violate state law is "both 'excessive' and 'unjustifiable.'" D'Cunha, 2023 WL 7986441, at *3 (quoting Groff, 600 U.S. at 469).

Beckles' second proposed accommodation, that she be allowed to work remotely, presents a somewhat closer call – it hasn't been expressly rejected by a controlling authority – but ends up in the same place as the first. Preliminarily, Beckles did not in fact request to work remotely. Her first exemption request merely sought permission to "wear[] a face mask, social distanc[e] from coworkers or non-employees, test[], or work[] a modified shift," and her second request did not raise any new potential accommodations. She cannot now blame the DOE for failing to provide something she never requested. See Greenberg v. Visiting Nurse Servs. in Westchester, Inc., No. 23-cv-4252, 2024 WL 4252550, at *9 (S.D.N.Y. Sept. 19, 2024).

Yet even if Beckles had asked to work remotely, Title VII would not obligate the DOE to comply. The undisputed summary-judgment record overflows with evidence that Beckles, as a special-education teacher, needed to work in person to function effectively. She could not guide her students to class or ensure they are paying attention to lessons, for instance, from a Zoom call. These were not ordinary students; they needed a level of hands-on attention that regular students generally do not. Accommodating her, then, would have required the DOE to hire a substitute to perform much of her job for her, or in other words, "[h]ire another employee to cover plaintiff's" significant "in-person duties."[1] Mid-Hudson Forensic Psychiatric Ctr., 2025 WL 1295655, at *8.

Unable to contest that a substitute would need to functionally replace her, Beckles resorts to faulting the DOE for failing to provide a "computation of substitute teacher cost for a special

---

[1] Beckles cites several cases which found that determining the "essential functions" of a plaintiff's job was a question for the jury. See, e.g., Tafolla v. Heilig, 80 F.4th 111 (2d Cir. 2023). But here Beckles admits to certain essential functions of her job – e.g., monitoring her students' in-class behavior – that could not be performed remotely.

education teacher having comparable qualifications, licenses and experience as" her. This argument misunderstands the DOE's burden and the scope of the Court's review. The DOE need not provide a detailed financial forecast to show certain measures are impractical and costly. A court can determine that an accommodation would be "excessive" or "unjustifiable" based only on the nature of the accommodation relative to the employer's business. Groff, 600 U.S. at 469.

Moreover, the reviewing court does not limit its view to the price of accommodating the plaintiff and the plaintiff alone. It looks to "the overall context of any employer's business," which includes any follow-on effects of the accommodation. Id. at 468. If the DOE allowed Beckles to work remotely, it would have needed to extend the same privilege towards other teachers with genuine religious objections to vaccination. One does not need to run a discounted-cash-flow analysis to understand that this would create a significant financial strain on the public school system.

Beckles also stresses that remote teaching was allowed during the 2020-21 schoolyear, and certain therapists and paraprofessionals were on site to monitor plaintiff's class while she taught remotely. How then, she asks, could it pose an undue burden in 2021-22? The answer is simple. During the 2020-21 schoolyear, both teachers and students attended school remotely, but in 2021-22 they did not. Beckles does not claim it was religious discrimination to transition back to in-person learning; indeed, she pushed the administration to do so. And once the school made the transition, it became burdensome to accommodate remote teaching.[2] Beckles herself admits that "all of [her students] were remote (at home) with the exception of one" during the 2020-21 schoolyear, which would not have been the case during the following schoolyear. It is no

---

[2] Beckles states in her brief, without any citation to the record, that the DOE granted medical exemptions during the 2021-22 schoolyear. Nothing in the parties' Rule 56.1 statements or exhibits supports this conclusory assertion, and the Court will not consider it. See Parke v. Assist Ambulance, No. 23-cv-09066, 2025 WL 513266, at *9 (E.D.N.Y. Feb. 17, 2025).

6

A-1062

surprise that courts in this circuit have uniformly rejected similar arguments. See, e.g., Dominguez v. Bd. of Educ., No. 23-cv-2460, 2024 WL 3427217, at *6 (S.D.N.Y. July 16, 2024) ("[T]hat Plaintiff could perform his essential job functions while working remotely during the first phase of the COVID-19 pandemic . . . does not support his assertion that he could continue to perform his essential job functions . . . . given that the District determined the return to in-person was appropriate.").

As a final line of attack, Beckles' opposition brief conjures up a new theory absent from any of her earlier filings. She appeals to certain Americans with Disabilities Act cases to argue that, because the DOE did not engage with her in an "interactive process," it must have denied her exemption request in bad faith. Several procedural grounds bar Beckles from raising this claim now, in opposition to a motion for summary judgment. See, e.g., Fed. R. Civ. P. 8. That aside, her own authority forecloses any possibility of success. It recognizes that "liability for failure to engage in an interactive process depends on a finding that the parties could have discovered and implemented a reasonable accommodation through good faith efforts." Together Emps. v. Mass Gen. Brigham Inc., 573 F. Supp. 3d 412, 442 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2022). As previously discussed, any accommodation here would have been unreasonable, so Beckles cannot hold the DOE liable for failing to engage in an interactive process.

A-1063

**CONCLUSION**

For the reasons stated, the DOE's summary judgment motion is granted.

**SO ORDERED.**

_Brian M. Cogan_
U.S.D.J.

Dated: Brooklyn, New York
August 4, 2025

A-1064

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

MICHELLE BECKLES,                                    **Case No.: 1:23-cv-08663**

                    *Plaintiff*,              **NOTICE OF APPEAL**

     -against-

 NEW YORK CITY DEPARTMENT OF
 EDUCATION,
                   *Defendant*.

-------------------------------------------------------------X

     NOTICE IS HEREBY GIVEN that Plaintiff, MICHELLE BECKLES, in the above-captioned case, hereby appeals to the United States Court of Appeals for the Second Circuit from the final Judgment entered in this action on August 5, 2025, granting Defendant's motion for summary judgment and dismissing Plaintiff's claims

Dated: New York, New York
       August 26, 2025

                                 BALLON STOLL, P.C.

          By:       *s/Bingyang Zhang*
               Bingyang Zhang, Esq. (5975495)
               *Attorneys for Plaintiff*
               810 Seventh Avenue, Ste. 405
               New York, New York 10019
               bzhang@ballonstoll.com
               212-575-7900